UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MICHAEL JOHNSON,

                16-cv-_6426____

       Plaintiff,

    -against-          **COMPLAINT**
                  Demand for Jury Trial

THE CITY OF NEW YORK, DANIEL A. NIGRO,
in his official capacity as Commissioner of the
New York City Fire Department, MICHAEL GALA,
individually and in his official capacity as Deputy Chief  .
in the New York City Fire Department; MICHAEL
CURNEEN, individually and in his official capacity as Captain
in the New York City Fire Department,
JAKE LAMONDA, individually and in his official capacity
as an employee of the New York City Fire Department,
and JOHN DOE or JANE DOE, individually and in his
or her official capacity as an employee of the New York
City Fire Department,

         Defendants.
-----------------------------------------------------------------------X

   Plaintiff, Michael Johnson, by and through his attorneys, alleges the

following upon information and belief against the City of New York ("City"), the

New York City Fire Department ("FDNY"), Commissioner Daniel A. Nigro, and

FDNY officials, Michael Gala, Michael Curneen, Jake LaMonda, and John Doe or

Jane Doe (collectively "Defendants"):

### NATURE OF THE ACTION

   1.  Plaintiff, Michael Johnson ("Johnson"), brings this civil rights action

to vindicate his constitutional and civil rights, which were violated by the City of

1

New York and by high-ranking officials in the FDNY, namely the individual defendants, Michael Gala, Michael Curneen, Jake LaMonda and John or Jane Doe.

2.  Johnson is a New York City resident of Black-American heritage who worked for 15 years as an emergency medical technician with the FDNY.  In 2014, Judge Nicholas G Garafuis, a District Court Judge for the Eastern District of New York, ordered the FDNY to appoint Johnson as a "priority hire" firefighter as part of a remedial order in a high-profile federal class action lawsuit that successfully challenged a 40-year history of racially discriminatory hiring practices in the FDNY.  *See generally United States, et al. v. City of New York*, 07-CV-2067 (NGG) (E.D.N.Y.) (hereinafter the "**Class Action**").

3.  Immediately upon Johnson's appointment as a priority-hire firefighter, the individual defendants engaged in a series of retaliatory actions against Johnson that included:  (i) assigning Johnson humiliating "training" tasks;  (ii) requiring that Johnson undergo a demeaning and unjustified psychiatric examination; and (iii) issuing him bogus "failing" performance evaluations.   Undaunted and unsatisfied, the individual defendants then planted a racially inflammatory story about Johnson to virulent tabloid and social media outlets, claiming (falsely) that Johnson was "scared" of fires and runs away from them because he is a coward. The individual defendants even leaked to the media Johnson's confidential personnel and medical information as well as photographs of Johnson, suggesting

(falsely) that Johnson was a lazy person who wanted the FDNY paycheck but did not want to do the work required of the job.

4.    Commissioner Nigro and his executive staff knew about the overtly hostile and racist atmosphere within the rank of the FDNY against priority hires, such as Johnson, and failed to take appropriate action to prevent or punish the retaliatory and discriminatory acts by its employees and its high-ranking officials. Before Johnson started working as a firefighter, the District Court hearing the Class Action suit noted in one of its remedial orders that "several FDNY supervisors brazenly informed the court that they will not welcome priority hires into their ranks … because they do not believe they deserve to be firefighters." *Id*., Order, dated 10-26-12, at p. 2; Dkt. # 1011.   Thus, the District Court put the City of New York, Commissioner Nigro and his executive staff on actual and specific notice that "some personnel within the FDNY will resist or refuse to comply with the specific terms and spirit of the relief orders." *Id.*

5.    The individual defendants' retaliatory actions blatantly violated the anti-retaliation provisions of Judge Garaufis's injunctive relief order in the Class Action.  As a result, the City of New York and its senior policy-makers at the FDNY are liable for the retaliatory acts taken by the individual defendants because of the City and its policy-makers acquiescenced in the individual defendants' conduct and failed to meaningfully address a longstanding pattern of open and

hostile opposition to priority hires and the District Court's remedial orders in the Class Action.

6.      Johnson brings this action for compensatory and punitive damages. As a result of the Defendants' conduct, Johnson has suffered severe shame, embarrassment, humiliation, emotional distress, and damage to his reputation.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is based on 42 U. S. C. § 2000e-5(f)(3), 28 U. S. C. §§ 1331 and 1343(a)(3)-(4), and based on 28 U. S. C. § 1367(a) for claims arising under state law because the state claims arise from the same common nucleus of operative facts as the federal claims and are so intertwined with the federal claims as to the make exercise of supplemental jurisdiction appropriate.

