UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

MICHAEL JOHNSON,

     *Plaintiff*,

**MEMORANDUM & ORDER**

-against-

16-CV-6426(KAM)(VMS)

THE CITY OF NEW YORK, DANIEL A.
NIGRO, MICHAEL GALA, MICHAEL
CURNEEN, JAKE LAMONDA, AND JOHN JOE
OR JANE DOE,

     *Defendants*.

--------------------------------X

**MATSUMOTO, United States District Judge:**

       Plaintiff Michael Johnson ("plaintiff") commenced this action in November 2016 alleging violations of his constitutional and civil rights in connection with alleged workplace retaliation and disclosure of protected personal information, which resulted in derogatory media articles about plaintiff.  On March 31, 2018, the court granted in part and denied in part motions to dismiss by defendants City of New York, Commissioner Daniel A. Nigro, Michael Gala, Michael Curneen ("Curneen"), and James Lemonda ("Lemonda").  *See Johnson v. City of New York*, No. 16-CV-6426(KAM)(VMS), 2018 WL 1597393, at *1 (E.D.N.Y. Mar. 31, 2018) ("*Motion to Dismiss Order*").  The court also granted plaintiff leave to replead certain claims, *id.* at *25, and plaintiff did so.  (*See* Second Amended Complaint, ECF No. 87.)

On May 12, 2018, plaintiff commenced a separate action in this district (the "Second Action"), which was assigned case number 18-CV-2842, and which is based on substantially the same occurrences as the instant action, against Paul Mannix ("Mannix"), Joseph Kearney ("Kearney"), and James McCarthy ("McCarthy"). (*See* Second Action Complaint, ECF/Second Action No. 1.)[1]

Presently before the court is plaintiff's motion to file a third amended complaint in this action, 16-CV-6426, naming Mannix, Kearney, and McCarthy as defendants. ("Motion to Amend," ECF No. 108.) In support of his motion, plaintiff has submitted a memorandum of law ("Pl. Mem.," ECF No. 109), which attaches various exhibits, including plaintiff's proposed third amended complaint. ("Proposed TAC," ECF No. 109-1.) Plaintiff has also submitted a reply memorandum. (ECF No. 110.) Defendants Mannix and Kearney oppose the motion, and have submitted an opposition memorandum. ("Opp.," ECF No. 111.)

For the reasons set forth below, the court GRANTS plaintiff's Motion to Amend his complaint.

---

[1] Unless otherwise indicated, references to documents filed on the ECF system are to documents filed in this action, case number 16-CV-6426. References to document filed in the second action, case number 18-CV-2842, are indicated by "ECF/Second Action."

## I.  General Background

The court assumes familiarity with the factual allegations at issue in this action, as set forth in plaintiff's first amended complaint and discussed in detail in the court's March 31, 2018 order on certain defendants' motions to dismiss. *See Motion to Dismiss Order*, 2018 WL 1597393, at *1-7.[2]  As relevant here, plaintiff alleges that following his participation in a class action lawsuit in this district (the "Class Action"), the Fire Department of the City of New York ("FDNY") appointed plaintiff as a "priority hire" firefighter in compliance with the orders of the court in the Class Action. *Id.* at *2-4.  Plaintiff further alleges that immediately upon his appointment he was subjected to humiliating, abusive, and exclusionary treatment by his colleagues and superiors.  *Id.* at *4.

The abusive treatment to which plaintiff alleges he was subjected reached a crescendo following plaintiff and his company's response to a fire on April 2, 2015.  *Id.* at *5. Plaintiff alleges that while he was at the scene of the fire, his oxygen gauge indicated that his air supply was running low, and he consequently went back to the fire truck to refill his

---

[2]     Citations to plaintiff's amended complaint in the *Motion to Dismiss Order* are omitted throughout this Memorandum and Order.

oxygen tank. *Id.* When defendant Curneen, who was at the time the Captain of plaintiff's Engine Company, learned that plaintiff had returned to the truck, he berated plaintiff for abandoning his post, expressing no concern regarding plaintiff's oxygen tank. *Id.* On plaintiff's next date on duty, Curneen, joined by others, continued berating plaintiff for "leaving his position," and "abus[ed] plaintiff" until plaintiff left the station due to stomach pain. *Id.* (internal quotation marks omitted).

