UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
MICHAEL JOHNSON,                                        :
                                                        :
                    Plaintiff,                          :
                                                        :                    **MEMORANDUM & ORDER**
       -against-                                        :
                                                        :                    No. 16 Civ. 6426 (KAM) (VMS)
THE CITY OF NEW YORK, MICHAEL GALA, :
individually and in his official capacity as Deputy :
Chief in the New York City Fire Department; :
MICHAEL CURNEEN, individually and in his :
official capacity as Captain in the New York City :
Fire Department, JAKE LAMONDA, individually :
and in his official capacity as an employee of the :
New York City Fire Department, PAUL D. :
MANNIX, individually and in his official :
capacity as Deputy Battalion Chief of the :
New York City Fire Department, JOSEPH :
KEARNEY, individually and in his official :
capacity as Firefighter of the New York City Fire :
Department, JAMES McCARTHY, individually :
and in his official capacity as a Lieutenant of the :
New York City Fire Department and JOHN :
DOES or JANE DOES, individually and in his :
or her or their official capacity as an employee of :
the New York City Fire Department, :
                                                        :
                    Defendants.                         :
------------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

       Plaintiff Michael Johnson ("Plaintiff") brought this action against the City of New York

("City"), Michael Gala, Michael Curneen, Jake Lamonda, Paul Mannix, Joseph Kearnery, James

McCarthy, and John Doe or Jane Doe (collectively, "Defendants"), pursuant to 42 U.S.C. §

2000e-3, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, alleging employment discrimination and

retaliation.  Third Am. Compl. ¶¶ 25-26, 115-117, 161, ECF No. 115.  Before the Court is

Plaintiff's motion to quash, ECF Nos. 100 ("Mot. to Quash"), by which Plaintiff requests that the

deposition and document subpoena served on his attorney, Peter Gleason, be quashed.  See Mot.

to Quash.

For the following reasons, Plaintiff's motion to quash the subpoena is **granted in part**

**and denied in part**.  The motion to seal the Gleason submission, ECF No. 101, is **denied**.  Mr.

Gleason may withdraw the submission or publicly file it.

## I.      BACKGROUND

Plaintiff was a priority hire firefighter as a result of a class action lawsuit brought against

the New York City Fire Department ("FDNY") alleging racially discriminatory hiring practices.

See generally United States v. City of N.Y., No. 07 Civ. 2067 (NGG), 2010 WL 2838386

(E.D.N.Y. July 19, 2010).  Plaintiff alleges that he was retaliated against under Title VII, 42

U.S.C § 2000e-3, and New York City Human Rights Law, N.Y. City Admin Code § 8-107, and

that he suffered First Amendment retaliation under 42 U.S.C § 1983 for his membership in, and

hiring as part of, the class.  Third Am. Compl. ¶¶ 25-26, 115-117, 161.

Plaintiff claims he was subjected to humiliating tasks, psychiatric examinations and given

failing performance evaluations without cause.  Third Am. Compl. ¶ 3.  Most of his claims and

the present motion derive primarily from an article published in the New York Post on May 17,

2015 ("the Article"), about Plaintiff's alleged inclination to avoid fighting fires, including an

April 2, 2015 three-alarm fire.  Third Am. Compl.  ¶¶ 76-102; Ex. 4 of Third Am. Compl; Mot.

to Quash.  In the Article, Plaintiff is described as lazy, "slow and . . . a danger."  Ex. 4 of Third

Am. Compl. at 1.  The Article revealed Plaintiff's medical leave record and claimed that he was

scared of fires and that he "flees" from them.  Id.  The Article quoted several FDNY "sources."

Id.

## II. APPLICABLE LAW

The Federal Rules of Civil Procedure provide that a party may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). A district court may limit

> [t]he frequency or extent of use of the discovery methods . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(2)(C). A court may also limit discovery "for good cause shown" and "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "that the . . . discovery not be had." Fed. R. Civ. P. 26(c)(1). With respect to subpoenas, pursuant to Rule 45, a court may "quash or modify [a] subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). "The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) (citing Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)).

