LAW OFFICE OF
# NATHANIEL B. SMITH
ATTORNEY AT LAW
225 BROADWAY-SUITE 1901
NEW YORK, NEW YORK 10007

NATHANIEL B. SMITH
natbsmith@gmail.com

TEL: 212-227-7062
FAX: 212-656-1090

August 19, 2019

Hon. Kiyo A Matsumoto
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Johnson v City of New York,*
*16-cv-6426 (KAM) (VMS)*

Dear Judge Matsumoto:

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and 28 U. S. C. § 636(b)(1)(A), I am writing in support of the plaintiff's Objections to the Memorandum and Order, dated August 9, 2019, by Magistrate Judge Scanlon. The Memorandum and Order granted a motion by Sue Edelman, a reporter for the *New York Post*, to quash a subpoena for Edelman's deposition based on the reporter's privilege. (*See* Memorandum and Order (cited as "Mem.");ECF No. 150.)

Sue Edelman is the reporter who wrote the May 17, 2015 article about the plaintiff entitled *Firefights Fear Colleague Who Routinely Flees Fires* (the "Article"). The plaintiff served the subpoena on Edelman to obtain from Edelman information about her sources for the Article because the Article, which smeared the plaintiff as a "coward," is a central aspect of the plaintiff's claims in this case.

In her Memorandum and Order, Magistrate Judge Scanlon held that Edelman had established that her sources for the Article were confidential. (Mem. at p. 8-10.) This finding was based on Edelman's affidavit, which stated that her unnamed sources for the Article "provided information to the *Post* based on the understanding that the *Post* would keep their identities and certain information they provided confidential" and that Edelman has a "clear recollection and understanding that any conversations [she] had with Mr. Lemonda during the week of May 13-17, 2015 were confidential." (Mem. at p. 9, citing Edelman Aff. ¶¶ 4 & 19; ECF No. 143-2.)

LAW OFFICE OF
NATHANIEL B. SMITH

Plaintiff respectfully submits that Magistrate Judge Scanlon erred when she found that all of Edelman's discussions with her sources were confidential. Defendant Lemonda, who admitted at his deposition to speaking to Edelman about the plaintiff for the Article, testified that none of their discussions with Edelman were confidential. (Lemonda Tr. 114:2-115:23; ECF Nos. 143-9.) In addition, Lemonda has more recently taken the position in his pre-summary judgment motion letter that none of the information in the Article was confidential. (Greenberg Letter, date August 9, 2019, at p. 2; ECF No. 151.)

For the reasons set forth below, the plaintiff requests that the Court sustain these objections to the Memorandum and Order and direct the Edelman appear for her deposition.

*The Standard for this Motion*

In *287 Franklin Ave. Residents' Ass'n v. Meisels*, 2012 U.S. Dist. LEXIS 72855 at *8 (E.D.N.Y. May 24, 2012), the Court summarized the standard of review for objections to a discovery ruling by a Magistrate Judge:

> A district court may set aside a magistrate judge's order concerning non-dispositive matters only if the order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A magistrate judge's pretrial discovery rulings are generally considered non-dispositive and are reviewed under the "clearly erroneous or contrary to law" standard of review. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (finding that matters involving pretrial discovery are generally considered "nondispositive of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard" on review by a district court). An order is clearly erroneous if the reviewing court, based on all the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d 453, 456 (E.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

*The Rules Relevant to the Reporter's Privilege*

The Second Circuit in its leading decision, *Gonzales v. NBC*, 194 F.3d 29, 32 (2d Cir. 1999), held that reporters under federal law have a qualified privilege that applies to confidential and nonconfidential newsgathering of information and sources. Where a party seeks the disclosure of confidential information, the burden is placed on the party seeking disclosure to satisfy the following test: "a clear and specific showing that the information is [1] highly material and relevant, [2] necessary or critical to the maintenance of the claim, and [3] not obtainable from other available sources." *Gonzales, supra*, at 33.