8.      Johnson has fully complied with all prerequisites to jurisdiction in this Court under Title VII and New York City and State law.  Johnson duly filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on February 3, 2016, and this lawsuit is being commenced within ninety days of his receipt of a notice, dated September 2, 2016, from the U.S. Department of Justice that he has the right to sue under Title VII.

9.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U. S. C. §§ 1391 (b) and (c).

**PARTIES**

10.     Johnson is currently working for the FDNY as a Firefighter.

11.     Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York. Defendant City is an employer as defined by Title VII. Defendant City is also a "person" for purposes of the enforcement of the rights guaranteed under 42 U. S. C. § 1983. The City is authorized under the laws of the State of New York to maintain a fire department, which is a department, agency, bureau and subdivision of the City. The City is the employer of Johnson as well as the individual defendants named in this action.

12.     Defendant Daniel A. Nigro is the Commissioner of the FDNY and is sued solely in his official capacity.

13.     Defendant Michael Gala is employed by the City of New York as a senior supervisor in FDNY. At the times relevant to this Complaint, Gala was the Chief of Uniform Personnel for the FDNY.

14.     Defendant Michael Curneen is employed by the City of New York in a supervisory level position within the FDNY. He was promoted from Captain of Engine Company 257 to Battalion Chief on January 2, 2016.

15.     Defendant Jake LaMonda is employed by the City of New York in a supervisory level position as Battalion Chief in the FDNY. On September 1, 2009,

he was granted leave with full pay and benefits to work at the Uniformed Fire Officers Association (the "UFOA").

16.     Defendant John Doe or Jane Doe (hereinafter "Doe") is an employee of the City of New York who at all relevant times worked at the FDNY.

## FACTS

### *Plaintiff's Employment in the FDNY as Result of the Vulcan Society's Hiring Discrimination Lawsuit against the City*

17.     Johnson is a 42-year-old Black American male who in 1999 started working for the City of New York as an FDNY Emergency Medical Technician ("EMT").

18.     Johnson was also part of the Delayed-Hire subclass in the Class Action.

19.     On June 7, 2014, the FDNY appointed Johnson as a "priority hire" firefighter in compliance with the orders of this Court.

20.     After duly graduating from the Fire Academy, Johnson was assigned to Engine Company 257 in Brooklyn.

21.     During his entire time as an EMT and as a firefighter, Johnson ably and satisfactorily performed his duties.

22.     Since his appointment as a firefighter, however, Johnson has been consistently subjected to retaliation and discrimination because he is a priority hire and because of his race.

23.     For decades the FDNY has engaged in systematic and pervasive discrimination against Black Americans seeking employment as firefighters.

24.     To combat that discrimination, in the 1940s the Vulcan Society, Inc. (the "Vulcans"), a fraternal organization of Black Firefighters, was formed.   The Vulcans have for decades advocated for more racial diversity in New York City's firefighter ranks and for reform of the City's firefighter recruitment and hiring practices, which have disproportionately excluded minority firefighter candidates from the FDNY.  The Vulcan Society's efforts have included the filing of federal lawsuits, which successfully challenged the City's civil service examinations for disproportionately screening out minority candidates.  *See Vulcan Society v. Civil Serv. Comm'n*, 360 F.Supp. 1265 (S.D.N.Y. 1973), *aff'd in relevant part*, 490 F.2d 387 (2d Cir. 1973); *United States v. City of New York*, 637 F. Supp. 2d 77 (E.D.N.Y. 2009).

25.     In 2002, the Vulcan Society filed a charge of discrimination with the EEOC, alleging that the City's civil service exam for firefighters had an adverse impact on minority firefighter candidates, was neither job-related nor consistent with business necessity, and therefore violated Title VII.  Three individual Black firefighter candidates filed a subsequent charge with the EEOC in 2005, reasserting the Vulcan's allegations about the City's firefighter examination.

26.     The EEOC determined that there was probable cause to believe that

the City's firefighter exams violated Title VII, and in May of 2007, the United States filed suit in this Court against the City under Title VII alleging that the City examinations for the firefighter position at the FDNY discriminated against m firefighter candidates. *See United States v. City of New York*, 07-CV-2067 (NGG), Dkt # 1 (E.D.N.Y. May 21, 2007).

27.     The Vulcan Society and the three Black firefighter candidates who filed the EEOC charges intervened as co-plaintiffs in September 2007. *See United States v. City of New York*, 07-CV-2067 (NGG), Dkt # 47 (E.D.N.Y. Sep. 5, 2007).

28.     In July 2009, the District Court granted summary judgment in favor of the Department of Justice, the Vulcan Society and the individual plaintiffs, holding that, as a matter of law, the City's use of the firefighter exams constituted disparate impact discrimination against minority firefighter candidates under Title VII. *United States v. City of New York*, 637 F.Supp.2d 77 (E.D.N.Y. 2009), *affd in relevant part and rev'd in part on other grounds*, 717 F. 3d 72 (2d Cir. 2013).