Curneen characterized plaintiff's stomach pain as "stress" and ordered plaintiff to undergo a psychiatric evaluation and undertake re-training at the FDNY Academy. *Id.* Under FDNY regulations, because of Curneen's order to undergo a psychiatric evaluation, plaintiff was barred from returning from duty until he obtained a psychiatric clearance. *Id.* Plaintiff ultimately obtained clearance, and his re-training resulted in a finding that his abilities to perform as a firefighter were not deficient. *Id.*

On the night of May 16, 2015, approximately three weeks after plaintiff's return to duty, Curneen called plaintiff and told him that an article involving plaintiff would appear the next day in the *New York Post*. *Id.* The next day, the *New York Post* published an article with the headline "Firefighters Fear Colleague Who Routinely Flees Fires" (the "Article") in its

print and online editions. *Id.* The Article, which plaintiff

has annexed to each complaint in this action (*e.g.*, ECF No. 23-

1), features a picture of plaintiff enlarged from an informal

photograph of plaintiff's Engine Company, as well as a

photograph purportedly showing plaintiff outside a burning

building. *Motion to Dismiss Order*, 2018 WL 1597393, at *5.

According to the Article, the second of these photographs

depicts plaintiff "at the curb next to an FDNY vehicle while

fellow firefighters march up steps into a house engulfed in

black smoke." *Id.*

The Article, citing "FDNY insiders" as its sources,

also identifies plaintiff by name, refers to his status as a

priority hire, and states that, according to sources, plaintiff

"managed to evade the smoke and flames" on several occasions

since his hiring. *Id.* It also states that "department members

are afraid to openly complain or criticize plaintiff, who is

Black" due to his status as a priority hire. *Id.* Further, the

Article quotes FDNY "sources" who portray plaintiff as a safety

risk and, based on disclosures about plaintiff's medical and

personnel file, reports that plaintiff "took several days of

medical leave for stress" following the April 2, 2015 fire, and

"several months' medical leave after a fire in a six story apartment building in July of 2014." *Id.*[3]

According to plaintiff, the article resulted in his "full-throated media lynching" as an "Affirmative Action Firefighter," in outlets including, but not limited to, *The Daily Mail*, *frontpagemag.com*, *scallywagandvagabond.com*, and *breitbart.com*. *Id.* at *6. These outlets also disparaged plaintiff, and internet postings based on the Article were met with racist comments and threats, including gossamer-thin suggestions that plaintiff should be killed. *Id.* The instant action followed.

## II. The Second Action and Motion to Amend

Plaintiff initiated the Second Action, 18-CV-2842, by filing a complaint, naming Mannix, Kearney, McCarthy, and ten John Does as defendants, on May 12, 2018. (*See* Second Action Complaint, ECF/Second Action No. 1.) McCarthy answered the complaint on July 16, 2018 (ECF/Second Action No. 16), and Mannix and Kearney sought leave to move to dismiss in lieu of filing an answer. (*See* Mannix Pre-Motion Letter, ECF/Second Action No. 19; Kearney Pre-Motion Letter, ECF/Second Action No. 21.) At a pre-motion conference held on August 22, 2018

---

[3]     As discussed in greater detail in the *Motion to Dismiss Order*, plaintiff alleges that he took leave following the July 2014 fire because he sustained a serious shoulder injury, which required surgery, and that his colleagues failed to "check on" him at the hospital and belittled his injury. *Motion to Dismiss Order*, 2018 WL 1597393, at *4.

regarding Mannix and Kearney's proposed motions to dismiss, the
court asked plaintiff why he initiated a new action instead of
moving to amend his complaint in the instant action.
Plaintiff's counsel indicated that the decision to initiate a
new action was based on counsel's view that a motion to amend
might be opposed, and that the statute of limitations on
plaintiff's claims against Mannix, Kearney, and McCarthy might
run prior to a ruling on a hypothetical motion to amend.