In the Second Circuit, although "depositions of opposing counsel are disfavored," they are not categorically prohibited. United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991). "Rather, the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D.N.Y. 2001). "The rationale behind the presumption against such discovery is that 'even a deposition of counsel limited to relevant and nonprivileged

information risks disrupting the attorney-client relationship and impeding the litigation.'" Yash Raj Films (USA) v. Kumar, No. 05 Civ. 3811 (FB) (KAM), 2007 WL 3124557, at *4 (E.D.N.Y. Oct. 25, 2007) (quoting Alcon Labs., Inc. v. Pharmacia Corp., 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) (internal quotation marks & citation omitted)).

"In determining whether a deposition of opposing counsel is appropriate in a given case, district courts in New York are generally guided by dicta contained in the Second Circuit's opinion in In re Friedman, 350 F.3d 65 (2d Cir. 2003)." Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y. 2007). The Second Circuit stated that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." Friedman, 350 F.3d at 72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." Id. According to the Second Circuit, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition . . . but it is a circumstance to be considered." Id. It is within the Friedman framework that the Court addresses the motion to quash.

## III.    DISCUSSION

### a.  Mr. Gleason's Testimony

#### i.  Defendants' Need To Depose Mr. Gleason

The first factor to be considered is the necessity of deposing opposing counsel. Defendants assert that their need to depose Plaintiff's attorney stems from his statements that "he

knows who the alleged leakers [of the Article] are and the information that has been leaked, and that he obtained that information from one of the reporters herself." Defs.' Opp'n at 4, ECF No. 105. They argue that Defendants "are entitled to know about Mr. Gleason's conversation with the <u>Post</u> reporter(s) to determine the basis of Plaintiff's claims against Defendants that they are the 'leaks.'" <u>Id.</u>

The information as to the alleged sources for the Article goes to the heart of this lawsuit. On the current record, it appears that the <u>Post</u> reporter, Mr. Gleason and the source or sources are the only individuals with this knowledge. Testimony about the sources of information for the Article is relevant to the claims and defenses in this case, and it would be reasonably calculated to lead to the discovery of admissible trial evidence. As discussed <u>infra</u> at section III(a)(iv), the <u>Post</u> reporter has firsthand knowledge of the source or sources and may be called for a deposition. But, in all likelihood, she would assert her journalist privilege and not reveal them. Thus, realistically, Mr. Gleason may be the only non-source witness who could testify as to the identity of the sources. That being said, his information is more than likely hearsay and inadmissible itself, so at best, it may open other lines of inquiry. The Court finds that Defendants have demonstrated a specific need to depose Mr. Gleason as he has specific personal knowledge as to the identity of one of the reporter's FDNY sources. This factor thus weighs in favor of Defendants. <u>See</u>, <u>e.g.</u>, <u>Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.</u>, 255 F.R.D. 340, 345 (W.D.N.Y. 2009) ("For purposes of this motion, I cannot conclude that [the attorney]'s testimony, limited to the issue of identifying the information provided to him by those who assisted him in answering [Plaintiff]'s interrogatories, would not be relevant to [Plaintiff]'s claims and would not be reasonably calculated to lead to the discovery of admissible trial evidence. Moreover, [the attorney] appears to be the only witness who could testify to the

myriad bases for [the witnesses]'s interrogatory responses.  Although his responses are not likely

to be based on firsthand knowledge, that limitation alone should not preclude [the plaintiff] from

examining in the most effective way possible the sources of information upon which the answers

are based.").