Where, as in this case, a party seeks the disclosure of non-confidential information, the qualified privilege is more easily overcome by a showing that "the materials at issue are [1] of

Law Office of
Nathaniel B. Smith

likely relevance to a significant issue in the case, and [2] are not reasonably obtainable from other available sources." *Id.* at 36. *See also Schoolcraft v. City of N.Y.*, 10 Civ. 6005 (RWS), at *6 (S.D.N.Y. Apr. 18, 2014) ("Where, as here, the information comes from a nonconfidential source, the *Gonzales* test for nonconfidential information applies"); *accord Schiller v. City of New York*, 245 F.R.D. 112, 119-20 (S.D.N.Y. 2007) (finding information at issue was not conveyed in confidence where conveyers of information understood that it could be made public).

In resolving issues about the reporter's privilege, courts place the burden of proof on the reporter to establish that the information was obtained from a confidential source. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 2014 WL 2518959 at *5 (S.D.N.Y. Jun. 4, 2014) ("As the party asserting privilege, defendants have the burden of establishing through its privilege log, affidavits, or other evidentiary material that the elements of the privilege exist.") (citing *Johnson Matthey, Inc. v. Research Corp.*, 01 Civ. 8115 (MBM)(FM), 2002 WL 31235717 at *3 (S.D.N.Y. Oct. 3, 2002) ("[W]here the information in the log is insufficient to establish a factual basis for the privilege, the proponent of the privilege bears the burden of showing its applicability, a gap which often is filled through an affidavit or deposition testimony.")). *See also Lipinski v. Skinner*, 781 F. Supp. 131, 136 (N.D.N.Y. 1991) ("The burden of proving confidentiality rests with the journalist.")(citing *Solargen Elec. Motor Car Corp. v. American Motors Corp*, 506 F. Supp. 546, 551 (N.D.N.Y. 1981); *Hennigan v. Buffalo Courier Exp. Co., Inc.*, 85 A.D.2d 924, 446 N.Y.S.2d 767 (4th Dep't 1981)).

As noted above, the information Edelman obtained from Lemonda was not obtained on a confidential basis; Defendant Lemonda testified that none of his conversations with Edelman were off the record or confidential. (Lemonda Tr. 114:2-115:23; ECF No. 143-9). Magistrate Judge Scanlon, however, ruled that Edelman had established that her conversations with Lemonda were confidential on the ground that Lemonda testified that he could not recall one way or the other about whether his discussions were confidential. (Mem. at p. 9 (Lemonda "neither confirms nor denies whether [he] spoke on or off the record to Ms. Edelman. He simply does not remember.")

This was clear error because Lemonda testified: "To the best of my recollection, I never said that I was on background." (Lemonda Tr. 114:19; ECF No. 143-9.) Indeed, after being shown an email at his deposition that stated that Edelman wanted to speak to Lemonda "off the record," Lemonda confirmed that "[w]hen I spoke with her, I didn't say that I'm going to background, and I don't recall her saying to me 'I want to speak to you off the record.' " (*Id.* at 115:18.)

Based on Lemonda's testimony that he was not speaking to Edelman off the record, the Court should hold that Edelman failed to establish that her discussions with Lemonda were confidential. Indeed, this fact was recently re-confirmed by Lemonda. Shortly after Magistrate Judge Scanlon issued her Memorandum and Order, Defendants Lemonda, Mannix and Kearney filed pre-summary judgment letters addressed to Your Honor, where they have all asserted that none of the information contained in the Article was confidential. *See* ECF No. 151 at p. 2 & ECF No. 152 at p. 2 (in their proposed summary judgment motions, Lemonda, Mannix and

4

Law Office of
Nathaniel B. Smith

Kearney state that they intend to challenge the contention that the information in the *Post* article was confidential).

Edelman's self-serving and conclusory claims that her discussions about the Article were confidential does not alter the analysis of the issue. On the issue of whether information was in fact confidential, the relevant inquiry is whether the *provider* of the information provided it based on the understanding that the discussions were confidential or off the record. In *Schiller v. City of New York*, 245 F. R. D. 112 (S.D.N.Y. 2007), the court held:

> "[T]he fact that the NYCLU [the party asserting the reporter's privileged] may have treated the information as confidential is not determinative. In the context of the journalist's privilege, confidentiality is important because a journalist who cannot guarantee confidentiality to his or her sources will be less able to gather news. *See Baker*, 470 F.2d at 782 ("Compelled disclosure of confidential sources unquestionably threatens a journalist's ability to secure information that is made available to him only on a confidential basis[.]"). However, where the source has no expectation of confidentiality, this consideration does not come into play."