29.     To remedy that discrimination, in January 2010 the District Court ordered the City to develop a new, non-discriminatory firefighter exam and to provide monetary and other forms of compensatory relief to those firefighter candidates who were either denied appointment as firefighters or whose appointments were delayed because of the City's use of the discriminatory firefighter exams. *United States v. City of New York*, 2010 U.S. Dist. LEXIS 4509

(E.D.N.Y. Jan 21, 2010).

30.    In December 2011, the District Court issued a Remedial Order in the Class Action specifically and permanently enjoined the City from "retaliat[ing] against or in any way adversely affect[ing] the terms or conditions of employment of any person because he or she has complained of discrimination against Blacks or Hispanics on the basis of their race or national origin in the selection and hiring of entry-level firefighters, or has participated in the investigation or litigation of any claim or allegation of such discrimination, or has sought or obtained relief from the court in this case." *United States v. City of New York*, 2011 U.S. Dist. LEXIS 141117 at p. *13 (E.D.N.Y. Dec. 8, 2011), *aff'd in part and modified in part,* 717 F.3d 72 (2d Cir. 2013).[1]

### The City's Acquiescence In FDNY's Widespread Hostility Towards the Vulcan Society Lawsuit and "Priority Hire" Firefighters

31.    Strong and vocal hostility to the Vulcan Society's lawsuit has existed for many years within large segments of the FDNY workforce, including Commissioner Nigro's executive staff.

32.    For example, the FDNY Chief of Uniformed Personnel, Defendant Gala, wrote a series of letters to the editor of the *Chief-Leader* newspaper in 2007 and 2008.  The *Chief-Leader* is a publication that focuses on labor and

---

[1] While other portions of the Remedial Order were later vacated by the United States Court of Appeals for the Second Circuit, the anti-retaliation provision was affirmed.  *See United States v. City of New York*, *supra,* 717 F.3d at 95-99.

employment issues of concern to City employees.  In his letters, Gala said he was "tired" of black and female FDNY firefighters claiming that the FDNY's hiring practices were unfair.  He also criticized the Vulcan Society's approach to diversifying the FDNY as "shallow."

33.    In addition, in 2010 an FDNY Deputy Chief, Paul Mannix formed "Merit Matters," an informal organization of hundreds of FDNY firefighters and officers for the purpose of opposing integration of the FDNY. Merit Matters posted written materials sharply critical of the Vulcan Society, their lawsuit, the District Court Judge and the Court Monitor on union bulletin boards throughout the FDNY firehouses.

34.    Moreover, between August 2011 and September 2012, Merit Matters published at least a dozen press releases that were distributed to firehouses over the FDNY's fax system, and placed on union bulletin boards and in other locations within numerous FDNY firehouses.  The press releases claimed:   (i) that the District Court Judge in the Class Action lawsuit was biased and guilty of nepotism; (ii) that the Vulcans helped minority firefighter candidates get an unfair advantage on the City firefighter entrance exam; (iii) that the Vulcans' efforts to reform the FDNY's firefighter hiring practices put the lives of current firefighters at risk; and (iv) that many of the Court-ordered injunctive remedies discriminated against whites.  The Merit Matters bulletins pointedly discouraged Black and Hispanic

firefighters from filing claims for compensatory relief, warning that such claims would cause resentment within the FDNY rank-and-file.

35.     At a Fairness Hearing held by the District Court over a four-day period from October 1, 2012 through October 4, 2012 concerning the proposed compensatory relief order in the Class Action, several hundred FDNY firefighters and senior fire officers voiced criticism against the District Court's liability ruling against the City.  Many of them expressed outrage that the Court was interfering with the culture and traditions of the FDNY, claiming that the proposed compensatory relief discriminated against whites, and predicting that awarding compensatory relief to Black and Hispanic victims of discrimination would breed severe resentment within the FDNY rank-and-file.

36.     After considering the objections and submissions at the Fairness Hearing, the District Court entered a final relief order.  As part of that order, the District Court specifically noted that FDNY supervisors blatantly demonstrated their contempt for the Court and for priority hires.  The Court stated:  "The objections process was held so that nonparties potentially affected by the Proposed Relief Order could voice their concerns about the proposed relief. Unfortunately, the overwhelming majority of the objectors used the process to express displeasure with the court's liability rulings, malign the court for daring to interfere with the culture of the FDNY, and make the utterly baseless suggestion that those

individuals who receive priority hiring relief will be unqualified to be firefighters." Class Action Order, dated 10-26-12, at p. 2; Dkt. # 1011.