The court suggested that plaintiff move to amend his
complaint in the instant action, plaintiff agreed to do so, and
the parties agreed that Mannix and Kearney's requests for leave
to file motions to dismiss would be withdrawn without prejudice
to renewal, pending the outcome of plaintiff's motion for leave
to amend. (*See* August 22, 2018 Minute Entry in Second Action;
August 22, 2018 Scheduling Order in Instant Action.)  As
contemplated by the court's briefing schedule (*see id.*),
plaintiff filed the Motion to Amend and supporting papers,
including the Proposed TAC, on October 5, 2018.[4]

As relevant to plaintiff's motion, the Proposed TAC
alleges that Mannix is an FDNY Deputy Battalion Chief, and

---

[4]     The Proposed TAC captures all causes of action plaintiff asserted in
the Second Action.  Consequently, plaintiff's filing of a third amended
complaint consistent with the terms of this Memorandum and Order and the
*Motion to Dismiss Order* obviates the need to maintain two separate actions,
whether consolidated or not.

Kearney is an FDNY firefighter. (Proposed TAC ¶¶ 16-17.)[5] Both Mannix and Kearney were allegedly involved in an organization named "Merit Matters" at all relevant times, with Mannix serving as the organization's president and Kearney serving as its vice-president. (*Id.*) According to plaintiff, Merit Matters is "an organization of FDNY Firefighters and Fire Officers dedicated to opposing affirmative action in the FDNY and combatting reforms advocated by the plaintiffs in the Class Action." (*Id.* ¶ 16; *see also id.* ¶ 37 "In 2010, Defendants Mannix, Kearney, and McCarthy formed Merit Matters, an organization of hundreds (if not thousands) of FDNY firefighters and officers, for the purpose of opposing integration of the FDNY.")

The Proposed TAC also asserts that, as part of their efforts to "discredit and attack the remedial orders" entered in the Class Action, Mannix and Kearney formed and participated in a conspiracy "to unlawfully provide to a local newspaper personal and confidential information about minorities, women, and others who participated in the Class Action." (*Id.* ¶ 47.) Mannix and Kearney allegedly "underst[ood] and belie[ved] that the *New York Post* would publish inflammatory stories about those minorities and thereby undercut the objectives of the Class

---

[5]     This Memorandum and Order does not address in detail the Proposed TAC's allegations against McCarthy because they are not relevant to Mannix and Kearney's opposition to the motion to amend presently before the court.

Action and magnify and justify the backlash against the District Court's remedial orders." (*Id.* ¶ 48.)

Further, plaintiff alleges that over the course of a three-year period, "the individual [d]efendants worked together with others inside and outside the FDNY to obtain and to disclose information relating to priority hires to the *New York Post* in order to generate a series of negative articles about minorities who were involved in, or benefitted from, the remedial orders." (*Id.* ¶ 50.) The Proposed TAC attaches copies of what plaintiff purports to be several such articles. (*See* Motion to Amend Ex. 6, ECF No. 109-6.) According to the Proposed TAC, Mannix used his position within the FDNY to obtain information that Mannix then relayed to the *New York Post* for inclusion in the foregoing articles, and to obtain cooperation of subordinates "in his efforts to disclose damaging information about women and minority candidates." (Proposed TAC ¶¶ 51-52, 54.)[6]

According to the Proposed TAC, Mannix and Kearney were involved in the disclosure of information to the *New York Post*

---

[6]    Plaintiff also asserts that a Justice of the New York Supreme Court wrote in a decision denying a motion to quash a subpoena that Mannix "obtained sensitive and confidential information from a senior officer of the FDNY's Department of Personnel about several African-American and Hispanic employees of the FDNY." (Proposed TAC ¶ 54.) A review of the cited decision, however, indicates that it does not mention Mannix (or, for that matter, Kearney). *See Houton v. Fire Dep't City of New York*, No. 10182/2014, 47 Misc. 3d 1208(A), 15 N.Y.S.3d 712, 2015 WL 1637760, *1-9 (N.Y. Sup. Ct. Apr. 8, 2015).