### ii.  Mr. Gleason's Role In Connection With The Discovery Sought and The Pending Litigation

The next factor "focuses on the role of the lawyer from whom discovery is sought both in

the litigation in question and in relation to the subjects on which disclosure is sought."  In re

Chevron Corp., 749 F. Supp. 2d 141, 163 (S.D.N.Y. 2010), aff'd sub nom. Lago Agrio Plaintiffs

v. Chevron Corp., 409 F. App'x 393 (2d Cir. 2010).  "The underlying rationale 'is that

depositions of counsel, even if limited to relevant and non-privileged information, are likely to

have a disruptive effect on the attorney-client relationship and on the litigation of the case.'"

Bey v. City of N.Y., No. 99 Civ. 3873 (LMM) (RLE), 2007 WL 1893723, at *5 (S.D.N.Y. June

28, 2007) (quoting U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., No. 97 Civ. 6124 (JGK)

(THK), 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000) (citing United States v. Yonkers Bd.

of Educ., 946 F.2d 180, 185 (2d Cir. 1991))).  The first of these two "considerations bears on the

extent to which the discovery would disrupt the litigation by injecting one of the lawyers charged

with its conduct into the case as a witness or by making the advocate's conduct or knowledge an

issue in the proceeding."  Id.  The second consideration "goes at least in part to the issue whether

the lawyer is likely to have first-hand evidence that is important to the resolution of the lawsuit."

Id.  As to the first consideration, Plaintiff has two attorneys representing him other than Mr.

Gleason, each of whom is capable of litigating this case, thus taking discovery from Mr. Gleason

would be minimally disruptive.  It is unlikely that Mr. Gleason's knowledge would be offered

directly at trial; rather, the hope is that it will lead to admissible evidence that itself may be

offered.  As to the second consideration, Mr. Gleason apparently has knowledge, albeit

secondhand, of the reporter's sources, a key question in this lawsuit.  As Plaintiff has pursued

significant paper discovery which has not revealed the identity of the alleged sources, it is

reasonable to permit some limited discovery of Mr. Gleason.  Thus, both of these considerations

counsel against quashing the subpoena.

### iii.  Risk Of Encountering Privilege And Work-product Issues

The third factor requires consideration of whether deposing opposing counsel would

present a risk of encountering issues that are protected by the attorney-client privilege or the

work-product doctrine.  Plaintiff asserts that "the subpoena should be quashed on work product

grounds and attorney-client grounds."  Mot. to Quash at 1.  Plaintiff claims that providing

testimony as to the "sources(s) [sic] used by reporters in connection with the New York Post

article, dated May 17, 2015, entitled 'Firefighters Fear Colleague Who Routinely Flees Fires,'

the information derived from sources, and the basis of [his] knowledge," would invade his "zone

of privacy" and force him to "testify about his observations and thoughts made during the course

of [his] representation."  Id. at 1-2.

According to Defendants, the information "being sought here is information from Mr.

Gleason directly obtained and gleaned from his communications with the Post reporter as to the

identity of the alleged leakers and what was leaked, and when."  Defs.' Opp'n at 3.  Mr. Gleason

stated during the BITS investigation that the Post reporter told him the identity of the sources.

See Tr. 9:14-10:3, ECF No. 127.  Thus, the parties already know that the Post reporter told Mr.

Gleason the names of the alleged source or sources, which Mr. Gleason has been open about, but

Defendants do not know, and seek to uncover, their names.  This limited question does not

implicate either the attorney-client or work-product privileges. With regard to the attorney-client

privilege, as Defendants noted in their opposition to Plaintiff's motion to quash, Defs.' Opp'n at 2-3, that "privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation." Hickman v. Taylor, 329 U.S. 495, 508 (1947). With regard to the attorney-work-product doctrine, it protects, in relevant part, "against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998) (citations omitted). The name of a source is not an impression, conclusion, opinion or legal theory. It is just a name. Thus, the Court finds that information being sought by the subpoena is not covered by either the attorney-client or the work-product privileges, and the third factor weighs in favor of Defendants.