*Id*. at 120 n. 2. *See also Matter of Andrews v. Andreoli*, 92 Misc. 2d 410, 419 (N.Y. Misc. 1977) ("It is the element of confidentiality, of identity withheld, of news or information secretly imparted, that gives birth to the privilege. The genesis of the privilege lies only in the anonymity claimed and confidence given. Without that confidence, of anonymity, the privilege does not exist.")

*The Information Sought is Relevant to a Significant Issue in This Case.*

Since Edelman cannot establish that her conversations with Lemonda, Mannix or Kearney were confidential, the *Gonzales* test for nonconfidentiality applies. *See supra* at pp. 2-3. Plaintiff contends that he has satisfied the standard for the lower *Gonzales* burden because the information about Edelman's sources for the Article is highly relevant to significant issues in this case, and plaintiff has taken all reasonable steps to obtain information from other sources. Magistrate Judge Scanlon did not reach these questions in her Memorandum and Order.

The significance of the Article on the plaintiff is substantial in terms of both liability and damages issues in the case. In an instant, the plaintiff became an infamous "coward" who ran away from fires while his brave (the "Bravest") comrades entered into burning buildings and confronted danger. The Article reached a vast, worldwide audience. Hard-copy daily circulation of the front-page story exceeded 380,000 copies. The Article, itself, received over 300,000 Internet "hits," a number that does not take into consideration the number of times that the Article was downloaded and forwarded to others. (Third Amended Complaint ¶¶ 109-110; ECF No. 115) In addition, the Article stoked a full-throated media lynching of the plaintiff, spawning literally dozens of other media and Internet-based "reports" about the plaintiff, including a racist cartoon depicting a black FDNY firefighter running away from a fire. As a result of the Article's wide circulation, the plaintiff became an isolated and humiliated pariah in a

LAW OFFICE OF
NATHANIEL B. SMITH

close-knit community of FDNY first-responders. Thus, the deposition subpoena seeks information from Edelman that is directly important to significant issues in this case.

*The Information Sought is Not Reasonably Obtainable from Other Available Sources*

Plaintiff has made extensive efforts to obtain complete information about the sources for the Article. The plaintiff has taken depositions of nine individuals, including Lemonda, Mannix and Kearney, who might have had relevant information. *See* Smith Dec. ¶¶ 4-14; ECF No. 143-11. Lemonda claimed that he only provided Edelman with general background information about FDNY procedures, and Mannix and Kearney denied speaking to Edelman about the plaintiff. (Smith Aff. ¶¶ 6 & 9; ECF No. 143-11; Lemonda Tr. 106:5-108:25; ECF No. 143-9.) The plaintiff has also obtained relevant phone records and the transcribed interviews of 27 FDNY employees who were interviewed by the FDNY in connection with its investigations into the leaks to the *Post*. Smith Dec. ¶¶ 4-14; ECF No. 143-11. Other than Lemonda, none of those witnesses or parties admitted that they provided information to the *Post* about the plaintiff. The plaintiff has also obtained the results of the FDNY's own investigation into the leaks to the *Post*. The FDNY's investigation was closed after the FDNY exhausted its unsuccessful efforts to obtain information about the sources of the Article. (Smith Dec. ¶ 12 & Smith Dec. Exh. 1; ECF Nos. 143-11 & 143-12 (under seal).

*Conclusion*

Since the plaintiff has taken substantial steps to obtain relevant information from other sources, we submit that the plaintiff has satisfied the lower burden for obtaining from Edelman information about her nonconfidential sources for the Article. The Court should order that Edelman appear for her deposition and provide information about her nonconfidential sources, including, without limitation, any communications with Defendants Lemonda, Mannix and Kearney.

Respectfully submitted,

*Nathaniel B. Smith*
Nathaniel B. Smith

cc: All Counsel (via ECF)
cc: EricFeder@dwt.com (counsel for Sue Edelman)