### *The Retaliation Against Johnson*

37.     The threats of hostility expressed to the District Court by FDNY personnel at the Fairness Hearing came home to Johnson as soon as he joined the ranks of the FDNY as a firefighter.

38.     On June 7, 2014, the FDNY assigned Johnson to Engine Company 257.  Upon his arrival at Engine 257, the commanding officer, Defendant Captain Curneen, ordered humiliating and needless special one-on-one "training sessions" for Johnson at the outset of each shift in the company.  Curneen repeatedly ordered Johnson to "practice" putting his pants and jacket on and off at the beginning of each tour in the presence of the entire company on the pretext that Johnson did not know how to put his pants on.  Curneen's special training for Johnson was completely unnecessary and purposefully served to humiliate Johnson in the presence of his fellow firefighters who watched him have to put on his pants and boots repeatedly.

39.     Curneen also retaliated against Johnson with abusive performance evaluations.   The first evaluation Curneen gave Johnson was a failing evaluation based on his spurious and subjective assessments only a few weeks after Johnson arrived at the firehouse. Indeed, over the next few months, Curneen presented

Johnson with a series of failing performance evaluations based on the same bogus and subjective assessments.

40.     Other firefighters at Engine 257 joined in Curneen's abuse of Johnson.  For example, when it became known that Johnson did not eat pork, pork and bacon regularly appeared on the menu, forcing Johnson to eat his meals separately.

41.     Johnson was also shunned by his fellow firefighters and denied the courtesy and consideration typically shown firefighters.  For example, on July 3, 2014, three weeks into his assignment to Engine 257, Johnson suffered a serious injury to his shoulder during a four-alarm fire, and Johnson was taken to a hospital from the fire by ambulance.  Not only did no one from his company check on him at the hospital, when he returned to Engine 257, his colleagues belittled his injury—a dislocated shoulder, which required surgery.

42.     On April 2, 2015, Johnson's company responded to a major fire. While inside the burning building, Johnson's oxygen gauge alerted him that his air was dangerously low and needed immediate attention.  Accordingly, Johnson left the fire to return to the truck to refill his oxygen tank.  When Curneen learned what happened to Johnson, he expressed no concern for the possible malfunction of, or tampering with Johnson's oxygen tank.  Instead, Curneen berated Johnson at the scene for having abandoned his post.

43.    The next day Johnson reported for duty, Curneen and others continued berating Johnson falsely for "leaving his position" at the fire.

44.    Curneen's abuse of Johnson escalated until Johnson decided to leave the firehouse later that day to take sick time because of stomach pain.

45.    Curneen then used Johnson's stomach pain as another opportunity to humiliate Johnson. Curneen characterized Johnson's stomach pain as "stress" and ordered Johnson to undergo a psychiatric evaluation, which under FDNY regulations required that Johnson obtain a psychiatric clearance from an FDNY psychiatrist before returning to duty. Curneen also ordered Johnson to get re-training at the Academy before he could return to full duty based on a bogus claim that the re-training was required.

46.    The Academy retraining found no deficiencies in Johnson's abilities to perform as a firefighter. The brief psychiatric evaluation found no issues with Johnson, a medical examination found that the stomach ache was caused by a virus, and the FDNY psychiatrist cleared Johnson to return to Engine 257.

**The *New York Post* Article**

47.    On May 16, 2015, about three weeks after Johnson had returned to duty at Engine 257, Curneen telephoned Johnson at his home at night to tell him that an article concerning him would appear the following day in the *New York Post*.

48.     On May 17, 2015, the *New York Post* published in both its print and online editions a story under the headline, "*Firefighters Fear Colleague Who Routinely Flees Fires*."  The article featured a full facial image of Johnson, enlarged from an informal group photograph taken of Engine Company 257 and a photograph purporting to show Johnson outside of a burning building.  (The article is attached as **Exhibit A**.)

49.     The *New York Post* article cites "FDNY insiders" to detail "facts" about a fire at East 78th Street in Brooklyn that occurred on April 2, 2015 —over six weeks before the *Post*'s "news" story of the fire.  The article identified Johnson as a priority hire and falsely claimed that he was scared to fight fires and that he regularly evaded fires.  The article added the specious and inflammatory statement that the FDNY did not want to discipline him because he was a black priority hire.

50.     On the pretext that the story had "news" to report, the *New York Post* article falsely describes the April 2, 2015 fire as one of several fires that Johnson had "managed to evade" and purported to reprint a photograph of Johnson standing on the street outside the fire while other firefighters were in the burning building, fighting the fire.

51.     Based on disclosures about Johnson's personnel and medical file to the *Post* from unidentified sources, the article also reported that Johnson "took several days of medical leave for stress" after the April 2nd fire, and that Johnson

took "several months of medical leave" after another fire in a six-story apartment building on Rockaway Parkway in a blatant effort to paint Johnson as a malingerer.