that resulted in the publication of the May 17, 2015 Article about plaintiff.  The Proposed TAC alleges that, "[u]pon information and belief, the reports of [plaintiff]'s post-fire medical leave for stress mentioned in the Article were provided to the *Post* by," among others, Mannix and Kearney in violation of federal and state laws and regulations.  (Proposed TAC ¶ 81; *see also* Proposed TAC ¶¶ 76-77 (alleging, upon information and belief, that Mannix and Kearney were "sourc[es] for the Article who provided [plaintiff]'s personal and confidential information," and that Mannix "organized the other individual [d]efendants' involvement" in the Article's publication).)  The materials provided to the *Post* included "personal and medical information" and photographs (*id.* ¶ 82), and were provided pursuant to a "conspiracy and agreement to violate [plaintiff]'s rights in violation of 42 U.S.C. [§§] 1981, 1983, and 1985(3)." (*Id.* ¶¶ 83.)

The Proposed TAC also alleges that "[t]elephone records show that shortly before and after" defendant Lemonda spoke with the author of the *New York Post* article, Lemonda "spoke with Mannix [and] Kearney . . . in a flurry of calls within three days of the Article's publication."  (*Id.* ¶ 80.) As discussed in the *Motion to Dismiss Order*, plaintiff alleges

that Lemonda was one of the *New York Post*'s sources.  *Motion to Dismiss Order*, 2018 WL 1597393, at *6.[7]

## Legal Standard

Motions to amend a complaint are governed by Federal Rule of Civil Procedure ("Rule") 15.  Rule 15(a) provides where, as here, a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Leave to amend is within the court's discretion, *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010), and the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

In determining whether to grant leave to amend, a district court *may* consider "whether allowing the amendment of the pleading at this stage of the litigation will prejudice" the opposing party.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  However, "[t]he court is not required to reach the issue of prejudice."  *Myers v. Moore*, 326 F.R.D. 50, 64 (S.D.N.Y. 2018) (citing *Otegbade v. New York City Admin. For Children Servs.*, No. 12-CV-6298(KPF), 2015 WL 851631, at *4 (S.D.N.Y. Feb. 27, 2015)).

---

[7]    The court previously concluded that the allegations regarding Lemonda in plaintiff's amended complaint sufficed to state claims against Lemonda for violation of plaintiff's rights under the New York State and New York City Human Rights Laws, as well as under 42 U.S.C. § 1981.  *Motion to Dismiss Order*, 2018 WL 1597393, at *25.

A party seeking leave to amend under Rule 15 must establish "that amendment is not futile, is not the product of undue delay or bad faith, and would not overly prejudice the non-movant." *In re American Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221(NGG)(RER), 2016 WL 748089, at *4 (E.D.N.Y. Jan. 7, 2016) (citing *Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. 12-cv-5682 (JS) (AKT), 2015 WL 1476422, at *15 (E.D.N.Y. Mar. 31, 2015)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible on its face when it contains sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In applying Rule 12(b)(6), courts must generally accept as true all allegations stated in the complaint and draw all reasonable inferences in favor of the plaintiff. *Kassner*,

496 F.3d at 237 (citations omitted).  Importantly, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, as well as to any "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).  It is also inapplicable to "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

The plausibility requirement, however, "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted); *accord Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). Additionally, although "[t]he plausibility standard is not akin to a 'probability requirement,'" pleading "facts that are 'merely consistent with' a defendant's liability" does not suffice to establish plausibility.  *Iqbal*, 556 U.S. at 678 (citing and quoting *Twombly*, 550 U.S. at 556-57).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will a

complaint that merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (citing and quoting *Twombly*, 550 U.S. at 555, 557).

Additionally, in reviewing a proposed complaint to determine whether leave to amend would be futile, the court may consider documents "attached to the complaint or incorporated in it by reference" because these documents may be considered in adjudicating a Rule 12(b)(6) motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Thus, the court may properly consider the Article and all other attachments to the Proposed TAC.

Importantly, when considering the requirements of Rule 12 in the context of a futility-based objection to a Rule 15 motion, "courts need not determine futility based only on an assessment of the proposed amendments – that is, the complaint presented to the court for its consideration." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (citation omitted); *see also Kassner*, 496 F.3d at 235 (directing the district court to consider "whether the proposed amendment *or different amendments* to the complaint should be allowed." (emphasis added)). "Instead, courts may consider all possible amendments when determining futility," and leave to amend may be warranted where a plaintiff may be able to allege additional facts that would suffice to meet the pleading

14

requirements of Rule 8 and Rule 12.  *Panther Partners*, 347 F. App'x at 622.