### iv. Extent Of Discovery Already Conducted

The extent to which discovery has already been conducted is the final factor to consider. This factor weighs in favor of Plaintiff. Extensive paper discovery, including telephone records, has been exchanged, and there is not yet conclusive evidence to support Plaintiff's claim that the FDNY was the reporter's source of the confidential information. Although depositions have not been taken, there is an extensive investigation file (BITS) with statements of many witnesses, see 08/17/2018 dkt. entry, and still Plaintiff does not have any admission of responsibility. Delaying a deposition is not likely to eliminate the need for it.

Balancing the Friedman factors in the "flexible" manner that the Second Circuit counsels, this Court concludes that a narrowly circumscribed written deposition of Mr. Gleason should be permitted. See Tailored Lighting, Inc., 255 F.R.D. at 346. After considering "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship," Friedman, 350 F.3d at 72, the Court finds that Plaintiff has

8

not met its burden with respect to its motion to quash the portion of the subpoena to take Mr.

Gleason's deposition. Allowing Defendants to depose Mr. Gleason would not impose a

substantial burden or hardship on Plaintiff and may reveal potentially important information. A

limited deposition of Mr. Gleason may be taken by Defendants only on written questions per

Fed. R. Civ. P. 31 and limited to five questions consistent with this opinion. Accordingly,

Plaintiff's motion to quash the subpoena with respect to Mr. Gleason's deposition is denied in

part and granted in part.

### b. Documents Requested By The Subpoena

The subpoena directed to Mr. Gleason also requests his telephone records for the period

of March 1, 2015 through May 31, 2015. See Mot. to Quash. "Such a request is patently

overbroad and, to the extent it seeks . . . also requests documents that are likely privileged." Sea

Tow Int'l, Inc., 246 F.R.D. at 428. This information is unnecessary. Defendants know Mr.

Gleason spoke with the Post reporter; the only substantive issue is who did the Post Reporter

name as the source or sources, or about whom was identifying information provided. Plaintiff's

motion to quash the subpoena with respect to the telephone records requested is thus granted.

See Nova Biomedical Corp. v. i-STAT Corp., 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (affirming

order quashing subpoenas where the document requests contained in the subpoenas were

overbroad and therefore unduly burdensome.

### IV.    MOTION TO FILE DOCUMENT UNDER SEAL

Mr. Gleason asked for leave to file in his unredacted declaration in support of the motion

to quash under seal. ECF No. 101. His partially redacted declaration was filed with the motion

to quash on the open record. ECF No. 100. Judicial records are presumptively open to public

inspection. See United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995). A party seeking to

maintain judicial documents under seal bears the burden "of demonstrating what 'higher values' overcome the presumption of public access and justify sealing." E.E.O.C. v. Kelley Drye & Warren LLP, No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *3 (S.D.N.Y. Mar. 2, 2012) (citation omitted); see DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997) ("The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action.").

Here, Plaintiff did not offer a legal basis for overcoming the presumption of public access to the redacted portion of his declaration in support of the motion to quash. The Court has reviewed the unredacted version of his declaration and finds that the information contained therein is neither privileged nor confidential. Thus, Mr. Gleason's motion for leave to file the unredacted declaration in support of his motion to quash under seal is denied. Mr. Gleason may either publicly file the unredacted version of his declaration or not file it at all.

## V.    CONCLUSION

For the reasons stated herein, this Court **grants in part** and **denies** in part Plaintiff's motion to quash the subpoena of its counsel, Mr. Gleason, and denies Mr. Gleason's motion for leave to file his unredacted declaration under seal. Plaintiff is ordered to produce Mr. Gleason for a deposition on written questions as permitted within 60 days of the date of this Order. Mr. Gleason does not need to produce his telephone records for the period of March 1, 2015 through May 31, 2015.

Dated: Brooklyn, New York
       December 21, 2018

*Vera M. Scanlon*

_____
VERA M. SCANLON
United States Magistrate Judge

10