52.     Upon information and belief, one of the "FDNY sources" identified in the May 17, 2015 *New York Post* article is Defendant Curneen, Captain of Engine 257, who was identified by one blog post as the source of private information about Johnson.

53.     Upon information and belief, Defendant LaMonda was also a source for the *New York Post* article who provided Johnson's personal and confidential information for the article.

54.     Upon information and belief, Defendant Michael Gala was another source for the *New York Post* article who provided Johnson's personal and confidential information for the article and a photograph purporting to show Johnson standing on the street outside of a burning building while other members of the FDNY were inside the burning building, fighting the fire.

55.     Upon information and belief, Defendant John Doe or Jane Doe was a source for the *New York Post* article who provided Johnson's personal and confidential information for the article, including at least one of the photographs depicting or allegedly depicting Johnson.

56.     Upon information and belief, the reports of Johnson's post-fire medical leave for stress mentioned in the *New York Post* article were provided to

the Post by Defendants Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe.

57.     These individual defendants provided information, photographs and personnel and medical information to the *New York Post* to destroy Johnson's career with the FDNY and portray priority hires like Johnson as incompetent and cowardly in the company of "New York's Bravest."  Indeed, the first two lines of the story reveal the malicious nature of the *New York Post* article:  "He's a firefighter in name only. Michael D. Johnson won't fight fires."

**The Media Lynching of Johnson**

58.     The *Post* article spawned a full-throated media lynching of Johnson as an "Affirmative Action Firefighter."  On the same day the *Post* article was published, the on-line tabloid, *The Daily Mail,* posted its version of the article with the headline, "FDNY company wants 'cowardly' rookie sacked for running away from the scene of fires', report claims."  The *Daily Mail* article had over 4000 shares the day it was published, and brought out comments like "This is what happens when you hire unqualified people to do a job." (Attached as **Exhibit B**.)

59.     Other media reports published the same day as the *Post* article express the same hostility and resentment against Johnson:

• *Frontpagemag.com* featured a full-page image of Johnson's face under the headline, "Affirmative Action Firefighter Refuses to Fight Fires" with

the explanation that "The FDNY was the way it was naturally. The 'diverse' slate couldn't pass written tests. Female candidates couldn't pass physical tests. But the bar was lowered anyway and they were swept in, with predictably disastrous results." (Attached as **Exhibit C**.)

- *scallywagandvagabond.com* featured a full page photo of Johnson's face under the headline question: "Should Michael D. Johnson, FDNY firefighter be fired?" This post quoted several FDNY "sources" who disparaged Johnson, including the Captain of the Engine Company who related that "Tragic Johnson came to irk fellow fire fighters after noted to be AWOL during an April 2 three alarm fire." (Attached as **Exhibit D**.)

- *Breitbart.com*'s headline characterized the a matter as a problem with black priority hire firefighters: "A black firefighter in the New York Fire Department who was hired as a 'priority hire' has allegedly been evading fires while his Engine Co. 257 coworkers risk their lives in the blazes, according to the *New York Post*." (Attached as **Exhibit E**.)

- *Defund.com* screamed "Coward Rookie Firefighter Puts Company in Danger as He Runs Away From Fires." (Attached as **Exhibit F**.)

- *Citizen Action* wrote "FDNY Won't Fire 'Fleeing' Black Firefighter," which elicited blatantly racist comments such as "Blacks are God's curse on America," and "That filthy piece of shit should be tarred and feathered then fired in

public live on tv…;" and the ominous suggestions that Johnson should be gotten rid of, "one way or another," and "I guess he had better not turn his back in another fire situation.  He may be missing in the inferno." (Attached as **Exhibit G**.)

• *Moonbattery.com* headlined, "Affirmative Action in Action: NYPD [sic] Firefighter Runs Away From Fires," and elicited commentary such as "Betchya that Negroid confiscated some drugs/pot before he ran from the fiyah." (Attached as **Exhibit H**.)

• *Saboteur365.wordpress.com* even ran a subtitle on its May 18, 2015 post that plumbed the depths of Jim Crow racism in its report on Johnson, "MICHAEL 'TRAGIC' JOHNSON, MUH NIGGA DUN BE SCERED O DEM FIRES AND SHEEEEEEIT." (Attached as **Exhibit J**.)

These inflammatory racist postings all featured a full facial photographic image of Johnson. *TomoNewsUS* even created an animated video posted on YouTube.com that relates the story of Johnson, characterized as "cowardly Johnson," refusing to fight fires. (https://youtu.be/ZbUOFlEXtPk ). Although animated, the video features actual photographic color images of Johnson, and solicits commentary on "quotas" on hiring of firefighters.