**Discussion**

Mannix and Kearney oppose plaintiff's motion for leave to file the Proposed TAC because, according to them, filing the Proposed TAC is inconsistent with the relief plaintiff previously requested from this court, and authorizing its filing would unduly prejudice them.  (Opp. at 5-8.)  Additionally, Mannix and Kearney contend that amendment would be futile, as the Proposed TAC fails plausibly to allege claims against them under 42 U.S.C. § 1983 ("section 1983").  (*Id.* at 8-20.)[8]

## I.    Relief Requested and Prejudice

Mannix and Kearney assert that the substance of plaintiff's Proposed TAC is not consistent with the description of the Proposed TAC in the Motion to Amend.  More specifically, Mannix and Kearney point out that plaintiff's memorandum of law states that plaintiff "seeks to add claims under [42 U.S.C. §§ 1981, 1983, and 1985(c)" against Mannix and Kearney (Opp. at 6 (citing Pl. Mem. at 2)), but the Proposed TAC goes further and seeks to assert claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") against

---

[8]    Mannix and Kearney are silent as to the claims asserted in the Proposed TAC other than the claims against them under section 1983 and the New York State and New York City Human Rights Laws.  Consequently, the court concludes that their opposition to plaintiff's motion for leave to amend is limited to the claims expressly referenced in their opposition.

Mannix and Kearney.  (*Id.* (citing Proposed TAC ¶¶ 110-12, 116-19).)  According to Mannix and Kearney, because of this discrepancy, plaintiff has not properly moved the court with respect to the NYSHRL and NYCHRL claims, and plaintiff should not be allowed to include these claims in any amended complaint.  (*See id.*)

The court respectfully rejects this argument.  In the Motion to Amend, plaintiff clearly requests leave to file the Proposed TAC, which is attached as an exhibit.  Consequently, plaintiff properly has requested leave to include claims against Mannix and Kearney under the NYSHRL and the NYCHRL in the Proposed TAC.  Moreover, Mannix and Kearney do not assert, much less explain why, the NYSHRL or NYCHRL claims specifically are futile or brought in bad faith, or would unduly prejudice them.  Consequently, the court declines to preclude plaintiff from including the NYSHRL and NYCHRL claims against Mannix and Kearney in an amended complaint.

Mannix and Kearney also assert that granting the Motion to Amend would unduly prejudice them.  (Opp. at 6-8.)  According to Mannix and Kearney, this prejudice arises because "plaintiff has taken advantage of the [c]ourt's leave to amend to add additional facts based on the defendants['] pre-motion conference letter."  (*Id.* at 7.)  Further, according to Mannix and Kearney, "plaintiff was aware of [their] potential

involvement in the [instant action] before he filed the second amended complaint," but "made the strategic choice not to follow the proper procedure of moving the court for leave to add the Second Action [d]efendants under Rule 15(a)," opting instead to file the Second Action. (*Id.* at 7-8.)

Mannix and Kearney's assertion that the addition of factual allegations based on their pre-motion conference letters prejudices them is without merit. "A fundamental purpose of a pre-motion conference is to discuss potential defects in pleadings and to obviate successive pleadings." *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018). If federal court plaintiffs were barred from re-pleading with their eyes open to potential pleading defects raised in connection with a pre-motion conference, the foregoing "fundamental purpose" of a pre-motion conference could not be fulfilled. Following from the foregoing, plaintiff's actions in revising the Proposed TAC to address potential pleading defects represent the pre-motion conference mechanism working precisely as it should, rather than an effort by plaintiff to obtain an unfair advantage over his adversaries.