60.     FDNY regulations and New York Civil Rights Law§ 50-a classify firefighter personnel and medical records, including the nature and purpose of medical leave, as confidential and prohibit their disclosure without the express

written consent of the firefighter or a court order. Defendants Michael Gala, Michael Curneen, Jake LaMonda and John or Jane Doe did not have Johnson's consent or a court order to disclose Johnson's personnel or medical records to persons outside of the FDNY.

61.     The false reports of Johnson's conduct as a firefighter, the illegal and unauthorized disclosures of his medical leave records, the resulting media articles stoking racial animus against Johnson as a priority hire, the vitriolic and threatening Internet postings directed at Johnson caused Johnson and his family shame, embarrassment, humiliation and emotional distress, as well as injury to Johnson's reputation.

62.     Not only did the FDNY fail to take genuine investigatory steps to address any of the abuses of Johnson at the hands of its staff, it compounded the retaliation by assigning Johnson to two-weeks of unnecessary re-training, requiring him to undergo an unwarranted psychiatric evaluation, and harassing Johnson with orders to report to a pretextual meeting with an FDNY lawyer six days after Johnson appeared at a public rally addressing racial discrimination within FDNY.

**Ongoing Retaliation**

63.     As noted above, on February 3, 2016, Johnson filed a charge of discrimination with the EEOC, alleging that the planting of false and vicious reports to the media about his conduct at fires and disclosing his personnel and

medical records were done in retaliation for his being hired as a firefighter.  On

April 14, 2016, FDNY responded to the EEOC complaint stating that after an

"extensive" investigation it was "unable to identify the source of the information

leaks and closed its investigation." Letter of Christine Meyer, Assistant Counsel,

FDNY, April 14, 2016, p. 9.

64.    On September 24, 2016, on his regular day off, Johnson attended a

public rally at the National Action Network in Harlem with other members of

FDNY to discuss discrimination against minorities within FDNY.  Five days later,

on September 30, 2016, FDNY Associate Disciplinary Counsel directed Johnson to

report to the office of the Bureau of Investigations and Trials on the pretext of

informing Johnson of the status of their investigation, which had been closed six

months prior.  The true purpose and effect of the notification was to inform

Johnson that the FDNY was watching him and that further retaliation should be

expected.

### FDNY's Systemic Failure to Curb Retaliatory Acts Within its Ranks

65.    The racially insidious, inflammatory, and derogatory article about

Johnson in the *New York Post* was instigated by the FDNY and by the FDNY

individual defendants.  Johnson told FDNY investigators that Defendant Curneen

had prior knowledge of the *Post* article, and that Johnson saw Defendant Gala,

Chief of Uniformed Personnel, observing the April 2nd fire at a point where the

photograph was taken purporting to show Johnson standing on the street. The FDNY investigation, however, allegedly failed to identify any source for the article; instead, the FDNY *promoted* those officials Johnson identified as complicit in planting the story.

66.     The unauthorized, retaliatory and illegal disclosures of Johnson's confidential medical and personnel information, and the planting with the media false and racially inflammatory information about Johnson was a direct, proximate, and foreseeable result of the City and FDNY policymakers' failure to enforce the Court's anti-retaliation orders.

## FIRST CAUSE OF ACTION
### (Retaliation- Title VII- 42 U.S.C. §2000e-3) Against the City of New York

67.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

68.     Johnson's employer, Defendant City of New York, through its agent or agents, including, but not limited to Defendants Michael Gala, Michael Curneen, Jake LaMonda, and John or Jane Doe, as supervisory-level City officials acting within the scope of their employment, discriminated against and retaliated against Johnson because of his acceptance of employment through the Class Action under 42 U.S.C. § 2000e by creating a hostile work environment, by providing false accounts of his conduct as a firefighter, and by intentionally and illegally disclosing Johnson's confidential and sensitive medical and personnel

information to individuals and entities outside of the New York City Fire Department.

69.     Defendant City of New York knew of the discrimination and retaliation by its employees and agents against Johnson and was also well aware of the grave risk of such retaliatory discrimination being committed against Johnson by its employees and agents, but intentionally, recklessly, and unreasonably failed to take sufficient measures to prevent such retaliation from occurring.

70.     As a direct and proximate result of the City's and its employees' and agents' acts and omissions, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

**SECOND CAUSE OF ACTION**
**Retaliation- New York State Human Rights Law- N.Y. Exec. L. § 296-**
**Against Defendants Michael Gala, Michael Curneen, Jake LaMonda and**
**John or Jane Doe**

71.     Johnson realleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

72.     Defendant Michael Gala, Michael Curneen, Jake LaMonda and John or Jane Doe, acting within the scope of their employment as supervisory officials employed by Johnson's employer, the City of New York, retaliated against Johnson for his acceptance of employment through the Class Action under 42 U.S.C. § 2000e by creating a hostile work environment, by subjecting Johnson to humiliating special training and specious performance evaluations, providing false

accounts of his conduct as a firefighter, and by intentionally and illegally disclosing Johnson's confidential and sensitive medical and personnel information to individuals and entities outside of the FDNY.