The court also rejects Mannix and Kearney's argument that plaintiff should now be precluded from moving for leave to amend under Rule 15 because he previously chose to file a separate action against them. Mannix and Kearney offer no

authority for the proposition that by filing a new action, rather than seeking leave to amend, plaintiff proceeded improperly or waived his rights to seek leave to amend his complaint in the instant action under Rule 15. Plaintiff is now moving under Rule 15, and even if the Motion to Amend were denied, plaintiff's complaint against Mannix and Kearney in the Second Action would be unaffected and remain pending. Moreover, in such a scenario, the court would readily grant plaintiff leave to amend the Second Action complaint to address purported defects identified by Mannix and Kearney. Consequently, the court declines to preclude plaintiff from pleading additional facts in an amended complaint in response to the issues raised in Mannix and Kearney's pre-motion conference letters in the Second Action, or based on Mannix and Kearney's contention that plaintiff should have previously moved for leave to amend under Rule 15.

## II. Futility

Mannix and Kearney also contend that plaintiff should not be allowed to amend his complaint to assert claims against them under section 1983 because amendment would be futile. Thus, the court must determine whether the Proposed TAC in its present form, or with any possible amendments, suffices to state a claim under section 1983. *See Panther Partners*, 347 F. App'x

at 622 ("[C]ourts may consider all possible amendments when determining futility.").

Section 1983 imposes liability on any person who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States under color of law, 42 U.S.C. § 1983, but does not itself create any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citations omitted). Additionally, a plaintiff must establish a defendant's "personal involvement . . . in alleged constitutional deprivations [a]s a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Mannix and Kearney do not dispute that plaintiff has sufficiently pleaded that he was deprived of his "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell*, 13 F.3d at 547 (citation

omitted). As the court concluded in the *Motion to Dismiss Order*, plaintiff's allegations regarding the publication of the *New York Post* Article, and Lemonda's actions and motivations in providing information for use in the Article, suffice to allege a violation of plaintiff's rights under 42 U.S.C. § 1981 ("section 1981"), which provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a); *Motion to Dismiss Order*, 2015 WL 1597393, at *17-19.

The court also granted plaintiff leave to replead his section 1981 claim against certain defendants as a claim under section 1983, alleging a violation of his rights under section 1981. *Id.* at *25.

Mannix and Kearney contend, however, that plaintiff's proposed section 1983 claims against them are futile because plaintiff has not pleaded, and cannot plead, that they were personally involved in any deprivation of plaintiff's rights (Opp. at 9-16), or that they acted under color of state law. (*Id.* at 17-20.) The court respectfully disagrees.

### A.    Personal Involvement

As noted above, the Proposed TAC alleges, on information and belief, that Mannix and Kearney, in violation of federal and state laws and regulations, provided information to the *New York Post* in connection with the Article, and were among the Article's sources.  (*See* Proposed TAC ¶¶ 81 ("Upon information and belief, the reports of [plaintiff]'s post-fire medical leave for stress mentioned in the Article were provided to the *Post* by . . . Paul Mannix[] [and] Joseph Kearney . . . in violation of . . . federal and state laws and regulations."), 76-77 (alleging, upon information and belief, that Mannix and Kearney were "sourc[es] for the Article who provided [plaintiff]'s personal and confidential information," and that Mannix "organized the other individual [d]efendants' involvement" in the Article's publication).)  Additionally, based on telephone records, the Proposed TAC alleges that defendant Lemonda, another alleged source for the *New York Post* Article, "spoke with Mannix [and] Kearney . . . in a flurry of calls within three days of the [*New York Post*] Article's publication."  (*Id.* ¶ 80.)

As the court noted in the *Motion to Dismiss Order*, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and

control of the defendant, or where the belief is based on
factual information that makes the inference of culpability
plausible."  2018 WL 1597393, at *8 (quoting *Arista Records*, 604
F.3d at 120 and citing *Boykin*, 521 F.3d at 215).  Here, in
addition to alleging Mannix and Kearney's involvement "upon
information and belief," the Proposed TAC alleges with
specificity that Mannix and Kearney were regularly in contact
with Lemonda at and around the time of the *New York Post*
Article's publication.  (Proposed TAC ¶ 80.)  Plaintiff has also
alleged a purported motive for Mannix and Kearney's alleged
actions: their hostility to the Class Action and to "priority
hires."  (*See* Proposed TAC ¶¶ 37-44.)  Further, the court
determined that plaintiff sufficiently stated a claim under
section 1981 based on plaintiff's contention that Lemonda was a
source for the article.  *Motion to Dismiss Order*, 2018 WL
1597393, at *17-19.