73.     As a direct and proximate result of the actions by Defendant Michael Gala, Michael Curneen, Jake LaMonda, and John or Jane Doe, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

**THIRD CAUSE OF ACTION**
**Retaliation- New York State Human Rights Law- N.Y. Exec. L. § 296 Against the City of New York**

74.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

75.     Johnson's employer, Defendant City of New York encouraged, condoned and/or acquiesced in its employees' retaliation against Johnson for his acceptance of employment through the Class Action.

76.     As a direct and proximate result of the City's acts and omissions, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

***FOURTH CAUSE OF ACTION***
***(Retaliation- New York City Human Rights Law, N.Y City Admin. Code§ 8-107) Against Defendants Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe***

77.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

78. Defendants Michael Gala, Michael Curneen, Jake LaMonda, and/or John or Jane Doe, acting within the scope of their employment as supervisory officials employed by Johnson's employer the City of New York, retaliated against Johnson for his acceptance of employment through the Class Action under 42 U.S.C. § 2000e by creating a hostile work environment, by subjecting Johnson to humiliating special training and specious performance evaluations, by providing false accounts of his conduct as a firefighter, and by intentionally and illegally disclosing Johnson's confidential and sensitive medical and personnel information to individuals and entities outside of the New York City Fire Department.

79. As a direct and proximate result of Michael Gala, Michael Curneen, Jake LaMonda, and John or Jane Doe's acts, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

80. Pursuant to § 8-502(c) of the New York City Administrative Code, Johnson has, through his counsel, will deliver to the New York City Law Department and the New York City Commission on Human Rights a copy of this Complaint within ten days of the commencement of this action.

### FIFTH CAUSE OF ACTION
### (Retaliation- New York City Human Rights Law- N.Y. City Admin Code§ 8-107) Against the City of New York

81. Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

82.     Johnson's employer, Defendant City of New York, encouraged, condoned and acquiesced in its employees' retaliation against Johnson for his acceptance of employment as a firefighter through a lawsuit challenging the City's racially discriminatory firefighter hiring practices.

83.     As a direct and proximate result of the City's acts and omissions, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

### SIXTH CAUSE OF ACTION
*(Retaliation- First Amendment- 42 U.S.C. § 1983) Against Defendants Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe*

84.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

85.     Johnson's participation as a priority hire applicant in the Class Action is activity protected by the First Amendment of the United States Constitution.

86.     Defendants Michael Gala, Michael Curneen, Jake LaMonda, and/or John or Jane Doe acting under color of state law and in their capacity as employees of the City, retaliated against Johnson for his acceptance of employment through the Class Action under 42 U.S.C. § 2000e by creating a hostile work environment, by subjecting Johnson to humiliating special training and specious performance evaluations, by providing false accounts of his conduct as a firefighter, and by intentionally and illegally disclosing Johnson's confidential and sensitive medical

and personnel information to individuals and entities outside of the New York City Fire Department.

87.     As a direct and proximate result of Defendant Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe's acts, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

### SEVENTH CAUSE OF ACTION
### (Municipal Liability- First Amendment Retaliation-
### 42 U.S.C. § 1983) Against the City of New York

88.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

89.     Defendants Michael Gala, Michael Curneen Jake LaMonda and John or Jane Doe's subjected Johnson to humiliating special training and performance evaluations, made false and defamatory reports of Johnson's purported conduct as a firefighter, and disclosed confidential medical and personnel information to individuals outside of the FDNY in retaliation against Johnson for his acceptance of employment as a firefighter through the Class Action challenging the City's racially discriminatory firefighter hiring practices.

90.     The injuries such actions caused to Johnson were the direct and proximate result of de facto City policies and practices in existence at the time of the actions, which included, among other things:

a.     City and FDNY policymakers, including Commissioner Nigro,

condoning, encouraging, and acquiescing in a longstanding and widespread practice among FDNY personnel of openly and publicly criticizing, intimidating and attacking the reputations of the Vulcan Society, its members, other participants and those who benefited from the Class Action; and

b.      a knowing and reckless failure to prevent retaliation by FDNY personnel against the Vulcan Society, its members and other participants in the Vulcans lawsuit, the risk of which was readily apparent to FDNY, Commissioner Nigro, and other City policymakers in the months preceding the false and retaliatory media reports of Johnson's purported conduct as a firefighter and disclosure of confidential medical and personnel information; and

c.      a deliberate indifference by the Commissioner and his executive staff to the fact that priority hires were going to face massive retaliation by the rank-and-file members and the senior staff of the FDNY, consistent with the well-established history of racism in the FDNY.

91.      The City of New York is liable for the conduct of its employees against Johnson.  Commissioner Nigro and the other senior officers and policy-makers at the FDNY knew to a moral certainty that their employees would confront a situation where priority hires such as Johnson would be subjected to hostility and retaliation.  That situation presents itself with a difficult choice for FDNY employees and their supervisors of the sort that training and supervision

can ameliorate and make less difficult.  In addition, there is a history of employees and supervisors mishandling the situation with Black job applicants and firefighters as well as an established history of racial discrimination within the ranks of the FDNY against African Americans and other minorities.  Finally, the wrong choices by employees and supervisors within the FDNY will frequently cause a deprivation of the constitutional rights of African Americans who are employed or seek employment as firefighters with the FDNY.

### EIGHTH CAUSE OF ACTION
*(42 U. S. C. Section 1981 Claim Against Defendants City of New York, Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe)*

92.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

93.     The Defendants have intentionally discriminated against and retaliated against Johnson because of his race.

94.     The Defendants' discriminatory and retaliatory conduct deprived Johnson of the right to make and enforce contracts, to the enjoyment of all benefits, privileges, terms and conditions of the contractual and employment relationship, and to the full and equal benefit of all the laws ands proceedings for the security of persons and property as enjoyed by white citizens.

95.     As a result, Johnson has suffered damages in an amount to be established at trial.

## NINTH CAUSE OF ACTION
### (Common Law Intentional or Negligent Infliction of Emotional Distress) Against Defendants Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe)

96.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

97.     Defendant Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe's retaliatory conduct, including without limitation, the illegal and retaliatory disclosure of Johnson's purported conduct as a firefighter and his confidential medical and personnel information to individuals outside of the FDNY was extreme and outrageous, and was done with either the intent of causing Johnson severe humiliation and emotional distress, or was done in reckless and negligent disregard for such harm to Johnson.

98.     As a direct and proximate result of their acts, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

## TENTH CAUSE OF ACTION
### (Contempt of Lawful Federal Court Order Against Defendants City of New York, Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe)

99.     Johnson re-alleges and incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

100.    The City of New York, through its agent or agents, including, but not limited to Defendants Michael Gala, Michael Curneen, Jake LaMonda, and John or

Jane Doe, as supervisory-level City officials acting within the scope of their employment, were aware of, and knowingly disobeyed and resisted the lawful orders of United States District Court Judge Nicholas Garaufis in the Vulcan Society lawsuit; specifically, the Remedial Order of December 8, 2011, and the Final Relief Order of October 26, 2012.

101.    By subjecting Johnson to the retaliatory acts alleged herein, the defendants violated the specific provisions of the Remedial Order and the Final Relief Order prohibiting retaliation against, or in any way adversely affecting the terms or conditions of employment of any person who has sought or obtained relief from the court in this case.

102.    As a direct and proximate result of their acts, Johnson suffered mental anguish, pain and suffering, emotional distress and injury to his reputation.

103.    The Court should find that the Defendants are in contempt of court and should impose coercive, punitive and compensatory remedies, fines and awards to Johnson and against the Defendants pursuant to the Court's inherent power and pursuant to 18 U. S. C. § 401(3).

WHERFORE, Johnson demands the following relief jointly and severally against all Defendants:

(a)     a declaration that Defendants violated Johnson's federal constitutional and state and federal statutory rights;

(b)      an order directing defendants to cease violating Johnson's rights and the Court's Order prohibiting retaliatory or adverse actions against Johnson;

(c)      compensatory damages for emotional and reputational injuries suffered by Johnson by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable in conformity with the evidence at trial;

(d)      punitive damages against Defendant Michael Gala, Michael Curneen, Jake LaMonda and/or John or Jane Doe to the extent allowable by law;

(e)      reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k);

(f)      a determination that the Defendants are in contempt of court and imposing such coercive, punitive and compensatory remedies, fines, and awards in favor of the Johnson and against the Defendants as the Court deems just and proper;

(g)      costs and disbursements of this action; and

(h)      such further relief as appears to the Court to be just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: New York, New York
      November 18, 2016

By: *s/NBS*

_____

Nathaniel B. Smith
100 Wall Street, 23rd Floor
New York, New York 10005
(212) 227-7062
natbsmith@gmail.com

John D. Lenoir
100 Wall Street, 23rd Floor
New York, New York 10005
(212) 335-0250
john.lenoir@gmail.com

Of Counsel,
Peter Gleason