Based on the foregoing, and without deciding whether
the allegations in the Proposed TAC suffice to state a claim
under Rule 12, the court concludes that the purported lack of
allegations of personal involvement does not render futile
plaintiff's request to file an amended complaint seeking to
assert section 1983 claims against Mannix and Kearney.  At a
minimum, based on the allegations in the Proposed TAC, it
appears that plaintiff may be able to further support the

allegations in the Proposed TAC to allege facts that would establish Mannix and Kearney's personal involvement. Consequently, the court will not deny plaintiff's motion for leave to amend as futile for inability to plead Mannix and Kearney's personal involvement. Further, plaintiff may plead additional facts regarding Mannix and Kearney's purported personal involvement in his third amended complaint.

   **B.    "Under Color of Law"**

   Mannix and Kearney also assert that the Proposed TAC fails to sufficiently allege that they acted "under color of law" in purportedly depriving plaintiff of his federal rights, and that granting leave to amend is therefore futile. Again without deciding whether plaintiff's Proposed TAC sufficiently states a section 1983 claim against Mannix and Kearney, the court disagrees.

   The Proposed TAC expressly alleges that Mannix and Kearney are FDNY employees, and specifically that Mannix is a Deputy Battalion Chief, and Kearney is a firefighter. (Proposed TAC ¶¶ 16-17.) These allegations alone suggest that amendment of plaintiff's complaint to allege section 1983 claims against Mannix and Kearney would not be futile for inability to allege that they acted under color of law, as "[s]tate employment is generally sufficient to render the defendant a state actor."

*West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982)).

Moreover, according to the Proposed TAC, Mannix allegedly availed himself of his position as a Deputy Battalion Chief to obtain cooperation from subordinates and damaging information regarding priority hire firefighters that Mannix then provided to the *New York Post*.  (Proposed TAC ¶¶ 51-52.) Additionally, as noted herein and discussed in the *Motion to Dismiss* order, the *New York Post* Article identified its sources as "FDNY" sources, and the sources discussed plaintiff's performance as an FDNY firefighter, and medical leave in disparaging terms.  *See Motion to Dismiss Order*, 2018 WL 1597393, at *5.  Thus, the Proposed TAC, which references the Article, indicates a connection between the sources' actions in providing information for the Article and their government employment.  Further, as discussed at length in the *Motion to Dismiss* order, plaintiff has sufficiently alleged that the disclosures made to the *New York Post* constitute a violation of his federal rights.  *E.g., id.* at *17-19 (explaining denial of Lemonda's motion to dismiss plaintiff's section 1981 claim against him).

The Proposed TAC's allegations regarding Mannix and Kearney, as well as the Article's clear indication of a connection between its sources' government employment and their

disclosure of information for the Article, at a minimum indicate that plaintiff may be able to allege further facts that would establish that Mannix and Kearney acted under color of law. Consequently, the court concludes that amendment of the plaintiff's complaint to include section 1983 claims against Mannix and Kearney would not be futile for inability to allege that they acted "under color of law." Additionally, plaintiff may include in his third amended complaint additional facts in support of his contention that Mannix and Kearney were state actors in undertaking their challenged actions.

## Conclusion

For the foregoing reasons, the Motion to Amend is GRANTED. Plaintiff is respectfully directed to file a Third Amended Complaint as a separate docket entry within seven (7) days of the entry of this order. As discussed herein, plaintiff may include additional factual allegations to establish that defendants Mannix and Kearney were personally involved in depriving him of his federal rights, and that they acted "under color of law." Additionally, the parties are respectfully directed to file a joint letter to the court stating how they intend to proceed in this action and in 18-CV-2842 within fourteen (14) days. Plaintiff is urged to seriously consider

dismissing the Second Action, 18-CV-2842, or to explain in the joint letter why it is necessary to maintain the Second Action.

**SO ORDERED.**

Dated:     October 24, 2018
           Brooklyn, New York

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge