UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

MICHAEL JOHNSON,                                          :
                                                         :
                                    Plaintiff,            :
                                                         :          **REPORT AND RECOMMENDATION**
                    -against-                             :
                                                         :              16 Civ. 6426 (KAM) (VMS)
THE CITY OF NEW YORK, MICHAEL GALA,  :
individually and in his official capacity as Deputy :
Chief in the New York City Fire Department,      :
MICHAEL CURNEEN, individually and in his     :
official capacity as Captain in the New York City :
Fire Department, JAKE LAMONDA, individually:
and in his official capacity as an employee of the  :
New York City Fire Department, PAUL D.           :
MANNIX, individually and in his official           :
capacity as Deputy Battalion Chief of the New   :
York City Fire Department, JOSEPH KEARNEY,:
individually and in his official capacity as         :
Firefighter of the New York City Fire               :
Department, and JOHN DOES or JANE DOES,  :
individually and in his or her or their official     :
capacity as an employee of the New York City   :
Fire Department,                                          :
                                                         :
                                    Defendants.[1]        :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

        Plaintiff Michael Johnson ("Plaintiff") was hired as a "priority hire" firefighter as a result

of a class action lawsuit against the New York City Fire Department ("FDNY").  See generally

United States v. City of N.Y., No. 7 Civ. 2067 (NGG) (the "Vulcan Case").  Plaintiff instituted

this action alleging that he suffered unlawful racial discrimination and retaliation as a result of

his status as a "priority hire."  See generally ECF No. 1.  More specifically, Plaintiff claimed that

---

[1] The Court excludes Defendants as to whom Plaintiff's claims have been terminated from the
caption.

he was subjected to humiliating tasks and psychiatric examinations, and given failing

performance evaluations without cause.  ECF No. 115 ¶ 3.  Most of his claims derived primarily

from an article published in the New York Post on May 17, 2015 ("the Article") about Plaintiff's

alleged inclination to avoid fighting fires, including an April 2, 2015 three-alarm fire.  ECF Nos.

115 ¶¶ 76-102; 115-4; 143-1.  In the Article, Plaintiff was described as lazy, "slow and . . . a

danger."  ECF No. 115-4 at 1.  The Article revealed Plaintiff's medical leave record, and it

alleged that he was scared of fires and that he "flees" from them.  Id.  The Article quoted several

FDNY "sources."  Id.

      In his Third Amended Complaint, Plaintiff sought relief for 1) retaliation in violation in

42 U.S.C. § 2000e-3 against Defendant The City of New York (the "City"); 2) retaliation in

violation of N.Y. Exec. L. § 296 (the "NYSHRL") against the City and Defendants Michael

Gala, individually and in his official capacity as Deputy Chief in the New York City Fire

Department ("Mr. Gala"); Michael Curneen, individually and in his official capacity as Captain

in the New York City Fire Department ("Mr. Curneen"); and Jake Lemonda, individually and in

his official capacity as an employee of the New York City Fire Department ("Mr. Lemonda"); 3)

retaliation in violation of N.Y. City Admin. Code § 8-107 (the "NYCHRL") against the City, Mr.

Gala, Mr. Curneen, Mr. Lemonda, Paul D. Mannix, individually and in his official capacity as

Deputy Battalion Chief of the New York City Fire Department ("Mr. Mannix"), and Joseph

Kearney, individually and in his official capacity as Firefighter of the New York City Fire

Department ("Mr. Kearney"); 4) violation of 42 U.S.C. § 1983 against Defendants; 5) municipal

liability pursuant to 42 U.S.C. § 1983 against the City; 6) violation of 42 U.S.C. § 1981 against

Mr. Mannix and Mr. Kearney; and 7) conspiracy in violation of 42 U.S.C. § 1985(3) against Mr. Mannix and Mr. Kearney.[2]  See generally ECF Nos. 115; 199 at 3-15.

Presently before the Court is Plaintiff's motion for attorneys' fees for compensation for 1,479.85 hours for a total of $831,885, plus costs.  See generally ECF Nos. 247 through 247-15; Appendix A.  More specifically, Plaintiff seeks compensation for 107.75 hours expended by Mr. Gleason at $500 per hour, totaling $53,875; 437.9 hours expended by Mr. Lenoir at $550 per hour, totaling $240,845; and 934.2 hours expended by Mr. Smith at $575 per hour, totaling $537,165.  See Appendix B.  The City, Mr. Gala and Mr. Curneen ("City Defendants") oppose the motion.  See generally ECF No. 250.  Plaintiff replies.  See generally ECF No. 251.  The Court respectfully recommends that the motion be granted in part and denied in part, and that Plaintiff be awarded as against City Defendants $676,740.75 in attorneys' fees, arising from 778.29 compensable hours for Mr. Smith at a rate of $575 per hour ($447,516.75); 383.68 compensable hours for Mr. Lenoir at the rate of $550 per hour ($211,024.00); two compensable travel hours for Mr. Smith at the rate of $287.50 per hour ($575.00); and 35.25 compensable hours for Mr. Gleason at the rate of $500 per hour ($17,625.00).  The Court respectfully recommends that Plaintiff also be awarded $8,401.20 in costs, for a total award of $685,141.95.

## I.     ATTORNEYS' FEES

The Court addresses Plaintiff's entitlement to the attorneys' fees claimed in this motion and City Defendants' related objections.

---

[2] The Court excludes Defendants as to whom Plaintiff's claims have been terminated and Defendants John Does or Jane Does from its recitation of Plaintiff's claims.

### A.    Plaintiff's Motion

Each of the statutory and administrative frameworks pursuant to which Plaintiff asserted claims permits an award of attorneys' fees to the prevailing party.  As to 42 U.S.C. § 2000e-3, commonly known as Title VII, 42 U.S.C. § 2000e-5(k) provides that, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs."  As to 42 U.S.C. §§ 1981, 1983 and 1985, 42 U.S.C. § 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of sections 1981, . . . 1983, . . . [or] 1985 . . . of this title . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." N.Y. Exec. L. § 297, which sets forth the procedure for seeking relief for unlawful discriminatory practices defined in N.Y. Exec. L. § 296, known as the NYSHRL, provides that, "[i]n an action or proceeding at law under this section or section two hundred ninety-eight of this article, the commissioner or the court may in its discretion award reasonable attorney's fees to any prevailing or substantially prevailing party."  N.Y. City Admin. Code § 8-502, which states that persons claiming to be aggrieved by an unlawful discriminatory practice set forth in N.Y. City Admin. Code § 8-107, known as the NYCHRL, among others, possess a cause of action therefor, provides that,

> [i]n any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs . . . . The court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York county when it chooses to factor the hourly rate into the attorney's fee award.

In order to determine the reasonable attorneys' fees to be awarded, courts apply the lodestar method, which requires multiplying the hourly rates deemed reasonable for each attorney performing work on the case by the number of hours reasonably expended litigating the

case.  See Hannah v. Walmart Stores, Inc., 803 F. App'x 417, 424 (2d Cir. 2020) (awarding attorneys' fees under Title VII, 42 U.S.C. § 2000e-5(k), using the lodestar method); Restivo v. Hessemann, 846 F.3d 547, 589 (2d Cir. 2017) (reasoning that "[t]he Supreme Court has held that the lodestar method yields a fee that is presumptively sufficient to achieve [the] objective of Section 1988(b)") (internal citations & quotations omitted); Knox v. John Varvatos Enterprises Inc., 520 F. Supp. 3d 331, 338 (S.D.N.Y. 2021), aff'd sub nom. Chaparro v. John Varvatos Enterprises, Inc., No. 21 Civ. 446, 2021 WL 5121140 (2d Cir. Nov. 4, 2021) (applying the lodestar method to calculate attorneys' fees under the NYSHRL); Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 102-03 (E.D.N.Y. 2020) (considering the plaintiff's entitlement to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k) and N.Y.C. Admin. Code § 8-502(g), and noting that "[c]ourts in the Second Circuit calculate a presumptively reasonable fee by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what a reasonable, paying client would be willing to pay") (internal citations & quotations omitted); Sooroojballie v. Port Auth. of NY & NJ, 15 Civ. 1230 (WFK) (PK), 2020 WL 9934418, at *2 (E.D.N.Y. Nov. 10, 2020) (considering 42 U.S.C. § 2000e-5(k) and noting that "[r]easonable attorneys' fees in Title VII cases are calculated using the lodestar method") (internal citations & quotations omitted), report & recommendation adopted, 2021 WL 1827116 (E.D.N.Y. May 7, 2021).

      **i.**    **Reasonable Hourly Rate**

      The Court addresses below the law on setting a reasonable hourly rate for an award of attorneys' fees then applies the law to this case.

### a.   Overview Of Applicable Law

In setting a reasonable hourly rate,

> [t]he district court, in exercising its considerable discretion, [should] bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the <u>Johnson</u> factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

<u>Lilly v. City of New York</u>, 934 F.3d 222, 230 (2d Cir. 2019) (internal citation omitted) (citing

<u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), <u>abrogated on

other grounds by</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989)).  The <u>Johnson</u> factors are

> (1) [t]he time and labor required[;] . . . (2) [t]he novelty and difficulty of the questions[;] . . . (3) [t]he skill requisite to perform the legal service properly[;] . . . (4) [t]he preclusion of other employment by the attorney due to acceptance of the case[;] . . . (5) [t]he customary fee[;] . . . (6) [w]hether the fee is fixed or contingent[;] . . . (7) [t]ime limitations imposed by the client or the circumstances[;] . . . (8) [t]he amount involved and the results obtained[;] . . . (9) [t]he experience, reputation, and ability of the attorneys[;] . . . (10) [t]he 'undesirability' of the case[;] . . . (11) [t]he nature and length of the professional relationship with the client[;] . . . [and] (12) [a]wards in similar cases.

<u>Johnson</u>, 488 F.2d at 717-19.

In determining the reasonable hourly rate, courts may (1) take "judicial notice of the rates

awarded in prior cases," (2) account for "the court's own familiarity with the rates prevailing in

the district," and (3) "evaluat[e] . . . evidence proffered by the parties."  <u>Farbotko v. Clinton

Cnty. of N.Y.</u>, 433 F.3d 204, 209 (2d Cir. 2005) (internal citations omitted).  Reasonable hourly

"rates used by the [district] court to calculate the lodestar amount should be current rather than

historic hourly rates," as "attorney's fees are often awarded long after services have been

rendered" such that use of current rates "compensate[s] litigants for the delay in payment."  <u>Id.</u> at

210 n.11 (internal citations & quotations omitted).  The fee award need not be proportionate to

the damages award.  <u>See</u> <u>Grant v. Martinez</u>, 973 F.2d 96, 101-02 (2d Cir. 1992).[3]

As to the import of the geographic location on the hourly rate, a reasonable hourly rate is

equivalent to "the prevailing market rate, <u>i.e.</u>, the rate prevailing in the [relevant] community for

similar services by lawyers of reasonably comparable skill, experience, and reputation.  The

relevant community, in turn, is the district in which the court sits."  <u>Id.</u> at 208 (internal citations

& quotations omitted) (underline added).  In <u>Simmons v. NYCTA</u>, 575 F.3d 170, 175-76 (2d Cir.

2009), the Court of Appeals applied a gloss to the calculation of reasonable rates for attorneys'

services within the two federal district courts in New York City.  Although it did not require

exact adherence to the forum rule, it set parameters within which one would expect the forum

rule to apply:

> We now hold that, when faced with a request for an award of higher out-of-
> district rates, a district court must first apply a presumption in favor of application
> of the forum rule.  In order to overcome that presumption, a litigant must
> persuasively establish that a reasonable client would have selected out-of-district

---

[3] In some non-civil rights cases, the Second Circuit has considered whether a paying client would pay an hourly rate far in excess of the amount of recovery.  <u>See</u>, <u>e.g.</u>, <u>Solnin v. Sun Life & Health Ins. Co.</u>, 776 F. App'x 731, 733 (2d Cir. 2019) (affirming an award of $222,320.94 in attorneys' fees when the plaintiff recovered a judgment of $188,936.77).  The undersigned does not believe the relationship between the fees and recovery is appropriately considered in a civil rights case because of the concept of private attorneys general.  <u>See</u> <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 576-78 (1986) (plurality opinion) ("[Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements."); <u>id.</u> at 586 (Powell, J., concurring in judgment); <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425-27 (2d Cir. 1999) (rejecting a "billing judgment" rule that would limit the awardable fee to one rationally related to the recovery that could be expected ex ante).  Title VII, the NYSHRL and NYCHRL fee-shifting provisions serve a similar purpose.  The Court notes that here Plaintiff's counsel achieved a settlement of $550,000 from the parties, <u>see</u> ECF No. 247-2 at 2-4, and the recommended fee award is not far in excess of this number.

counsel because doing so would likely (not just possibly) produce a substantially better end result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise.  A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel.

Id.  The application of the forum rule has sometimes led to an approval of hourly rates in the Eastern District of New York that are lower than the rates awarded in the Southern District of New York.[4]  See id.; see also Legrand v. City of New York, No. 9 Civ. 9670 (DLC), 2010 WL 742584, at *3 (S.D.N.Y. Mar. 3, 2010) (deciding a venue motion and observing: "The upshot of the forum rule is that it is more lucrative for plaintiffs' attorneys to file civil rights lawsuits against the City in the Southern rather than the Eastern District of New York due to higher prevailing rates for attorney's fees in the Southern District.").

The NYCHRL requires a similar analysis and substantiation of relevant hourly rates.  See Kornmann v. City of New York Bus. Integrity Comm'n, No. 17 Civ. 2328 (BMC), 2022 WL 4096179, at *7 (E.D.N.Y. Sept. 7, 2022) (reasoning that a fee application under the NYCHRL may be considered using the framework of federal law for fee awards); Reveyoso v. Town Sports Int'l LLC, No. 157500/2012, 2018 WL 6171632, at *1 (N.Y. Sup. Ct. (N.Y. County) Nov. 26, 2018), aff'd, 99 N.Y.S.3d 873 (1st Dep't 2019).  One important difference between the applicable federal laws and the NYCHRL as to hourly rates, however, must be noted.  Prior to

---

[4] The forum rule has been criticized as applied within New York City for not reflecting the practical operation of the legal market, particularly within the subset of cases brought by plaintiffs' counsel who may seek payment under fee-shifting provisions in actions brought against institutional or corporate clients that litigate in all of the boroughs across New York City. Indeed, judges in this District have observed that the two districts "form a unitary market for legal services."  Luca v. County of Nassau, 698 F. Supp. 2d 296, 300-01 (E.D.N.Y. 2010); see United States v. Sixty-One Thousand Nine Hundred Dollars & No Cents, 856 F. Supp. 2d 484, 492 (E.D.N.Y. 2012).

2016, in some cases, the forum rule had been applied to awards of attorneys' fees to prevailing

parties pursuant to the NYCHRL.  See, e.g., United States v. City of New York, No. 7 Civ. 2067

(NGG) (RLM), 2013 WL 5542459, at *6 n.2 (E.D.N.Y. Aug. 30, 2013) (" . . . [C]ourts in this

district have concluded that, '[i]n awarding attorney's fees under the New York City Human

Rights Law, the court can use the same principles that govern such awards in federal civil rights

cases.'" (quoting Siracuse v. Program for the Dev. of Human Potential, 7 Civ. 2205 (CLP), 2012

WL 1624291, at *26-28 (E.D.N.Y. Apr. 30, 2012)).  In 2016, the New York City Council

responded to the courts' effective curtailment of hourly rates in fee applications for work done in

Brooklyn, Queens and Staten Island because of the application of the forum rule.  The legislative

notes for the 2016 amendment to the Administrative Code state, in pertinent part:

> Moreover, currently, courts hearing cases in New York County-i.e., Manhattan-
> that award attorney's fees often will factor in hourly rates that are higher than
> those factored in by courts hearing similar cases outside of New York County.
> This difference both gives incentives to attorneys practicing outside of New York
> County to take on cases brought in New York County and discourages attorneys
> practicing within New York County from taking cases outside of New York
> County.  To equalize the hourly rate discrepancy and to support cases being
> brought in the proper venue, Int. No. 818-A directs courts to base attorney's fee
> awards on the market rate charged by attorneys of similar skill and experience
> litigating similar cases in New York County.

Local Laws of the City of New York, 2016 Regular Session Documents 1 to 194, N.Y. Legal

Adv. Serv. at 88.  The Council amended N.Y.C. Admin. Code § 8-502(g) (formerly § 8-502(f))

so that this provision now states, in relevant part: "The court shall apply the hourly rate charged

by attorneys of similar skill and experience litigating similar cases in New York county when it

chooses to factor the hourly rate into the attorney's fee award."  N.Y.C. Admin. Code § 8-502(g)

(formerly § 8-502(f) (Subd. g amended L.L. 36/2016 § 2, eff. Mar. 28, 2016)).  With this

amendment, the proper hourly rates for a fee application brought under the NYCHRL are

Manhattan or New York County rates, requiring a different analysis than the District-based

approach set forth in <u>Simmons</u>.  Applying the federal forum rule to hourly rates in attorneys' fees applications brought under the NYCHRL, such as the present application, would no longer be correct.

### b.    Application

The Court reviews below Plaintiff's attorneys' fees application first through the lens of the <u>Johnson</u> factors, as well as considering the observations in <u>Lilly</u>.  The Court considers Plaintiff to be a prevailing party under the various statutes under which he sued, as the parties acknowledged this status as to each of those statutes in the settlement agreement.  <u>See</u> ECF No. 247-2 at 1, ¶ 2(b).

### (i)    Time, Labor And Skill Required Given The Difficulty Of The Case

As to the first <u>Johnson</u> factor, the time and labor required, counsel in this case litigated for approximately five years and five months prior to reaching a settlement; the details of the work required are discussed further below, <u>infra</u>, Sec. I.A.ii.

The Court considers the second and third <u>Johnson</u> factors, that is, the novelty and difficulty of the questions, as well as the skills needed to perform the legal services.  This litigation was conducted with zealous representation by all counsel, motion practice as to multiple discovery issues, extensive summary judgment motion practice, and preparation for trial, which was well and effectively handled by experienced counsel.  <u>See</u> ECF No. 247-1 ¶ 70 ("This has been a long, hard-fought litigation where Johnson obtained an excellent result against three sets of defendants who maintained their positions vigorously throughout the case.").  This case did not present novel issues, but it was reasonably difficult for Plaintiff's counsel to identify and obtain sufficient evidence to survive summary judgment motion practice and to plan for trial, particularly as to the knowledge and causation elements as they related to the Article, as

discussed below in the analysis of the discovery phase of this case.  See, e.g., ECF No. 199 at 26-28, 36-37, 40-43 (discussing knowledge and causation in summary judgment decision).  Certainly, the experienced counsel who litigated this case were better equipped than less experienced attorneys would have been to conduct the litigation with the persistence needed to build an evidentiary record sufficient to survive dispositive motion practice and have a realistic hope of succeeding at trial.  Without the successful discovery efforts discussed below, Plaintiff would have been required to rely solely on his own testimony, which may not have provided enough evidence to prove a link between Defendants and the Article.  It was therefore necessary and prudent for Plaintiff to retain experienced counsel to represent him.

### (ii)    Preclusion Of Other Employment

As to the fourth Johnson factor, the preclusion of other employment due to conflicts of interest, no such evidence has been presented to the Court.

### (iii)    Customary Fee And Nature Of The Fee Arrangement

As to fifth and sixth Johnson factors, that is, the customary fee and the nature of the fee as fixed or contingent, at least as to Mr. Smith and Mr. Lenoir, Plaintiff agreed to a contingency fee arrangement pursuant to which Mr. Smith and Mr. Lenoir would receive the greater of one third of Plaintiff's recovery and fees awarded by the Court.  See ECF No. 247-7 at 2.

### (iv)    Time Limitations Imposed

Continuing with the Johnson factors in this case, as to seventh factor, the time limitations imposed, no such evidence has been presented to the Court.

### (v)    Experience, Reputation And Ability Of Messrs. Smith, Lenoir And Gleason

As to the ninth Johnson factor, the experience, reputation and ability of the attorneys, the Court will briefly review their respective backgrounds, which are set forth in detail in their

declarations.  See generally ECF Nos. 247-1, 247-11, 247-14.  In brief, each of Plaintiff's

primary attorneys, Mr. Smith and Mr. Lenoir, has practiced law for more than thirty years, and

each has trial and civil rights experience; Mr. Gleason also has significant litigation experience.

Mr. Smith graduated from Brooklyn Law School in 1987 and was admitted to practice in

New York State in 1988; thus, he has been practicing law for approximately 35 years.  See ECF

No. 247-1 ⁋ 34.  At the outset of his career, he worked as an associate for six years in the

litigation department of a large law firm.  See id. ⁋ 35.  He has spent almost 30 years as a solo

practitioner with a focus on civil rights and employment discrimination litigation.  See id. ⁋⁋ 36-

41.  Mr. Smith served as lead trial counsel on numerous civil rights and employment actions

within this Circuit.  See id. ⁋⁋ 39-42.

Mr. Lenoir was admitted to practice in New York State in 1980 and has been practicing

for approximately 43 years.  See ECF No. 247-11 ⁋ 3.  He worked as an Assistant District

Attorney in New York County from 1980 to 1985; as an Assistant United States Attorney in the

Southern District of Texas, including as Chief of the Civil Rights Division, from 1985 to 2002;

as an Administrative Assistant United States Attorney in the Eastern District of New York from

2002 to 2007; as Managing Director at Kroll Government Services, conducting compliance

reviews and investigations in relation to law enforcement, from 2007 to 2013; and as a solo

practitioner beginning in 2013.  See id. ⁋⁋ 3-7.  He thus has more than forty years of litigation

experience, including significant trial experience from his time with the different prosecutors'

offices.  See id. ⁋⁋ 3-4.  Of note for this case, for several years, he served as an EEO Investigator

within the United States Department of Justice.  See id. ⁋ 5.

Mr. Gleason is a more recently admitted member of the bar.  He graduated from The City

University of New York School of Law, was admitted to practice in New York State in 2004,

and has been practicing law for approximately 19 years.  See ECF No. 247-14 ⁋ 4.  He worked as

an associate at a law firm, to which he still serves as of counsel, then started his own practice in

2008, where the focus of his work has been civil rights matters, employment disciplinary

matters, criminal matters and personal injury matters.  See id. ⁋⁋ 6-7.  Prior to beginning his legal

career, Mr. Gleason served in the United States Coast Guard Reserve, as a police officer in the

New York City Police Department from 1983 to 1986, as a firefighter in the FDNY from 1986 to

1994, and as a fire marshal in the FDNY from 1994 to 1996.  See id. ⁋ 3.  Mr. Gleason argues

that, "[g]iven the nature of this contentious litigation, involving the upper echelons of the FDNY,

my unique insight into the FDNY's modus operandi was instrumental in the Plaintiff's success in

obtaining a fair settlement."  See id. ⁋ 12.

The attorneys each request a different rate based on their professional experiences and

roles in this case.  Mr. Smith, as lead counsel, requests an hourly rate of $575,[5] ECF Nos. 247-1

⁋ 42; Mr. Lenoir requests an hourly rate of $550, ECF No. 247-11 ⁋ 3; and Mr. Gleason requests

an hourly rate of $500, ECF No. 247-14 ⁋ 12.  They each represent that the rates each requests

are in line with the rates that each regularly charges or receives on behalf of their clients.  See

ECF Nos. 247-1 ⁋ 47 (Smith); 247-11 ⁋ 8 (Lenoir); 247-14 ⁋ 7 (Gleason).

### (vi)    The Desirability Of The Case

As to the tenth Johnson factor, this case cannot be described as "undesirable," given that

the Vulcan Case had paved the way to develop the legal premise for some of Plaintiff's theories

and challenges to some FDNY practices and had received significant public attention.  In the

_____

[5] Mr. Smith submitted the Declaration of Scott A. Korenbaum in support of the motion.  ECF No. 247-6.  Mr. Korenbaum has been admitted to practice law in New York since 1989, and, since 1995, has specialized in plaintiffs'-side civil rights cases.  Id. ⁋⁋ 3-14.  He has served as co-counsel with Mr. Smith, is familiar with the quality of his work, and expressed his support for Mr. Smith's request for an hourly rate of $575.  Id. ⁋⁋ 2, 15-25.

context of the Vulcan Case, the present case can fairly be described as an important second-generation case, given the years of litigation invested in achieving a resolution in the Vulcan Case; the subsequent years of implementation of that resolution through the efforts of the City, particularly the FDNY, and the plaintiffs' counsel; and the implementation structure, including the continuing review by plaintiffs' counsel and a monitor with supporting staff.  As one of Plaintiff Johnson's goals in this case appears to have been to help ensure via the Monell claim and other claims that the Vulcan Case class members do not suffer adverse consequences because of their status, his counsel can be said to have performed a public good in litigating the case to a favorable resolution.  See ECF No. 199 at 47-51.  Whether the case would have or did enhance the attorneys' reputation depended on the outcome, such that for purposes of the Johnson factors, this factor should be considered neutral, to balance the risk to their reputations that Plaintiff's counsel might have suffered had they lost the case.

### (vii)   The Client Relationship

As to eleventh Johnson factor, namely the nature and length of the professional relationship with the client, Plaintiff's retainer agreement with Mr. Smith and Mr. Lenoir, as well as Mr. Gleason's billing entries, reveal that Plaintiff's counsel's representation commenced in 2015 and pertained to issues surrounding Plaintiff's employment with the FDNY.  See generally ECF Nos. 247-7; 247-15.

### (viii)   The Results Obtained And The Amount Of The Settlement

The Court looks to the eighth and twelfth Johnson factors together, as they touch on similar issues, and weighs them heavily in determining Plaintiff's counsel's rates.  As to the eighth Johnson factor, the amount involved and the results obtained, Plaintiff settled the action

for the sum of $550,000 from Defendants and a remedial statement from the FDNY.[6]  See generally ECF No. 247-2.  As to the twelfth Johnson factor, awards in similar cases, this settlement is quite substantial for a settlement short of trial.  These two factors are difficult to assess because they involve speculation as to Plaintiff's likelihood of success in proving liability and in convincing a jury to award substantial damages.  Being familiar with the discovery in the case, and having reviewed the docket and the submissions on this motion in detail, the Court is convinced that Plaintiff's counsel achieved an excellent result for Plaintiff.

First, although Plaintiff's attorneys consistently insisted that Plaintiff's claims would likely succeed, an assessment of this case reveals that, while Plaintiff may have prevailed at trial, he also could have lost on liability or prevailed on liability but have been awarded damages significantly lower than the settlement amount of $550,000 paid by Defendants.  A review of the summary judgment decision confirms how important Plaintiff's own testimony would have been at trial.  See ECF No. 199.  Had a jury not found Plaintiff credible, or found Defendants more credible than Plaintiff, Plaintiff could have lost his case entirely at trial.

Second, in this District, damages awards for emotional distress and reputational harm tend to be much lower than the settlement amount for Plaintiff.

"Title VII, NYSHRL, and NYCHRL all aim to assure equality of employment opportunities and make employers liable for damages to a plaintiff-employee who suffered

---

[6] City Defendants agreed to pay Plaintiff $400,000, see ECF No. 247-2 at 2-3, and Mr. Lemonda, Mr. Mannix and Mr. Kearney each agreed to pay Plaintiff $50,000, inclusive of costs, expenses and attorneys' fees, see id. at 3-4.  Plaintiff's attorneys agreed to share $100,000 of their fee award with Plaintiff, see also ECF No. 247-1 at 11, 20; ECF No. 247-11 at 5; ECF No. 251 at 4-5, which they confirmed during the January 30, 2023 conference before the Court.  Although Plaintiff's counsel suggest that the Court should take this reallocation of fee monies into account in evaluating the fee application, ECF No. 247-1 ¶ 31, the Court does not believe that it is relevant to the calculation of the fee award.

discrimination based on race, gender, religion or national origin in the workplace." Moore v. Houlihan's Rest., Inc., No. 7 Civ. 3129 (ENV) (RER), 2011 WL 2470023, at *3 (May 10, 2011), report & recommendation adopted, 2011 WL 2462194 (E.D.N.Y. June 17, 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973)); Aurecchione v. N.Y.S. Div. of Human Rights, 98 N.Y.2d 21, 25 (2002) (recognizing that the legislatures intended both to combat discrimination and provide a system of redress when it enacted the NYSHRL and N.Y. City Admin. Code §§ 8-101, 8-107, 8-502). Section 1983 has a similar goal of correcting for retaliation for raising these kinds of issues before the court. "Title VII, NYSHRL, and NYCHRL entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering. Although Title VII limits the amount of damages that may be awarded, the NYSHRL and NYCHRL do not." Houlihan's Rest., 2011 WL 2470023, at *4. Victims of employment discrimination are entitled to reasonable damages that would make the plaintiff "'whole for injuries suffered on account of unlawful employment discrimination.'" Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir. 1998) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)).

A plaintiff in an employment discrimination case may recover a broad spectrum of emotional distress damages. See Olsen v. Cty. of Nassau, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009); Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005). Emotional distress claims are generally of three varieties: "garden-variety," "significant" or "egregious." Rainone, 388 F. Supp. 2d at 122. As Plaintiff's counsel pointed out in Mr. Smith's declaration, it was Defendants' position that Plaintiff's damages were "nominal because he did not have a claim for lost wages and suffered only 'garden-variety' damages." ECF No. 247-1 ¶ 31. In the Second Circuit, typical, or "garden-variety," emotional distress claims have little evidentiary support,

16

and are marked by "vague or conclusory" testimony of emotional harm without explanation of the severity or consequences of the harm.  See Rainone, 388 F. Supp. 2d at 122.  When Rainone was decided 18 years ago, successful plaintiffs with garden-variety claims regularly received between $5,000 and $35,000, amounts that have increased modestly since then.  Id.; Zepeda v. Halftime Bar & Grill Corp., No. 22 Civ. 2355 (JMA) (SIL), 2023 WL 266504, at *2 (E.D.N.Y. Jan. 18, 2023) (awarding $25,000 in case of garden-variety emotional distress damages); Barham v. Wal-Mart Stores, Inc., No. 3:12 Civ. 1361 (VAB), 2017 WL 3736702, at *4 (D. Conn. Aug. 30, 2017) (ordering remittitur of garden-variety emotional distress award in employment discrimination and retaliation case to $125,000).

In this Circuit, "[s]ignificant" emotional distress claims are based on "more substantial harm or more offensive conduct[,]" and are often supported by medical evidence or corroborating testimony; these claims, if successful, were typically worth $50,000 to $100,000 when Rainone was decided.  Rainone, 388 F. Supp. 2d at 122-23; see Hill v. Airborne Freight Corp., 212 F. Supp. 2d 59, 67-68, 73-74 (E.D.N.Y. 2002) (reducing a jury award of $150,000 to $50,000 for a plaintiff who established "numerous instances where managers made disparaging remarks about African Americans" and a negative effect on his personal and professional life, but who did not pursue a course of psychological treatment), aff'd, 93 F. App'x 260 (2d Cir. 2004).  Awards have increased modestly since then.  See Saleh v. Pretty Girl, Inc., No. 9 Civ. 1769 (RER), 2022 WL 4078150, at *25 (E.D.N.Y. Sept. 6, 2022) (finding a $100,000 award for "higher end 'garden variety' or to the mid-range of 'significant' emotional distress cases to be reasonable"); Olsen, 615 F. Supp. 2d at 47-49 (upholding an award of $100,000 where the plaintiff had documented medical evidence that she suffered from depression, lack of sleep, powerlessness and lack of motivation).  In this Circuit, "egregious" emotional distress claims, as

to which courts have upheld awards of over $100,000 at the time Rainone was decided, are established where the discrimination found was "outrageous and shocking or where the physical health of plaintiff was significantly affected." Rainone, 388 F. Supp. 2d at 123.

Applying the CPI inflation calculator,[7] these amounts, in 2022 dollars, are approximately $8,000 to $55,000 for garden-variety claims; $78,000 to $156,000 for significant claims; and upwards of $156,000 for egregious emotional distress claims.

As Mr. Smith wrote, "[The settlement amount] is a substantial figure and an excellent result in this action because [Plaintiff] suffered no lost wages and incurred no specific economic damages as a result of the defendants' conduct, and because Johnson was seeking damages for injury to his reputation and for emotional pain and suffering without presenting any medical or expert testimony on the scope, nature or type of his emotional damages." ECF No. 247-1 ¶ 31. The record supports this view. For example, a review of the amended proposed joint pre-trial order ("JPTO") suggests that Plaintiff intended to rely on his own testimony as to his alleged emotional distress damages, because, although he testified that he had attended 10 to 12 counseling sessions, see ECF No. 226-1, Tr. 191:7-8, 192:23, the amended JPTO did not list any medical experts who were going to testify on Plaintiff's behalf or other damages, ECF No. 217. Although Plaintiff alleged that he suffered significant reputational harm, particularly from the Article, his evidence of that harm was limited to his testimony. Id. at 187:13-19 (testifying in deposition that Plaintiff had an "excellent" reputation when working in emergency medical services and that his reputation "seemed" to have been "ruined" and given him a "bad" image that he did not previously have when he became a firefighter with the FDNY). Plaintiff's

---

[7] A Consumer Price Index ("CPI") inflation calculator is available from the U.S. Bureau of Labor Statistics through December 2022. The calculator does not include 2023 values. See https://www.bls.gov/data/inflation_calculator.htm (last visited February 1, 2023).

damages thus may have reasonably been estimated pre-trial to fall into the intermediate category of "significant" for which the damages range in 2023 is roughly between $78,000 to $156,000.

Thus, given the broad range of possibilities as to recovery by Plaintiff, if any, the $550,000 award that Plaintiff's attorneys secured from Defendants, plus the $100,000 that they agreed to contribute to Plaintiff from any fee award, is an excellent result for Plaintiff.  In addition, if a damages award had been extremely high at trial, Plaintiff would have run the risk of remittitur, as well as a new-trial motion and an appeal.  Last, Plaintiff in his settlement received a non-monetary success by the statement from the FDNY, which states that the statements and opinions about Plaintiff contained in the Article "do not reflect the opinions or views of the FDNY" and describes Plaintiff as "a tenured firefighter who, to date, remains in good standing with the FDNY."  ECF No. 247-5.  He would not have received such relief at trial.

### (ix)    Hourly Rates Awarded In Similar Cases In This Market Under The NYCHRL And Other Statutes

The Court must consider whether the hourly rates requested by Plaintiff's counsel are reasonable and would have been paid by a reasonable client facing a situation similar to that of Plaintiff.  As to the reasonableness of the rates, the Court looks to similar cases litigated by attorneys with similar years of experience.

The best comparator case for rates in this case is the Vulcan Case, or the "parent" case, from which this case stems; Plaintiff alleges that he suffered the civil rights violations, in part, because, as an FDNY "priority hire," he was the beneficiary of the resolution of the Vulcan Case.  In the Vulcan Case, on August 13, 2013, almost ten years ago, in deciding a motion for interim attorneys' fees and costs, the court set the hourly rate for partner-level counsel for the intervenor plaintiffs at $550; the years of experience for the five attorneys awarded this hourly rate ranged from 37 to 53 at the time.  See City of N.Y., 2013 WL 5542459, at *8.  On June 16,

2016, in deciding a motion for final approval of a settlement as to attorneys' fees, the court used the same hourly rates as in the interim decision to calculate the lodestar.  See United States v. City of N.Y., No. 7 Civ. 2067 (NGG) (RLM), 13 Civ. 3123 (NGG) (RLM), 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016) (internal citation omitted).  Since then, the monitor appointed in the Vulcan Case has been awarded $650 and his colleagues $550 per hour.[8]

In addition to considering the Vulcan Case, this Court reviewed hourly rates awarded in this District and found that, as far back as 2002, courts in this District awarded $450 per hour for senior partner-level attorneys.  See Weil v. Island Sav. Bank, FSB, 188 F. Supp. 2d 265, 268-69 (E.D.N.Y. 2002) (holding that the rates of the law firm, which ranged from $371 to $450 an hour for the senior partner in charge of the case, were not patently objectionable).  The $450 hourly rate would be $754.14 in today's dollars.  More than ten years ago, the Second Circuit, in a summary order, affirmed a decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York ranged from approximately $300 to $400 per hour.  See Konits v. Karahalis, 409 F. App'x 418, 421 (2d Cir. 2011) (summary order) (affirming Konits v. Valley Stream Central High School Dist., 1 Civ. 6763 (LDW), 2010 WL 2076949 (E.D.N.Y. May 19,

---

[8] Mark S. Cohen, the monitor, was described as follows in the Judge's November 9, 2011 Order Appointing Monitor:

> Mark S. Cohen is a named partner in Cohen & Gresser LLP.  Since co-founding the firm in 2002, Mr. Cohen has headed the firm's Litigation & Arbitration and White Collar Defense, Regulatory Enforcement and Internal Investigations groups.  He received his B.A. from Cornell University and is a magna cum laude graduate of the University of Michigan Law School, where he was an editor of the Michigan Law Review.  Mr. Cohen has served previously as an Assistant United States Attorney for the Eastern District of New York in the Criminal Division. He currently maintains an active private practice, handling both civil and criminal matters.

Vulcan Case, ECF No. 758 at 2.

2010)).  The Court of Appeals stated: "The district court did not abuse its discretion in reaching this conclusion, which is amply supported by recent Eastern District cases assessing the prevailing rate in that district."  Id. at 422 (internal citations omitted).  A rate of $400 per hour in 2010, in light of inflation as calculated using Department of Labor's CPI, would have been approximately $544 per hour in 2022.[9]  In 2010, the Court of Appeals also affirmed an Eastern District of New York award in a civil rights employment case with an hourly rate of $480 for an attorney with 30 years of experience, which, in light inflation as calculated with the CPI, would have been approximately $653 per hour in 2022.[10]  See Manzo v. Sovereign Motor Cars, Ltd., 419 F. App'x 102 (2d Cir. 2011) (summary order) (affirming Manzo v. Sovereign Motor Cars. Ltd., 8 Civ. 1229 (JG) (SMG), 2010 WL 1930237 (E.D.N.Y. May 11, 2010)); Leser v. U.S. Bank Nat. Ass'n, 9 Civ. 2362 (KAM) (MDG), 2013 WL 1952306, at *10 (E.D.N.Y. May 10, 2013) (awarding law firm partner with 28 years' experience $425 per hour, which, adjusted for inflation through December 2022, would be $541.50).  More recent awards in the Eastern District of New York of hourly rates for challenging litigation litigated by experienced counsel have fallen within the range of these earlier awards, adjusted for inflation.  See Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys., No. 16 Civ. 5829 (NGG) (VMS), 2021 WL 4452202, at *3, 11 (E.D.N.Y. Sept. 29, 2021) (adopting report and recommendation for $630 per hour for an attorney with more than 50 years of experience, $575 for a former partner with over 25 years of experience, and $515 for a former partner with 13 years of experience); Nat'l Env't Safety Co. v. Katz, No. 18 Civ. 2161 (JMA) (GRB), 2019 WL 1994049, at *2 (E.D.N.Y. May 6,

---

[9] The exact value equivalent of $400 in May 2010 would have been $544.14 in December 2022. See https://www.bls.gov/data/inflation_calculator.htm (last visited February 1, 2023).

[10] The exact value equivalent of $480 in May 2010 would have been $652.96 in December 2022. See https://www.bls.gov/data/inflation_calculator.htm (last visited February 1, 2023).

2019) (awarding a $500-$600 hourly rate for partners and a $300 hourly rate for associates);

McLaughlin v. IDT Energy, No. 14 Civ. 4107 (ENV) (RML), 2018 WL 3642627, at *17

(E.D.N.Y. July 30, 2018) (finding an award of rates typical to the Eastern District of New York

and noting rates of "$550 for partners/equity owners with more than thirty years of experience,

$500 for partners/equity owners with more than fifteen years of experience, $450 for

partners/equity owners with more than ten years of experience, $400 for senior

associates/associates with more than ten years of experience, $350 for senior

associates/associates with six to nine years of experience, $300 for associates with three to five

years of experience, $250 for associates with fewer than three years of experience"), report &

recommendation adopted in part & rejected in part due to settlement, 10/18/2018 Order, ECF

No. 137.

      In cases like the present one, four years ago, a court within this District had already

awarded hourly rates as high as $600 in light of the experience of the lawyer and complexity of

the matter.  See Centro de la Comunidad Hispana de Locust Valley, 2019 WL 2870721, at *6

(E.D.N.Y. June 18, 2019), report & recommendation adopted, No. 10 Civ. 2262 (DRH), 2019

WL 2869150 (E.D.N.Y. July 3, 2019) (awarding $500 and $600 hourly fees in civil rights

matter); see also Sixty-One Thousand Nine Hundred Dollars & No Cents, 856 F. Supp. 2d at 494

(awarding hourly rates of $600 for partner and $400 for associate in forfeiture matter).  In 2021,

the court awarded $550 per hour in a civil rights case to a litigator with more than 25 years'

experience.  See Agudath Israel of Am. v. Hochul, No. 20 Civ. 04834 (KAM) (RML), 2021 WL

5771841, at *7 (E.D.N.Y. Dec. 6, 2021), appeal filed (2d Cir. Jan. 6, 2022).  Just last year, this

Court awarded in a First Amendment case hourly rates of $600 for a partner and $550-$600 for

counsel each with more than fifteen years' experience.  See Aptive Env't, LLC v. Vill. of E.

Rockaway, New York, No. 19 Civ. 3365 (DRH) (SIL), 2022 WL 5434178, at *5 (E.D.N.Y. July

8, 2022), report & recommendation adopted, No. 19 Civ. 3365 (JMA) (SIL), 2022 WL 4376618

(E.D.N.Y. Sept. 22, 2022).[11]

Rates for attorneys in the Eastern District of New York tend to fall somewhat behind the

rates awarded in the Southern District of New York, although cases in the mid-range of

complexity requiring experienced counsel, the rates begin to converge.  For example, in a year-

old detailed report and recommendation on a fee application in the Southern District of New

York involving a civil rights case litigated on the plaintiff's behalf over many years by three

firms at different times, the court recommended that the following rates under the NYCHRL be

awarded for the most experienced attorneys:

First firm:
Liddle, approximately 30 years' experience: $600/hr.

Second firm:
Alterman, over 40 years' experience: $600/hr.
Boop, over 30 years' experience: $550/hr.[12]

Third firm:
Moore, over 35 years' experience: $650/hr.

---

[11] Even these rates are significantly below those adopted in the Laffey Matrix.  The Laffey
Matrix is a fee schedule used to determine the reasonable hourly rates in the District of Columbia
for attorneys' fee awards in civil cases in District of Columbia courts.  The most recently
available Laffey Matrix from the Department of Justice's website, for 2020 to 2021, provides for
fees of $665 per hour for attorneys with 31-plus years of experience and $591 per hour for
attorneys with 16-20 years of experience.  "The matrix is intended for use in cases in which a
fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees."  USAO
Attorney's Fees Matrix—2015-2021, note 1, available at
https://www.justice.gov/file/1461316/download (last visited Feb. 1, 2023).  There is no reason to
believe that market rates for attorneys in Washington, D.C. are lower than those in the Eastern
and Southern Districts of New York.

[12] A New York County Supreme Court Order in 2018 awarded Mr. Alterman and Ms. Boop an
hourly rate of $550, suggesting that New York County and the Southern District of New York
share similar hourly rates for experienced attorneys.  See Reveyoso, 2018 WL 6171632, at *1.

*Emamian v. Rockefeller Univ.*, No. 7 Civ. 3919 (PGG) (SDA), 2022 WL 2056275, at *13-22 (S.D.N.Y. Feb. 9, 2022), review pending.  In Emamian, the plaintiff was awarded damages of $450,000 at trial; the court recommended an award of attorneys' fees of $960,570, plus costs of approximately $135,000, for work performed up through but not including a trial.[13] Id. at *24; see Casmento v. Volmar Constr., Inc., No. 20 Civ. 944 (LJL), 2022 WL 17666390, at *4 (S.D.N.Y. Dec. 14, 2022) (awarding attorney admitted in 2008 $500/hour); Gulino v. Bd. of Educ. of the City School Dist. of the City of N.Y., No. 96 Civ. 8414, 2021 WL 3508088, at *4 (S.D.N.Y. June 29, 2021) (recommending the hourly rates of $650 for partners and $500 for counsel in ongoing civil rights case); Ravina v. Columbia Univ., No. 16 Civ. 2137 (RA), 2020 WL 1080780, at *3, 7 (S.D.N.Y. Mar. 6, 2020) (considering the plaintiff's requested hourly rates for counsel ranging, at the senior level, from $750 to $1,200 and applying a 35-percent reduction, in civil rights case) (footnote & internal citation omitted); Brown v. City of New York, No. 17 Civ. 9078, 2020 WL 6075524, at *4 (S.D.N.Y. Oct. 15, 2020) (concluding that "540/550 for partner Gregory K. McGillivary [and] . . . $350/400/405 for partner David Ricksecker" were reasonable" in a complex and lengthy wage-and-hour action) (internal citations omitted); The Independence Project, Inc. v. Ventresca Bros. Constr Co., 397 F. Supp. 3d 482, 494-96 (S.D.N.Y. 2019) (setting the attorney's reasonable hourly rate at $400, where the plaintiff "achieved a high degree of success" and the plaintiff's counsel "had been practicing law for over 40 years and as litigated many ADA cases") (internal citations omitted); see also Capitol Records, LLC v. ReDigi Inc., 12 Civ. 95 (RJS), 2022 WL 3348385, at *1-3 (S.D.N.Y. Aug. 12, 2022) (setting the hourly rates for partners with nearly thirty and more than twenty years of

---

[13] Attorneys' fees were not awarded for trial because the plaintiff obtained a verdict at trial for an amount less than the pre-trial FRCP 68 offer of judgment.  See Emamian, 2022 WL 2056275, at *24.

24

experience at $500-$550 and $475-$545, respectively, in a copyright infringement action) (internal citations & quotations omitted).

Considering the requirements of Lilly, Johnson and the relevant statutes, the Court respectfully recommends that Plaintiff's counsel be awarded their requested hourly rates: Mr. Smith be given the requested hourly rate of $575, Mr. Lenoir be given the requested hourly rate of $550, and Mr. Gleason be given the requested hourly rate of $500.  The recommended hourly rates consider the overall experience, skill and contribution that these attorneys made to this litigation, in which they achieved an excellent result for Plaintiff.  Based on the case law discussed above, Plaintiff's counsel would be entitled to rates above their requested rates were the Court to apply the New York County rates as instructed by the NYCHRL § 8-502(g) and in light of the hourly rates recently granted in the Southern District of New York in similar cases. Plaintiff's counsel did not request such rates, but, instead, requested rates consistent with awards in recent civil rights cases requiring experienced counsel in the Eastern District of New York. The Court does not recommend an award of rates higher than those requested.

### ii.     Reasonable Number Of Hours

As is made clear below with the Court's careful review of Plaintiff's timesheet submissions, "[i]n determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino, 166 F.3d at 425.

Courts may also consider the degree of success obtained in comparison to the time expended when determining the reasonableness of the hours incurred in litigation.  See Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).  In analyzing a prevailing party's degree of success, a

court looks to the party's "primary aim" in the litigation and the extent to which the party achieved that goal.  Holick v. Cellular Sales of N.Y., LLC, 48 F.4th 101, 109 (2d Cir. 2022) (citing Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008)).  "[A] plaintiff's lack of success on some claims does not require a court to reduce the lodestar amount in situations where the successful and unsuccessful claims were interrelated and required essentially the same proof."  Balu v. City of New York, No. 12 Civ. 1071 (KPF), 2016 WL 884666, at *6 (S.D.N.Y. Mar. 8, 2016) (citing Quaratino, 166 F.3d at 425).  "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  Henley, 461 U.S. at 435.  As the Second Circuit and the Supreme Court have observed, "in many civil rights cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories, making it difficult to divide the hours expended on a claim-by-claim basis."  Konits, 409 F. App'x at 421 (quoting Hensley, 461 U.S. at 435) (alterations & internal quotations omitted).  "Such a lawsuit cannot be viewed as a series of discrete claims," and, instead, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended."  Id.  Where unsuccessful claims are "inextricably intertwined and involve a common core of facts or are based on related legal theories," attorneys' fees may be awarded for unsuccessful claims.  Id. (quoting Reed v. A. W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)) (internal quotations omitted).  The Second Circuit recently cited Hensley to confirm that the Supreme Court "requires the district court to consider whether the legal theories are related, not whether they raise identical legal issues."  Holick, 48 F.4th at 107 (citing Hensley, 461 U.S. at 435) (holding that a common legal issue undergirded the plaintiffs' claims and rejecting the defendant's proposal that the court should have "parse[d] differences

26

between the specific elements required for each individual claim").  As discussed above as to the hourly rate, Plaintiff's counsel achieved an excellent result on almost all of Plaintiff's claims.  It should be noted that success on the claims that were dismissed would not likely have led to a greater recovery for Plaintiff who sought damages for injury to his reputation and emotional pain and suffering, damages which were similar under each of Plaintiff's theories.

Counsel each submitted detailed time sheets reporting their work on this matter.  In order to properly analyze Plaintiff's counsels' time records, the Court has categorized the work of Mr. Smith, Mr. Lenoir and Mr. Gleason as falling into the following categories of work: 1) pre-litigation (EEOC), 2) pre-litigation (FDNY), 3) pre-litigation (combined), 4) first complaint, 5) first amended complaint, 6) second amended complaint, 7) third amended complaint, 8) motions to dismiss, 9) paper discovery, 10) depositions, 11) motions for summary judgment, 12) motions in limine, 13) pre-trial and trial preparation, 14) mediation and settlement, 15) motion for attorneys' fees, and 16) appearances and meetings.[14]  The Court also created a category for entries related to Johnson v. Mannix, 18 Civ. 2842 (KAM) (VMS); a category for travel; a miscellaneous category; and a block billing category.

A close look at the work performed and the exceptional zealousness of the representation in this case suggest that most of the work performed by Plaintiff's counsel was necessary and was conducted efficiently.  See Perez v. Westchester Cnty. Dep't of Corr., 587 F.3d 143, 156 (2d

---

[14] The combined timesheets are attached as Appendix B to this report and recommendation.  The Court has carefully reviewed the hours expended and compared Plaintiff's counsel's hours to hours approved for similar work in other cases.  As discussed below, the Court has considered the extensive experience of Plaintiff's counsel in recommending their rates above.  A corollary to recognizing their experience is that the Court expects a high degree of efficiency as they draw on their experience to complete work.  As to certain aspects of the litigation, therefore, the Court has reduced the number of hours that it deems compensable in light of the relative difficulty of the relevant task and the attorneys' experience.

Cir. 2009) (affirming a fee award and observing that "[m]ost of the items that Defendants contest would have been vital if the case proceeded to trial"); see, e.g., Cataphora Inc. v. Parker, No. C 9-5749 (BZ), 2012 WL 685330, at *1 (N.D. Cal. Mar. 2, 2012) (citing Int'l Longshoremen's & Warehousemen's Union v. L.A. Export Terminal, Inc., 69 Cal. App. 4th 287, 304 (1999)) (reasoning that a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response[]").  In particular, the Court takes into account the more challenging evidentiary aspects of Plaintiff's effort to get to trial: the pursuit of difficult-to-locate evidence, such as telephone records, to try to establish Plaintiff's claim as to the release of private information for the Article, infra, Sec. I.A.ii.h; the depositions of the individual Defendants who held high-level positions in the FDNY and its union, infra, Sec. I.A.ii.i; challenging motions to quash as to proposed depositions of one of Plaintiff's counsel and of the reporter who wrote the Article, infra, Sec. I.A.ii.h; and the collection of evidence of conflicting material facts suggesting a connection between Plaintiff's employment experience and the Vulcan Case relied on by the Court in the summary judgment decision, ECF No. 199 at 13, 26, 34, 50-51.

The Court's analysis focuses primarily on the work of Mr. Smith and Mr. Lenoir, who performed the bulk of the compensable work in this litigation.  As is clear from Appendix B, they worked cooperatively on the major aspects of this case, as discussed below.  The Court believes that, in a fact-intensive and hard-fought case such as this one, for two experienced attorneys to work together was reasonable.  The use of two attorneys is not problematic, see McKever v. Vondollen, 681 F. Supp. 999, 1002-03 (N.D.N.Y. 1988), and using multiple attorneys is not unreasonable per se, see DeMarco v. Ben Krupinski Gen. Contractor, Inc., No. 12 Civ. 573 (SJF) (ARL), 2014 WL 3696020, at *8 (E.D.N.Y. July 22, 2014) (internal citations

omitted); C.D. v. Minisink Valley Cent. Sch. Dist., 17 Civ. 7632 (PAE), 2018 WL 3769972, at *9 (S.D.N.Y. Aug. 9, 2018) (stating that "[t]here is of course nothing inherently wrong with staffing multiple attorneys on a case, a practice that is common to, inter alia, civil rights litigation"). Multiple attorneys are allowed to recover fees on a case if they show that the work reflects the distinct contributions of each lawyer. In discussing the different aspects of the litigation below, the Court combines the work of Mr. Smith and Mr. Lenoir, but does note where one took more of the laboring oar. The Court discusses Mr. Gleason's hours separately.

In reviewing Plaintiff's counsels' timesheets, the Court considers that there is no presumption in an employment case as to any maximum number of hours above which hours spent are unreasonable. See Casmento, 2022 WL 17666390, at *5. In fact, "[c]ourts have awarded fees for hours above 1,000 in employment discrimination matters." Id. (citing Makinen v. City of New York, 11 Civ. 7535 (ALC) (AJP), 2016 WL 1451543, at *6-7 (S.D.N.Y. Apr. 12, 2016), and Reiter v. Metropolitan Transp. Auth. of State of New York, 1 Civ. 2762 (GWG), 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007)).

### a.   Pre-Litigation (EEOC)

Mr. Smith and Mr. Lenoir expended 68.15 pre-litigation hours on Plaintiff's U.S. Equal Employment Opportunity Commission ("EEOC") submissions and proceeding. See Appendix B. Mr. Lenoir largely handled this work. See id. Plaintiff is entitled to an award of reasonable attorneys' fees for time expended in the EEOC proceeding. See Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic District Comm'n, 934 F.3d 238, 244 (2d Cir. 2019) (stating that "[s]ection 1988 permits attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation") (internal citation & quotations omitted). The Court respectfully recommends that Plaintiff be awarded attorneys' fees for 54.52 hours expended by

Mr. Smith and Mr. Lenoir on the pre-litigation EEOC proceeding, which includes a twenty-percent reduction of the requested hours.[15]  See, e.g., Davis v. Kutak Rock, LLP, No. 9 Civ. 2768 (REB) (MJW), 2013 WL 1222373, at *1-3 n.2 (D. Colo. Mar. 25, 2013) (awarding approximately 48 hours for EEOC work pre-litigation) (internal citations omitted), aff'd, 560 F. App'x 756 (10th Cir. 2014); Rebollar v. Ortega Med. Clinic, P.L.L.C., No. 4:18-846, 2019 WL 3975454, at *1, 4 (S.D. Tex. Aug. 22, 2019) (considering an action in which the plaintiff asserted claims pursuant to Texas law and Title VII, and concluding that 54 pre-litigation hours expended on EEOC administrative proceedings were reasonable) (footnote omitted).

### b.       Pre-Litigation (Combined)

Mr. Smith and Mr. Lenoir expended 3.15 pre-litigation hours on general tasks that could be attributable to either Plaintiff's FDNY proceeding or Plaintiff's EEOC proceeding, but the Court cannot determine to which proceeding it should be allocated.  See Appendix B.  Unlike time expended solely on the EEOC proceeding, time expended on the FDNY proceeding is not compensable, as it was not an administrative proceeding that needed to be exhausted or that served as a condition precedent to Plaintiff's claims.  Although, under some circumstances, work on a disciplinary proceeding may be compensable, Cullen v. Fliegner, 18 F.3d 96, 106 (2d Cir. 1994), a plaintiff must identify those specific hours expended on the disciplinary proceeding that had some benefit to resolving the civil rights action, Raja v. Burns, 43 F. 4th 80, 92-93 (2d Cir. 2022).  See Chabad Lubavitch, 934 F.3d at 244-45 (reasoning that, "even if the prior proceeding is not a proceeding to enforce one of the § 1988 civil rights laws, the discrete portion of the work product from the administrative proceedings that was both useful and of a type ordinarily

---

[15] Applying this twenty-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 0.34 hours for Mr. Smith and 13.29 hours for Mr. Lenoir.

necessary to secure the final result obtained from the litigation can be part of the attorney's fees awarded under § 1988," provided that the plaintiff parses the compensable and non-compensable hours) (internal citations & quotations omitted).  Under these standards, Plaintiff's counsel would have had to explain how the identified hours were either related to the EEOC, or if related to the disciplinary proceeding, were useful and of a type generally necessary to advancing Plaintiff's federal civil rights litigation.  See Raja, 43 F. 4th at 93.  Plaintiff has not parsed this time spent such that the Court can determine which hours are compensable and which hours are not compensable.  The Court respectfully recommends that Plaintiff not be awarded attorneys' fees for this work by Mr. Lenoir and Mr. Smith.

### c.      Drafting The Complaint

Mr. Smith and Mr. Lenoir expended 36.95 hours drafting the 33-page complaint.  See Appendix B.  The Court respectfully recommends that Plaintiff be awarded attorneys' fees for 25.86 hours for drafting the complaint, which is approximately a thirty-percent reduction in the time for which compensation is requested.[16]  This reduction is recommended in view of the time expended on the pre-litigation EEOC proceeding for which the Court recommends compensation, which was work during which counsel developed a factual record and the federal legal theories advanced in this litigation, and in view of the similarity of the NYSHRL and NYCHRL claims to the evidence and analysis developed before the EEOC.  See, e.g., Corral v. Montgomery Cnty., 91 F. Supp. 3d 702, 706, 717 (D. Md. 2015) (awarding attorneys' fees for 25 hours expended preparing the complaint in a Section 1983 case).

---

[16] Applying this thirty-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 5.76 hours for Mr. Smith and 5.33 hours for Mr. Lenoir. (A thirty-percent reduction equals 25.865 hours, which the Court has rounded down.)

### d.      Drafting The First Amended Complaint

Mr. Smith and Mr. Lenoir expended 4.9 hours drafting the first amended complaint.  <u>See</u> Appendix B.  The changes made to the complaint in creating the first amended complaint largely amounted to the addition of allegations as to and claims against Daniel A. Nigro, Commissioner of the FDNY and then a Defendant ("Mr. Nigro"); minor updates; correction of typos; and other minor edits.  <u>See</u> <u>generally</u> ECF Nos. 1, 23.  The addition of the Commissioner was unnecessary in this case, and he was quickly dismissed.  <u>See</u> ECF No. 82 at 68.  The minor amendments could have been avoided by more careful drafting of the initial complaint.  The Court respectfully recommends that Plaintiff not be awarded attorneys' fees for drafting the first amended complaint.

### e.      Drafting The Second Amended Complaint

Mr. Smith and Mr. Lenoir expended 10.7 hours drafting the second amended complaint. <u>See</u> Appendix B.  Mr. Smith largely handled this work.  <u>See</u> Appendix B.  The changes to the first amended complaint, forming the second amended complaint, were made to conform the pleading to the Court's memorandum and order granting the motion to dismiss of City Defendants and Mr. Nigro, with leave to replead Plaintiff's Section 1981 claim against City Defendants as a Section 1983 claim, and granting in part and denying in part Mr. Lemonda's motion to dismiss.  <u>See</u> 3/31/2018 Order; ECF No. 82; ECF No 87 at 1 n.1 (stating, in the second amended complaint, that "Plaintiff is conforming this pleading to the rulings by the Court"). Given that the Court deems the expenditure of only 25.86 hours on the initial complaint to be reasonable, the Court respectfully recommends that Plaintiff be awarded attorneys' fees for 5.35

hours for drafting the second amended complaint, which was largely directed by the Court's motion decision.  This reduction is a fifty-percent reduction in the hours requested.[17]

### f.  Drafting The Third Amended Complaint

Mr. Smith and Mr. Lenoir expended 44.35 hours drafting the third amended complaint. See Appendix B.  Mr. Smith largely handled this work.  See id.  The changes made to the second amended complaint, forming the third amended complaint, were principally the additions of Defendants Paul D. Mannix, Joseph Kearney and James McCarthy.  See generally ECF No. 115. The work conducted in preparing the third amended complaint is not compensable by City Defendants, given that this expenditure was clearly and distinctly separable from Plaintiff's claims against City Defendants.  The Court respectfully recommends not awarding attorneys' fees for such work.

### g.  Opposing The Motions To Dismiss

Mr. Smith and Mr. Lenoir expended 44.8 hours opposing two motions to dismiss Plaintiff's first amended complaint.  See Appendix B.  Mr. Smith largely handled this work.  See id.  Mr. Lemonda moved to dismiss Plaintiff's NYSHRL claim, NYCHRL claim, Section 1983 claim, Section 1981 claim, claim for intentional or negligent infliction of emotional distress, and claim for contempt of a lawful federal court order pursuant to Fed. R. Civ. P. 12(b)(6).  See generally ECF No. 47-5.  City Defendants and Mr. Nigro moved to dismiss some of the complaint on the following bases: 1) Plaintiff's Title VII claims prior to April 9, 2015 are time-barred; 2) Plaintiff improperly asserted Section 1983 claims as Section 1981 claims; 3) Plaintiff's claim for intentional infliction of emotional distress is time-barred; 4) Plaintiff's

---

[17] Applying this fifty-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 4.35 hours for Mr. Smith and 1 hour for Mr. Lenoir.

claims for negligent and intentional infliction of emotional distress should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6); 5) Plaintiff's claim for contempt should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6); 6) Plaintiff's First Amendment retaliation claim, including that brought pursuant to Section 1983, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6); and 7) all claims against Mr. Nigro should be dismissed.  See generally ECF No. 48-3.  Plaintiff filed a 25-page omnibus opposition, which summarized the arguments to be addressed.  See generally ECF No. 50.  All but two of the arguments, namely Mr. Lemonda's argument that none of the claims constitutes a claim for relief against him and Mr. Nigro's argument that all claims against him should be dismissed because he was sued in his official capacity, related to City Defendants.  See generally ECF No. 50.  The Court issued a 70-page decision granting the motion of City Defendants and Mr. Nigro, and denying Mr. Lemonda's motion as to the NYSHRL, NYCHRL and Section 1981 claims but granting his motion on the Section 1983 claim, the negligent and intentional infliction of emotional distress claims, and the contempt claim.  See generally ECF No. 82.

The Court respectfully recommends awarding attorneys' fees for 22.4 hours for the efforts of Mr. Smith and Mr. Lenoir in opposing the two motions to dismiss as necessary to the progress of the litigation.[18]  See, e.g., Louie v. Carichoff, No. 5 Civ. 984 (DFL) (DAD), 2006 WL 3349521, at *1-2 n.2 (E.D. Cal. Nov. 16, 2006) (finding that expending 27.10 hours on a motion to dismiss was reasonable in an action arising from the ADA and state laws); Fabela v. City of Farmers Branch, Tex., No. 10 Civ. 1425-D, 2013 WL 2655071, at *8 (N.D. Tex. June 13, 2013) (finding that "no more than 50 hours were reasonably expended by Veeser researching and

---

[18] Applying this fifty-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 18.9 hours for Mr. Smith and 3.5 hours for Mr. Lenoir.

drafting the response and 11.6 hours were reasonably expended by Biles" in opposing a motion

to dismiss. The recommended reduction takes into account that Plaintiff did not succeed on

much of the opposition and that it related in part to Mr. Lemonda, who is not a City Defendant.

### h.     Conducting Paper Discovery

Mr. Smith and Mr. Lenoir expended 205.7 hours on paper discovery. See Appendix B.

Mr. Lenoir largely handled this work. See id. All of these hours are compensable because the

Court considers this work, along with the depositions and the summary judgment motion

practice, to be the most important work that led to Plaintiff's success. The Court respectfully

recommends an award of 205.7 hours.

Paper discovery in this case involved extensive motion practice. Some of the numerous

discovery motions were brought by Defendants to halt or otherwise limit certain discovery. See,

e.g., ECF Nos. 34, 36, 38 (motion for a protective order for Bureau of Investigations and Trials

("BIT") files); 44, 46, 1/3/2018 Order, 140 (second motion for a protective order for BIT files).

Other motions were brought by Plaintiff to ensure certain discovery was produced. See, e.g.,

ECF Nos. 56, 72, 73 (motion to obtain certain phone records and related orders); 64 (joint

motion on disagreements as to telephone records); 75 and 2/1/2018 Order (Defendants' appeal of

magistrate judge's order as to telephone records and order); 81, 83, 4/11/2018 Order, 86, 104

(motion to compel production of certain investigation documents); 131, 132 and 2/25/2019 Order

(submission on Fed. R. Civ. P. 30(b)(6) witnesses about BIT and anti-retaliation procedures for

priority hires). Other motions concerned contentious topics, such as the proposed deposition of

Mr. Gleason, see ECF Nos. 100-01, 105, as to which the Court granted Defendants a deposition

on written questions and denied the demand for Mr. Gleason's telephone records, ECF No. 129,

and the subpoena issued to the Post reporter who wrote the Article, which, while understandably

of interest to Plaintiff, encroached on the reporter's First Amendment rights, ECF Nos. 134, 136, 3/28/2019 Order, 140, 142-44, 150, 155, 160.  Plaintiff was largely successful as to his litigation positions in the discovery motions, except as to discovery related to the immediate production of certain BIT material, 8/17/2018 Order; the Gleason deposition, ECF No. 129; and the subpoena to the Post reporter, ECF Nos. 134, 136, 3/28/2019 Order, 140, 142-44, 150, 155, 160.  See, e.g., Luessenhop v. Clinton Cnty., N.Y., 558 F. Supp. 2d 247, 270 (N.D.N.Y. 2008), aff'd, 324 F. App'x 125 (2d Cir. 2009) (concluding in § 1983 action that spending 13.5 hours to "research and draft [] a discovery motion" is reasonable).

In addition to the extensive motion practice, this category also encompasses typical preparation of and responses to written discovery requests, as well as review of related information and material produced, attendant to any case.

### i.     Conducting Depositions

Mr. Smith and Mr. Lenoir expended 139.75 hours on depositions.  See Appendix B.

Between January 14, 2019 and January 28, 2019, inclusive, Mr. Smith and Mr. Lenoir spent 30.3 hours preparing for and defending Plaintiff's deposition.  See id.  Plaintiff's deposition itself began at 10:19 AM and concluded at 6:21 PM on January 28, 2019.  See generally ECF No. 226-1.  The Court finds that this expenditure of approximately three eight-hour days to prepare for Plaintiff's deposition, and approximately one day to defend Plaintiff's deposition, was reasonable.  It was essential that Plaintiff be well-prepared for his deposition because much of his case, particularly as to his firehouse experiences and damages, relied solely on Plaintiff's recollections and credibility.  The Court respectfully recommends that all 30.3 hours be deemed compensable.

Mr. Smith and Mr. Lenoir spent the remaining 109.45 hours preparing for and deposing Mr. Curneen, Mr. Lemonda, Mr. Gala, Francis Gribbon ("Mr. Gribbon"), Gloria Aiken ("Ms. Aiken"), James McCarthy ("Mr. McCarthy"), Mr. Kearney and Mr. Mannix.  Mr. Curneen's deposition took place on January 30, 2019 from 10:10 AM to 5:03 PM, lasting 6 hours and 53 minutes.  See generally ECF No. 170-5.  Mr. Lemonda's deposition took place on February 6, 2019 from 10:08 AM to 2:00 PM, lasting 3 hours and 52 minutes.  See generally ECF No. 170-7. Mr. Gala's deposition took place on February 13, 2019 from 10:17 AM to 4:51 PM, lasting 6 hours and 34 minutes.  See generally ECF No. 170-4.  Mr. Gribbon's deposition took place on February 15, 2019 from 10:03 AM to 12:39 PM, lasting 2 hours and 36 minutes.  See generally ECF No. 170-10.  Ms. Aiken's deposition took place on February 20, 2019, concluding at 11:17 AM; given the start times of the other depositions, the Court estimates that the length of the deposition was 1 hour.  See generally ECF No. 170-6.  The Court estimates that the length of Mr. McCarthy's deposition was 1 hour and 30 minutes.  See Appendix B (2/28/2019 billing entry from Mr. Smith for 2 hours for preparation and "second seat[ing]" the deposition, as well as discussion with opposing counsel, and 2/28/2019 billing entry from Mr. Lenoir for 3.5 hours for preparation for and taking the deposition).  Mr. Kearney's deposition took place on April 10, 2019 from 10:18 AM to 1:26 PM, lasting 3 hours and 8 minutes.  See generally ECF No. 170-8. Mr. Mannix's deposition took place on April 25, 2019 from 10:20 AM to 3:52 PM, lasting 5 hours and 32 minutes.  See generally ECF No. 170-9.  The total amount of time spent taking these depositions was 31 hours and 5 minutes.

The Court in this case finds a 2:1 ratio of preparation time to time conducting a deposition to be reasonable.  See Hargroves v. City of New York, Nos. 3 Civ. 1668 (RRM) (VMS), 3 Civ. 3869 (RRM) (VMS), 3 Civ. 5323 (RRM) (VMS), 3 Civ. 4646 (RRM) (VMS),

2014 WL 1270585, at *19 (E.D.N.Y. Jan. 6, 2014), report & recommendation adopted, 2014 WL

1271039 (E.D.N.Y. Mar. 26, 2014) (concluding that spending "approximately 37.3 hours

preparing for [a] deposition and 6.4 hours summarizing . . . deposition notes" in § 1983 action

was reasonable); see also United States ex rel. Palmer v. C&D Techs., Inc., 897 F.3d 128, 139

(3d Cir. 2018) (affirming decision that limited recoverable preparation time to one attorney and

up to a 1.75 preparation hours per hour of deposition time); Edmo v. Idaho Dep't of Correction,

No. 17 Civ. 151 (BLW), 2022 WL 16860011, at *6 (D. Idaho Sept. 30, 2022) (in a prisoner civil

rights case, allowing as reasonable 26.7 hours of preparation for a 6.5-hour deposition);

360Heros, Inc. v. GoPro, Inc., No. 17 Civ. 1302 (MFK) (CJB), 2022 WL 2063262, at *2 (D. Del.

June 8, 2022) (approving deposition compensation at a ratio of 1:1 for preparation and taking

deposition); Bhd. Mut. Ins. Co. v. Vinkov, No. ED 19 Civ. 1821 (SB) (SPX), 2021 WL 1152896,

at *3 (C.D. Cal. Jan. 13, 2021) (in sanctions motion, approving 3.9 hours preparation for 1.5-

hour deposition); Marshall v. Randall, No. 10 Civ. 2714 (JBW) (VVP), 2013 WL 12347282, at

*7 (E.D.N.Y. Jan. 24, 2013) (finding that "a total of 20 hours" was a reasonable amount of time

to bill for deposition preparation for two witnesses deposed for a total of approximately 5 hours

in a § 1983 action).  The Court respectfully recommends an award of attorneys' fees for 93 hours

for the depositions taken by Plaintiff's counsel, but that the remaining 16.45 hours not be

deemed compensable.[19]

### j.   Opposing The Summary Judgment Motions

Mr. Smith and Mr. Lenoir expended 257.4 hours opposing the three motions for summary

judgment.  See Appendix B.  Mr. Smith largely handled this work.  See id.  As with the paper

---

[19] For this reduction, the Court deducts 16.45 hours of non-compensable time only from Mr.
Smith's work on the depositions, as he was the primary attorney on this aspect of the case.

discovery and depositions, getting to the eve of trial required succeeding against heavily litigated opposition from Defendants.  City Defendants moved for summary judgment with a 134-paragraph-long 56.1 Statement, ECF No. 166; 82 pages of supporting documentation attached to defense counsel's declaration, ECF No. 167 and attachments; a Joint Deposition Transcript Appendix with eight attachments, ECF No. 170; a 30-page memorandum of law in support, ECF No. 168; and a 12-page reply, ECF No. 169.  The other Defendants also moved for summary judgment.  See ECF Nos. 171-178, 183-184.  Plaintiff submitted a joint opposition to the summary judgment motions, consisting of a memorandum of law, ECF No. 179; a 56.1 Statement, ECF No. 180; Plaintiff's declaration, ECF No. 181; and Plaintiff's counsel's declaration with 61 exhibits, ECF No. 182.  Plaintiff also filed a sur-reply, ECF No. 192, to which City Defendants responded, ECF No. 195-196.

In March 2021, the District Court granted the summary judgment motions in part and denied them in part in a 54-page decision.  ECF No. 199.  The Court denied 1) City Defendants' motion for summary judgment as to the Title VII, NYSHRL and NYCHRL retaliation claims; 2) the motions for summary judgment of Mr. Lemonda, Mr. Kearney and Mr. Mannix as to Plaintiff's NYSHRL and NYCHRL claims; 3) City Defendants' motion for summary judgment as to Plaintiff's retaliatory hostile work environment claim; 4) the summary judgment motions of Mr. Curneen, Mr. Gala, Mr. Lemonda, Mr. Kearney and Mr. Mannix pursuant to Section 1983; 5) the motions for summary judgment of Mr. Curneen, Mr. Gala, Mr. Lemonda, Mr. Kearney and Mr. Mannix as to Plaintiff's Section 1981 claim; and 6) City Defendants' motion for summary judgment pursuant to Section 1983, alleging municipal liability.  The Court granted Defendants' motions only as to two categories of Plaintiff's claims: the Section 1985 and Section

1983 conspiracy claims.  Thus, Plaintiff's theories of liability largely survived Defendants'
multiple efforts to defeat Plaintiff's effort to get to trial.

      The summary judgment motion practice confirmed the utility of the paper discovery and
deposition practice, which were extensive considering that the case is a one-plaintiff employment
case limited to a discrete period of time in which Plaintiff did not lose his employment.  The
Court's summary judgment decision demonstrated how important the discovery discussed above
was to Plaintiff surviving the dispositive motion practice and moving toward trial.  See ECF No.
199.  Much of Plaintiff's case could arguably have been established through his testimony, if
credited, and the District Court relied on it heavily in largely denying Defendants' motions for
summary judgment.  See, e.g., id. at 8 (citing ECF No. 170-1 at 115-116, 120); 9 (citing ECF No.
170-1 at 125); 26 (citing ECF No. 170-1 at 16-17).  Nonetheless, Plaintiff would not have been
able to testify about the alleged actions of Defendants relating to the Article that gave rise to
their possible liability to the extent that those actions occurred outside of Plaintiff's knowledge.
For example, although Plaintiff could have testified about events at his firehouse, he would not
have been able to testify about Defendants' communications that allegedly related to the
publication of the Article.  For another example, in the memorandum and order, the District
Court considered the Article, Plaintiff's testimony and numerous isolated pieces of evidence,
such as communications received by Mr. Gala to establish "general corporate knowledge" as to
Plaintiff's status as a priority hire.  See ECF No. 199 at 26-28.  Without the results of the
discovery diligently conducted by Plaintiff's counsel, that Plaintiff would have had sufficient
evidence to establish this corporate knowledge is an open question.  In denying the summary
judgment motions, the District Court also relied heavily on the telephone record evidence as
circumstantial proof, stating that "Plaintiff, however, cites to abundant circumstantial evidence

that the defendants leaked the information to the New York Post reporter in retaliation for plaintiff's status as a priority hire, including phone records showing calls between Lemonda, Mannix, and Kearney, and phone records showing calls between Lemonda and the New York Post reporter, and the article quoting FDNY sources as insiders." Id. at 33-34.  In the same vein, e-discovery helped Plaintiff offer circumstantial evidence that individual Defendants may have contributed to the Article.  Id. at 35-36.  Without the extensive motion practice and multiple Court conferences about the need for the telephone record discovery and e-discovery, whether Plaintiff could have offered sufficient evidence to suggest Defendants' alleged involvement in the alleged retaliation is uncertain.

The Court respectfully recommends that 231.66 hours of the time spent on the summary judgment motion practice be deemed compensable, giving only a ten-percent reduction in the requested hours.[20]  The Court's omnibus decision shows how integrated the legal theories and factual record were as to the multiple motions, such that the Court does not discount for the work on the non-City Defendants' motions as requested by City Defendants.  The modest 25.74-hour reduction is recommended based on the Court's reasoning that, because the two attorneys had conducted the discovery, including the depositions, they had intimate familiarity with the record such that the opposition to the summary judgment motions could have been prepared on a shorter timeline.  As it is, the recommended number of hours would be the equivalent of almost six full weeks of work by an experienced attorney who had a 40-hour work week.

The recommended number of compensable hours spent opposing the summary judgment motions is consistent with the number of hours that have been permitted in other fee applications.

_____

[20] Applying this ten-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 22.39 hours for Mr. Smith and 3.35 hours for Mr. Lenoir.

For example, in <u>Brady v. Wal-Mart Stores, Inc.</u>, 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006), <u>aff'd on other grounds</u>, 532 F.3d 127 (2d Cir. 2008), the court allowed the plaintiff 180 hours spent successfully opposing one summary judgment motion.  <u>See</u> also <u>HVT, Inc. v. Port Auth. of N.Y. & N.J.</u>, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *6 (E.D.N.Y. Nov. 21, 2018) (allowing 190.84 hours on cross-motions for summary judgment with limited factual record); <u>Nike, Inc. v. Top Brand Co.</u>, 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *7 (S.D.N.Y. Feb. 27, 2006) (allowing approximately 180 hours to oppose one summary judgment motion), <u>report & recommendation adopted</u>, 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006).

### k.    Drafting And Opposing Motions <u>In</u> <u>Limine</u>

Mr. Smith and Mr. Lenoir expended 94.15 hours drafting a motion <u>in</u> <u>limine</u>, as well as a reply to the three oppositions thereto, and opposing three motions <u>in</u> <u>limine</u>.  <u>See</u> Appendix B. Mr. Smith and Mr. Lenoir spent 17.95 hours between January 4, 2022 and January 31, 2022, inclusive, preparing Plaintiff's motion.  <u>See</u> <u>id.</u>  They spent 38.7 hours reviewing and preparing an opposition to Defendants' motions <u>in</u> <u>limine</u> from February 1, 2022 to February 7, 2022; February 8, 2022, as to Mr. Lenoir only; February 9, 2022; February 10, 2022 to February 12, 2022, as to Mr. Lenoir only; and February 16, 2022, as to Mr. Lenoir's first billing entry only. <u>See</u> <u>id.</u>  Mr. Smith also expended combined time for Plaintiff's opposition and Plaintiff's reply on February 8, 2022, February 10, 2022, February 12, 2022, February 13, 2022, and February 14, 2022, amounting to 34 hours.  <u>See</u> <u>id.</u>  Mr. Lenoir had a similar combined expenditure on February 16, 2022 of 2.5 hours.  <u>See</u> <u>id.</u>  Mr. Lenoir additionally spent one hour reviewing Mr. Lemonda's reply and the reply of Mr. Mannix and Mr. Kearney, and consulting with co-counsel on February 21, 2022.  <u>See</u> <u>id.</u>

Plaintiff's motion in limine raised five issues for the Court's consideration, two of which related to issues arising from the Vulcan Case, two of which related to Plaintiff's performance in contrast to that of other firefighters, and one of which related to Peter Gleason, Plaintiff's attorney whom Defendants had deposed because of his contact with the Post reporter.  Plaintiff raised straightforward evidentiary issues: 1) arguing that the Court should take judicial notice of facts related to the Vulcan Case, ECF No. 218 at 8-10; 2) raising hearsay, irrelevance and the witness-advocate rule as objections to Defendants' offer of Mr. Gleason as a witness about the Article, similar arguments as to which were made in an effort to quash Mr. Gleason's subpoenaed deposition during discovery, id. at 10-13; 3) belatedly raising a discovery production objection of completeness to the records of firefighters evaluated by Mr. Curneen, which Plaintiff's counsel acknowledged was only first raised during summary judgment motion practice, id. at 13-15; 4) precluding Merit Matters information that Defendants had declined to produce during discovery and other discovery process objections to related evidence, id. at 15-17; and 5) a lack-of-foundation objection to Plaintiff's testing rank, as compared to the ratings of Plaintiff's classmates, id. at 17-18.  Defendants opposed.  ECF Nos. 225-229.  In further support of his motion, Plaintiff submitted a reply with nine pages of argument and minimal case citations.  ECF No. 231.  The reply largely reiterated the moving brief's arguments, but it added Plaintiff's arguments about why Plaintiff should be allowed at trial to offer expansive theories about the relevance of Merit Matters.  Id.  Given Plaintiff's counsel's familiarity with the discovery and evidentiary record in this case from having conducted discovery, briefed the summary judgment motions and prepared the amended JPTO, their briefing of this motion should have been a more streamlined process.  See Cataphora, 2012 WL 685330, at *1 (reducing

hours in fee application where work was performed on matters as to which counsel was "very familiar" and "repetitive of issues that had come up earlier in the case").

Defendants filed multiple motions in limine.  See ECF Nos. 219 (Mr. Kearney and Mr. Mannix), 220-21 (City Defendants), 222-23 (Mr. Lemonda).  Plaintiff filed a unified opposition. See ECF No. 230.  Defendants filed replies.  See ECF Nos. 232-33.  These motions also covered familiar topics.  The motion of Mr. Kearney and Mr. Mannix addressed the relevance and admissibility of the BIT transcripts, Merits Matters information and a party's disciplinary history.  ECF No. 219.  City Defendants' motion addressed the exclusion of information about the Vulcan Case, certain witnesses because of alleged discovery disclosure failings, Plaintiff's work difficulties subsequent to filing the complaint, and BIT transcripts.  ECF No. 220.  Mr. Lemonda's motion addressed the exclusion of an exhibit offered by Plaintiff, namely a version of the Article containing Plaintiff's written commentary, on grounds of relevance and prejudice; the exclusion of eight articles and one video offered by Plaintiff, all of which were obtained online, on the grounds of hearsay, failure to authenticate and prejudice; the admissibility of an affidavit of Post reporter Ms. Edelman offered by Mr. Lemonda, under the residual exception to the hearsay rule; and the exclusion of evidence as to economic and reputational damages offered by Plaintiff, including a computed amount, given Plaintiff's failure to produce related documents and information requested in discovery, Plaintiff's failure to provide evidence of emotional injury, and the absence of evidence as to Plaintiff's reputational harm.  ECF No. 222.

Given that the matter settled before the District Court ruled on the motions in limine, the Court cannot gauge Plaintiff's success or lack thereof on his motions.  Even if Plaintiff were to have lost some of the motions, none of Plaintiff's positions appears unreasonable.  Compensating Plaintiff's counsel for this work is therefore reasonable, given that they had every incentive to

expand the footprint of the evidence that they were permitted to offer at trial, and to narrow that available to Defendants.  See, e.g., Paguay v. Cantini, No. 11 Civ. 6266 (VEC), 2014 WL 12775308, at *4 (S.D.N.Y. Aug. 1, 2014) (rejecting defendants' argument that work on an unsuccessful motion was not compensable, stating: "In this case, although the motion in limine was unsuccessful, it was a reasonable motion for the Plaintiff to have made, and the issue was a close one.").

Having reviewed the motions and the docket, the Court respectfully recommends that the time deemed compensable for this motion practice be reduced by twenty-percent to 75.32 hours.[21]  See, e.g., Pineda v. Skinner Servs., Inc., No. 16 Civ. 12217 (FDS), 2021 WL 5882596, at *4 (D. Mass. Dec. 13, 2021) (allowing 32 hours for work on a motion in limine); Germain v. Cnty. of Suffolk, 672 F. Supp. 2d 319, 327 (E.D.N.Y. 2009) (finding in a Title VII case that spending 17.75 hours researching and "working on motions in limine" was reasonable).  The Court recommends the reduction because, at this stage of the litigation, five years since its inception, the arguments raised in the motions in limine largely covered well-tread arguments familiar to the attorneys, and the facts cited were also familiar from the discovery, including the depositions, and from the briefing of the summary judgment motions.  Given this background, experienced counsel had the wherewithal to identify the issues in dispute and prepare the arguments in a somewhat more expeditious fashion.

### l.    Performing Pre-Trial And Trial Preparation Work

Mr. Smith and Mr. Lenoir expended 168.95 hours on pre-trial and trial preparation work. See Appendix B.

---

[21]Applying this twenty-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 12.58 hours for Mr. Smith and 6.25 hours for Mr. Lenoir.

55.5 hours were expended in preparing the JPTO; the related billing entries span from July 20, 2021 to July 21, 2021; August 4, 2021, as to Mr. Lenoir; August 5, 2021, as to Mr. Lenoir; August 6, 2021; August 19, 2021, as to Mr. Smith's second entry only; August 20, 2021 to August 30, 2021; August 31, 2021, as to Mr. Smith only; September 1, 2021 to September 2, 2021; September 14, 2021 to November 17, 2021; November 18, 2021, as to Mr. Lenoir; December 2, 2021, as to Mr. Smith's first entry only; December 3, 2021; December 13, 2021 to December 14, 2021; December 22, 2021; as to Mr. Lenoir and Mr. Smith's first entry only; December 23, 2021, as to Mr. Smith's first entry only; and December 27, 2021.  See ECF No. 212; Appendix B.  The main components of the JPTO, prepared by Plaintiff, are Plaintiff's statement of his claims, Plaintiff's statement of damages, Plaintiff's list of nineteen witnesses, Plaintiff's objections to Defendants' lists of ten total witnesses, Plaintiff's designated deposition testimony, Plaintiff's list of 181 exhibits, and Plaintiff's objections to Defendants' list of sixteen total exhibits.  See generally ECF No. 212.  An additional 58.25 hours were expended during this time frame related to similar but broader tasks, including research and review in relation to Plaintiff's claimed damages, consultations among counsel regarding trial strategy, review of deposition transcripts and summaries, preparation of proposed jury instructions and a verdict sheet, preparation of a trial outline, review of prior decisions in the action, preparation of witness outlines, and preparation of division of tasks for trial on the following dates: August 4, 2021, as to Mr. Smith; August 5, 2021, as to Mr. Smith; August 13, 2021; August 19, 2021, as to Mr. Smith's first billing entry only; August 31, 2021, as to Mr. Lenoir; September 8, 2021 to September 10, 2021; November 18, 2021, as to Mr. Smith; December 1, 2021; December 2, 2021, as to Mr. Smith's second entry only; December 12, 2021; December 21, 2021; December

22, 2021, as to Mr. Smith's second entry only; and December 23, 2021, as to Mr. Lenoir and Mr. Smith's second entry only.  See ECF No. 212; Appendix B.

8.05 hours were expended in preparing the amended JPTO; the related billing entries span from January 10, 2022 to January 14, 2022 and January 18, 2022, as to Mr. Lenoir and Mr. Smith's first billing entry only.  See ECF No. 217; Appendix B.  An additional hour was expended during this time frame related to similar tasks, including preparation of the amended JPTO amongst review of the pretrial scheduling order, communications among counsel, and preparation of a certification for authentication purposes on the following dates: January 6, 2022 and January 18, 2022, as to Mr. Smith's second and third billing entries only.  See Appendix B.

In the amended JPTO, Plaintiff removed some information throughout, including Plaintiff's Exhibit 158, and added designations as to three additional depositions, as well as a response to Defendants' related objections; a response to Defendants' objection to Plaintiff's Exhibit 9; Plaintiff's Exhibit 159; and objections to City Defendants' newly added Exhibit O. See generally ECF No. 217.

An additional 46.15 hours were expended from January 25, 2022 to March 24, 2022 on witness selection, preparation of witness outlines, preparation of Plaintiff's testimony, preparation of proposed jury instructions, preparation of a verdict sheet, preparation of voir dire questions, review of the case file, research on claim elements, consultations among counsel, and general trial preparation.  See Appendix B.

For reasons nearly identical to those expressed in support of the Court's recommended reduction of hours for the motions in limine, the Court respectfully recommends a similar reduction of twenty percent, such that 135.16 hours of the requested 168.95 hours are

compensable.[22]  This action was filed in 2016, and the pre-trial and trial preparation work performed for which Plaintiff seeks an award of reasonable attorneys' fees took place in 2021 and 2022.  As discussed above, Plaintiff's counsel had already engaged in development of the case pre-litigation for the EEOC and FDNY proceedings; drafted four pleadings; opposed two motions to dismiss; engaged in significant written discovery and motion practice; taken eight depositions and defended one deposition, and engaged in significant related preparation; opposed three motions for summary judgment; and filed a motion in limine, as well as a reply to the three oppositions thereto, and opposed three motions in limine.  The Court has recommended that Plaintiff be awarded fees for most of this work.  The recommended reduction for the pre-trial preparation is therefore warranted, given Plaintiff's counsel's extensive familiarity with the underlying record, evidentiary issues and proposed witness testimony.  In addition, on the day that the revised pre-trial materials were to be filed with the Court, the parties notified the Court that they had reached a settlement, ECF No. 244, such that much of the materials on which Plaintiff's counsel expended pre-trial time was of less utility than work performed earlier in the case.

### m.       Preparing Attorneys' Fees Application

Mr. Smith and Mr. Lenoir expended 36.3 hours on this motion for attorneys' fees.  See Appendix B.  Mr. Smith largely handled this work.  See id.  This is a reasonable amount for this work, particularly given the level of detail provided in the supporting documentation.  See, e.g., M.H. v. N.Y.C. Dep't of Ed., No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *24 (S.D.N.Y. Oct. 13, 2021) (allowing 55.275 hours for summary judgment motion requesting an award of fees);

---

[22] Applying this twenty-percent reduction to the hours Mr. Smith and Mr. Lenoir worked on this aspect of the case, the reduction is 24.74 hours for Mr. Smith and 9.05 hours for Mr. Lenoir.

Luessenhop, 558 F. Supp. 2d at 271 (noting that 62 hours expended to research and prepare a motion for attorneys' fees under § 1988 was unreasonable, warranting a reduction to 30 hours); Fink v. City of N.Y., 154 F. Supp. 2d 403, 412-13 (E.D.N.Y. 2001) (reducing time spent preparing a motion for attorneys' fees from 46 hours and 36 minutes to 30 hours was warranted). The Court respectfully recommends that 36.3 hours, the full amount of time expended on this fee application, be deemed compensable.

### n.   Conducting Meetings And Court Appearances Throughout The Case

Mr. Smith and Mr. Lenoir expended 93.15 hours on appearances and meetings. See Appendix B. As between Mr. Smith and Mr. Lenoir, "[t]he billing records do not reveal the paradigmatically problematic practice in which excessive numbers of lawyers, some of whose presence is not demonstrably useful, bill for attending group meetings or auditing phone calls." C.D., 2018 WL 3769972, at *10. The Court believes that communications between and among counsel, with Plaintiff, with the Court and with Defendants' counsel helped move this case along at a reasonable clip over the COVID-19 pandemic and amidst extensive motion practice. In fact, a review of the timesheets and docket suggests that the communications likely helped reduce the overall number of hours that Plaintiff's counsel had to expend because they were able to coordinate their work closely, rather than expand it, as is Defendants' complaint. See C.D., 2018 WL 3769972, at *9 (rejecting argument that "there was excessive communication" among attorneys where most communications were around hearing dates and were "targeted to specific tasks at which latitude is properly given for strategic communication among counsel"). As seen in the discussion above, many civil rights cases are litigated with more than two primary attorneys, leading to more extensive fee applications. See, e.g., Emamian, 2022 WL 2056275, at

*13-22.  The Court therefore respectfully recommends an award of 93.15 hours for appearances and meetings.

### o.      Conducting Settlement Discussions

Throughout the case, the parties worked toward a mutually agreed upon resolution, including with the assistance of two magistrate judges and a retired state court judge as mediators.  Mr. Smith and Mr. Lenoir expended 62.75 hours on mediation and settlement efforts. See Appendix B.  The underlying tasks encompassed within their billing entries include communications and meetings with Plaintiff, opposing counsel and the mediators; preparation of written materials in relation to mediation and settlement; preparation for settlement conferences; selection of a mediator; research; and preparation for and attendance at the mediation sessions. See id.  This work was reasonably expended and was certainly fruitful work, given that the parties resolved the action via settlement.  The Court therefore respectfully recommends an award of 62.75 hours for mediation and settlement efforts.

### p.      Additional Categories of Work

Mr. Smith and Mr. Lenoir additionally seek compensation for 5.45 hours of time expended in relation to Johnson v. Mannix, 18 Civ. 2842 (KAM) (VMS); 2 hours of time for travel; 60.6 hours of time that were block billed; and 32.9 hours of time for miscellaneous tasks. See Appendix B.

The time expended on Johnson v. Mannix, 18 Civ. 2842 (KAM) (VMS), is not compensable in this case, given that that work was performed in relation to a separate case against Defendants distinct from City Defendants.

The two hours of travel time are compensable and should be awarded at half of the rate of $575 per hour.

There are 60.6 hours included in the timesheet entries, which the Court could not include in the above-described categories of work because of block billing. The Court recognizes that grouping unrelated tasks into a single billing entry may not be the best practice. This is because it makes the review of the timesheets difficult for the Court and opposing counsel. When block billed entries do not distinguish among the time spent on different tasks, some of which are compensable and some of which are not, the Court and opposing counsel cannot easily separate out compensable tasks from non-compensable ones. The way in which records are kept does not take away from the substance of the work that Plaintiff's counsel recorded in those entries. It is a housekeeping matter, albeit an important one, to distinguish among different kinds of work performed in a case. Nonetheless, the Court has carefully reviewed Plaintiff's counsels' time sheets and found that, as to all but one of the entries billed in blocks, the work described therein is compensable. The limited exception is Mr. Lenoir's April 26, 2018 billing entry claiming three hours to confer with co-counsel as to the second amended complaint and a "new related complaint," which is presumably the complaint in <u>Johnson v. Mannix</u>, 18 Civ. 2842 (KAM) (VMS); work on this matter is not compensable.[23] Because the Court's review of such entries reveals that each individual task is compensable, the Court deducts three hours for the single entry cited above and respectfully recommends that Plaintiff be awarded 57.6 hours for all of these entries.

The Court categorized 32.9 hours billed for by Mr. Smith and Mr. Lenoir as miscellaneous, as the entries do not fall within one of the categories discussed above. Although the Court considers the entries in this category to be compensable and respectfully recommends awarding attorneys' fees for such hours, <u>see</u>, <u>e.g.</u>, Appendix B (4/9/2018 "Miscellaneous" entry

---

[23] This amount is deducted solely from Mr. Lenoir's requested hours.

to "draft status letter; review of docket re new parties"; 3/1/2019 "Miscellaneous" entry to "draft

ltr to court re extend discovery; emails with all co re same"; 9/2/2021 entry for "review of prior

decisions in case (.8)"), the Court acknowledges a minimal number that are administrative, see,

e.g., Appendix B (2/17/2017 "Miscellaneous" entry to "[p]repare and serve summons on Dfnt

Lamonda [sic]; prepare and post Declaration of Service"; 4/20/2018 "Paper Discovery" entry for

"[r]esearch of telephone records produced by City through on-line research to determine names

associated with numbers called"). The efficiency of having two attorneys handle a minimal

number of administrative tasks appears to have been greater than any benefit achieved by

bringing a paralegal or associate up to speed would have been. The Court rejects City

Defendants' argument. The Court respectfully recommends an award of all 32.9 hours.

### q.    Mr. Gleason's Work

Given that Mr. Gleason occupied a more limited role as Plaintiff's counsel in this action,

as compared to that of Mr. Smith and Mr. Lenoir, his time expended is discussed separately here.

The Court respectfully recommends that Plaintiff be awarded attorneys' fees for the

following 35.25 hours expended by Mr. Gleason: 10 hours on the pre-litigation EEOC

proceeding, particularly as Mr. Gleason had the earliest relationship with Plaintiff and brought

Mr. Smith and Mr. Lenoir in to represent Plaintiff as well, see ECF No. 247-1 at 17 (describing

that, when Mr. Smith and Mr. Lenoir entered into a retainer agreement with Plaintiff, they had

already associated with Mr. Gleason and agreed with him to work together on the case), such that

his familiarity with Plaintiff and with the FDNY was likely helpful at the outset of the case; 8.5

hours spent at the mediation; 3.5 hours on the motion to quash the subpoena for his deposition

and on the written questions; 3.5 hours on the motion for attorneys' fees;[24] and 9.75 hours for appearances and meetings.  See Appendix B.

Hours expended by Mr. Gleason that the Court deems not compensable are as follows: 16 hours on pre-litigation tasks relating to the FDNY proceeding, for the same reasons discussed, supra, Sec. I.A.ii.b.; 16 hours on pre-litigation tasks relating to the EEOC proceeding and the FDNY proceeding, for the same reasons discussed, supra, Sec. I.A.ii.b.; 1.25 hours reviewing and editing the 33-page complaint as unnecessary, in view of the significant work performed by both Mr. Smith and Mr. Lenoir in preparing the complaint; 0.25 hours reviewing the first amended complaint, for the same reasons discussed, supra, Sec. I.A.ii.d.; 0.5 hours reviewing the second amended complaint as unnecessary, in view of the work performed by both Mr. Smith and Mr. Lenoir on this task; 0.5 hours reviewing the memorandum of law in relation to the motion for leave to file the third amended complaint and relatedly consulting with counsel, for the same reasons discussed, supra, Sec. I.A.ii.f.; 2.25 hours reviewing the motions to dismiss, the opposition and related documents as unnecessary, in view of the work performed by both Mr. Smith and Mr. Lenoir in preparing the opposition, particularly as Mr. Gleason appears to have reviewed the filings and documents without providing input or commentary on the opposition; 11.75 hours reviewing and updating files and researching phone records in relation to paper discovery, given that such expenditure yielded little, if any, work product; 8 hours reviewing deposition transcripts, as, again, such expenditure did not yield work product; 0.75 hours reviewing a memorandum and the docket and incorporating such information into a trial file; 2.75 hours conducting research as to the process for and cost of remediating online reputational

---

[24] In his reply affirmation in further support of the instant motion, Mr. Gleason claimed 1.5 additional hours not already claimed for reviewing and addressing City Defendant's opposition, which the Court has included in its calculation.  See ECF No. 251-6 at 5.

damage, given that such work need not have been conducted by an experienced lawyer, in relation to mediation and settlement; 11 hours for tasks categorized as miscellaneous, as, again, such expenditure yielded little, if any, work product; and 1.5 hours of block billed time to review an offer of judgment, confer with co-counsel, and review the draft JPTO.  See Appendix B.

Overall, while the Court views the work of two experienced attorneys to be reasonably expended on this case, it does not view the work of a third attorney to be reasonable, except when the work the attorney performed was unique to his experience or specialized to his expertise.

> ### B.      City Defendants' Objections
>
> #### i.      The Court Rejects City Defendants' Objection That Plaintiff's Counsel's Claimed Fees Are Facially Excessive

City Defendants contend that "Plaintiff's claim is excessive on its face compared to readily available benchmarks in case law."  ECF No. 250 at 11.  They therefore propose a 35-percent reduction in Plaintiff's counsel's claimed hours, which they consider reasonable in view of cases in which "[c]ourts will apply across-the-board percentage reductions as high as 50%-70%" where "overbilling is clear and pervasive."  ECF No. 250 at 12-13.  In support of this proposition, City Defendants cite Adorno v. Port Authority of N.Y. & N.J., 685 F. Supp. 2d 507 (S.D.N.Y. 2010),[25] as well as Lochren v. Cnty. of Suffolk, No. 1 Civ. 3925 (ARL), 2010 WL 1207418 (E.D.N.Y. Mar. 23, 2010), and Lochren v. Cnty of Suffolk, No. 1 Civ. 3925 (ARL), 2008 WL 2039458 (E.D.N.Y. May 9, 2008).  See id. at 11-12.

---

[25] City Defendants did not refer to the grant of partial reconsideration of the cited decision.  See generally Adorno v. Port Auth. of N.Y. & N.J., No. 6 Civ. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

Here, the total number of hours claimed by Plaintiff's counsel, including on the motion for attorneys' fees, is 1,479.85.  See Appendix B.  A thirty-five percent reduction of 1,479.85 hours would amount to 961.9025 hours.  The Court respectfully recommended that 1,199.22 hours be deemed compensable, which is approximately a twenty-percent reduction.  But the Court does not make its recommendation based on a rough cut of Plaintiff's counsels' hours, but on the detailed review described above.

As to Adorno, City Defendants highlight that the court deemed an expenditure of 2,385 hours excessive, warranting a ten-percent reduction, where the case involved "seven plaintiffs; four years of litigation; 11,000 pages of document discovery; 24 fact depositions; expert reports and expert depositions; numerous discovery motions and a summary judgment motion, [sic] ten in limine; and a ten-day jury trial."[26]  Id. at 11-12 (emphasis in original).  City Defendants note that, here, "there was no trial, there were only 9 depositions, less paper discovery was exchanged, and no expert discovery took place."  Id. at 12.  A ten-percent reduction of 2,385 hours in Adorno resulted in a finding of 2,146.5 hours in compensable time.  The Court is unpersuaded that, viewed in the totality, only an expenditure of less than half the hours deemed reasonable in Adorno would be reasonable here.  The Court instead has undertaken a review of the reasonableness of the hours expended by Plaintiff's counsel at each stage of the litigation above to make its recommendation.

In any event, the primary reason for the Adorno Court's "across-the board reduction in the amount of hours" on the basis of excessive and unnecessary expenditures was that the

---

[26] Although Defendants here focus on the number of hours deemed compensable, it bears noting that the court in Adorno v. Port Auth. of N.Y. and N.J., 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010), set an hourly rate of $550 for an attorney with 36 years of experience, primarily in labor and employment law.

claimed hours were expended on motions that were non-meritorious and, in some instances, even unreasonable and ill-advised.  See Adorno, 685 F. Supp. at 515 (stating 1) that the court "ruled in favor of the Port Authority on most" of the discovery disputes; 2) that, "[a]t times[,] plaintiffs' requests simply were not reasonable, and the Port Authority's objections were well-founded"; 3) that, "[a]t times[,] plaintiffs simply asked for too much"; 4) that "[t]heir spoliation motion was ill-advised" and therefore denied; and 5) that "the Port Authority's summary judgment was successful in part," resulting in the dismissal of "several of plaintiff's claims") (internal citations & quotations omitted).  The same is certainly not true in this case.  The discovery efforts and discovery motion practice were needed for Plaintiff to achieve the positive settlement, and Defendants' summary judgment motions were largely unsuccessful.

Defendants also overstate the difference between this case and Adorno as to the civil rights claims.  Although Plaintiff did not invalidate a City policy because he resolved his case short of trial, Plaintiff's counsel pursued a Monell claim and a theory of corporate responsibility under anti-discrimination statutes, which both survived summary judgment as to the City's failure to conduct sufficient investigations of retaliatory actions by employees.  ECF No. 199 at 49-51.  Had Plaintiff succeeded on these claims at trial, he could have been entitled to injunctive relief as to the City's alleged policy.

As to Lochren,[27] City Defendants highlight that the court deemed an expenditure of

---

[27] City Defendants cite two Lochren decisions from the Eastern District of New York but fail to discuss their relation.  On May 9, 2008, the Eastern District of New York issued a decision on a motion for attorneys' fees.  See generally Lochren, 2008 WL 2039458.  On September 3, 2009, the Second Circuit vacated the judgment entered and remanded for further proceedings, holding that the Eastern District of New York decision being appealed 1) properly applied Eastern District of New York rates; 2) sufficiently analyzed the case-specific factors in setting the rates; 3) did not amount to an abuse of discretion in applying a 25 percent reduction of the claimed hours due to overstaffing; 4) improperly failed to apply current rates; 5) might require further

2,589.37 hours[28] excessive, warranting a 25-percent reduction, where the case involved "16

attorneys from five different law offices (including two non-profit agencies) [who] successfully

litigated over the course of five years on behalf of six plaintiffs claiming pregnancy

discrimination, winning at trial both damages and an invalidation of the defendants' challenged

policy." ECF No. 250 at 12. City Defendants note that, here, "[n]othing but inefficiency or

bolstered hours can explain how counsel here came close to the hours spent by counsel in

Lochren." Id. A twenty-five percent reduction of 2,589.37 hours amounts to 1,942.0275 hours.

In Lochren, the court's decision to "reduce the number of overall hours by 25%" was

primarily based on its finding that "the plaintiffs did not justify the need to retain sixteen

attorneys and thirteen support staff from five different firms/agencies to represent six plaintiffs

with essentially the same claims." See Lochren, 2008 WL 2039458, at *6 (internal citations

omitted). Such numbers are simply not present in this case. In fact, this case is to the contrary.

Mr. Smith and Mr. Lenoir litigated the vast majority of the case, with certain consultations with

Mr. Gleason. As explained above, the Court has somewhat reduced the hours of Mr. Smith and

Mr. Lenoir but found that their work was largely necessary to the case. The Court significantly

reduced Mr. Gleason's hours. As the Second Circuit has observed, it is not appropriate for a

court to reduce the number of compensable hours to the extent an attorney reacts to forces

beyond the attorney's control, "particularly the conduct of opposing counsel and of the court."

---

explanation as to setting the rates in mid-range; 6) failed to include paralegal and technical
services fees in the award; and 7) failed to award fees for an attorney's preparation of reply
papers in relation to the motion for attorneys' fees. See generally Lochren v. Cnty. of Suffolk,
344 F. App'x 706 (2d Cir. 2009). The District Court then addressed the fourth, fifth, sixth and
seventh points on remand, as well as attorneys' fees expended on appeal. See generally Lochren,
2010 WL 1207418.

[28] The Court is unclear as to the source of this number.

Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005).  As noted above, the effort Plaintiff's counsel invested in the case moved the case almost to trial and achieved a very favorable settlement.  Much of the litigation effort was taken in response to Defendants' actions, such as opposing the motions for summary judgment, and seeking to compel discovery productions that were essential to raising sufficiently disputed issues of material fact in order to defeat Defendants' summary judgment motions.

The Court is thus unpersuaded that, viewed in the totality, nothing more than an expenditure of fewer than half the hours deemed reasonable in Lochren would have been reasonable.  The Court instead undertook a review of the reasonableness of the hours expended by Plaintiff's counsel at each stage of the litigation above.  The total number of hours claimed by Plaintiff's counsel, including on the motion for attorneys' fees, is 1,479.85, see Appendix B, which is far fewer than the number of hours expended in Lochren.  The Court does not agree with Defendants' implied position that, somehow, two attorneys could not over the course of about five years do the same work as 16 different attorneys.  In fact, Defendants' argument may have the analysis upside down.  The time sheets in Appendix B show that Mr. Smith and Mr. Lenoir carried out their representation in an efficient and coordinated way.  Two experienced attorneys working closely together may have been able to achieve close to what it took more than a dozen attorneys to achieve in another case.

In sum, the Court rejects City Defendants' argument that the hours claimed by Plaintiff's counsel are facially excessive such that a 35-percent reduction is warranted.

### ii.     The Court Rejects City Defendants' Objection That Plaintiff's Counsel Expended Excessive Hours On Certain Tasks

City Defendants argue that "[a] review of the time entries submitted by counsel reveals significant overbilling."  ECF No. 250 at 14.  More specifically, in support of this proposition,

58

City Defendants cite 44.4 hours expended by Mr. Smith and 24.75 hours expended by Mr. Lenoir to review files from the FDNY's BIT, 18.8 hours expended by Mr. Smith reviewing records from the Vulcan Case, and 1.5 hours expended by Mr. Smith preparing objections to the JPTO.  See id. at 14-15.  The Court is unpersuaded by City Defendants' conclusory assertions as to the cited expenditures.  Again, the Court instead undertook a review of the reasonableness of the hours expended by Plaintiff's counsel at each stage of the litigation above.  As to the only detail of the substance of the underlying work performed, that Mr. Smith's objections to the JPTO encompassed sixteen exhibits and ten witnesses proposed by Defendants, see id. at 15, the Court finds such expenditure reasonable.

### iii.   The Court Rejects City Defendants' Objection That Plaintiff's Counsel Impermissibly Engaged In Significant Block Billing

The Court has already addressed any potential concerns as to block billing.  See, supra, Sec. I.A.ii.p.  The Court will nonetheless address below the specific entries to which City Defendants have objected as impermissibly block billed to show that most of this objection lacks merit.

As to Mr. Lenoir's August 13, 2015, August 14, 2015, August 15, 2015, and August 17, 2015 billing entries, including research for, drafting of, and reviewing a complaint in a single billing entry, these entries are not block billed.  See ECF No. 250 at 16; Appendix B.

As to Mr. Smith's February 4, 2017 billing entry, each of the subtasks discussed plainly relate to opposing the pre-motion conference request filed by City Defendants, the FDNY and Mr. Nigro.  See ECF No. 250 at 16; Appendix B; see generally ECF No. 17; ECF No. 18.  On January 30, 2017, City Defendants, the FDNY and Mr. Nigro filed a pre-motion conference request, which Mr. Smith reviewed.  See ECF No. 250 at 16; Appendix B; see generally ECF No. 17.  Mr. Smith relatedly reviewed the complaint, which, of course, is necessary in addressing

59

a potential motion to dismiss.  See ECF No. 250 at 16; Appendix B.  Mr. Smith also drafted an opposition to the pre-motion conference request, which was filed on February 4, 2017, and reviewed the cited authorities.  See ECF No. 250 at 16; Appendix B; see generally ECF No. 18.

As to Mr. Lenoir's June 7, 2017 billing entry, reviewing a production, conferring with co-counsel in relation to discovery or, more specifically, electronic discovery, and conferring with opposing counsel all fall within the purview of performing paper discovery.  See ECF No. 250 at 16; Appendix B.

As to Mr. Smith's July 20, 2017 billing entry, reviewing a production and discussing with Mr. Gleason, the FDNY and with Mr. Lenoir and Plaintiff, the connection between Mr. Kearney and Merit Matters both relate to the paper discovery and investigative process.  See ECF No. 250 at 16; Appendix B.

As to Mr. Lenoir's July 20, 2017 billing entry, review of a production and discussion with Mr. Smith and Plaintiff, again, both relate to the paper discovery process.  See ECF No. 250 at 16; Appendix B.

As to Mr. Lenoir's August 24, 2017 billing entry, reviewing transcripts from the Vulcan Case, summarizing their substance, then conferring with co-counsel relate to the same task and do not amount to block billing.  See ECF No. 250 at 16; Appendix B.

As to Mr. Smith's August 6, 2018 billing entry, the three cited subtasks, which are drafting the motion to quash the subpoena as to Mr. Gleason, revising Mr. Gleason's declaration, and conducting research on deposing a client's current attorney, all were performed in support of the motion to quash the subpoena and are therefore not block billed.  See ECF No. 250 at 17; Appendix B.

As to Mr. Lenoir's April 25, 2019 billing entry, preparing for, participating in, and reviewing, presumably the notes from, Mr. Mannix's deposition all pertain to the same task and do not constitute block billing.  See ECF No. 250 at 17; Appendix B.

As to Mr. Smith's January 14, 2020 billing entry, the entire entry pertains to the preparation of the opposition to the motions for summary judgment, with the research and review conducted in support of preparing the opposition, and is therefore not block billed.  See ECF No. 250 at 17; Appendix B.

As to Mr. Smith's January 16, 2020 billing entry, the entire entry pertains to the preparation of the opposition to the motions for summary judgment, with the review of the record, the research on the conspiracy claims, and the review of the motions served conducted in support of preparing the opposition and is therefore not block billed.  See ECF No. 250 at 17; Appendix B.

As to Mr. Smith's January 24, 2022 billing entry, each of the listed subtasks, namely preparing the motion in limine, reviewing the record of the Vulcan Case, conducting research relating to judicial notice, and drafting the outline of the motion, all relate to preparation of the motion in limine and are therefore not block billed.  See ECF No. 250 at 18; Appendix B.

The Court thus disagrees with most of City Defendants' block-billing complaints, but it agrees with a few of City Defendants' examples.  As to Mr. Gleason's May 17, 2015 and May 18, 2015 billing entries, the Court has already found these entries to be non-compensable on other grounds and need not address the block billing objection here.  As to Mr. Lenoir's September 18, 2017 billing entry, Mr. Smith's April 28, 2018 billing entry, Mr. Smith's August 22, 2018 billing entry, Mr. Lenoir's August 12, 2021 billing entry, and Mr. Gleason's August 12,

2021 billing entry, the Court agrees that these entries were block billed and has addressed them above.  See ECF No. 250 at 15-18; Appendix B, see, supra, Sec. I.A.ii.q.

### iv.    The Court Rejects City Defendants' Objection That Plaintiff's Counsel's Billing Entries Are Impermissibly Vague

City Defendants claim that "[t]he fee submission also contains numerous hours of time with descriptions too vague to identify the issue or motion that was being worked on."  ECF No. 250 at 19.

As to Mr. Smith, they assert that his September 12, 2017, October 16, 2017, and March 6, 2018 billing entries for review of productions and his June 10, 2017, June 11, 2017, and June 12, 2017 billing entries for drafting and revising oppositions are too vague to permit review.  See ECF No. 250 at 19.  With respect to the former, that Mr. Smith does not identify the specific production being reviewed does not preclude recovery of attorneys' fees, particularly as the Court grouped the paper discovery efforts above and determined a reasonable number of hours for the totality of the paper discovery efforts.  See, supra, Sec. I.A.ii.h.  With respect to the latter, a review of the docket in this case plainly reveals that Mr. Smith was preparing the opposition to the motions to dismiss.  The Court therefore finds these objections unpersuasive.

As to Mr. Gleason, City Defendants object to the May 19, 2015 billing entry for reviewing emails regarding Plaintiff and conferring with Plaintiff and the May 25, 2015 billing entry for meeting with Plaintiff.  See id.  City Defendants also argue that, if these entries relate to the FDNY investigation, they are not compensable.  See id. at 19-20.  The Court has already found these entries to be non-compensable on other grounds and need not address the vagueness objection here.  See, supra, Sec. I.A.ii.q.

v.      **The Court Rejects City Defendants' Objection That The Case Was Overstaffed**

City Defendants contend that, "[i]nstead of judiciously staffing this case, counsel engaged in duplicative efforts on several occasions." Id. at 20.  In support of such contention, they refer to the July 21, 2017, September 5, 2018, January 9, 2019, September 4, 2019, April 28, 2021, and January 4, 2022 conferences with the Court attended and billed by Mr. Smith and Mr. Lenoir.  See id. at 21.  City Defendants argue that the attendance of only one attorney was necessary for these conferences.  See id.  The Court does not view the attendance of two attorneys at these conferences as duplicative or superfluous.  See, e.g., C.D., 2018 WL 3769972, at *9 (stating that "[t]here is of course nothing inherently wrong with staffing multiple attorneys on a case, a practice that is common to, inter alia, civil rights litigation").  If Mr. Smith and Mr. Lenoir did not both attend these conferences, one would certainly have to expend time apprising the other of matters discussed at the conferences.  The more general criticism of overstaffing is not merited in this case; the efficiencies achieved in this case have already been discussed above.

vi.      **The Court Rejects City Defendants' Objection That Plaintiff's Counsel's Billing Entries Reveal Inconsistencies**

The Court finds this objection particularly meritless.  The degree of exactitude that Defendants argue for in billing entries is not required when a simple review of any given entry in the context of co-counsels' timesheets and the docket filings makes the work performed obvious.

The first purported inconsistency cited by City Defendants is that, on January 12, 2016, Mr. Smith billed for a meeting lasting one hour, while Mr. Lenoir and Mr. Gleason billed for a meeting lasting 1.5 hours.  See id. at 22; Appendix B.  Mr. Lenoir and Mr. Gleason state that they met with Plaintiff either before or after the meeting including Mr. Smith.  See ECF No. 251-5 at 3; ECF No. 251-6 at 3.

The next alleged inconsistency complained of is a May 14, 2016 meeting for which Mr. Lenoir and Mr. Gleason billed 2.5 hours and for which Mr. Smith billed only 1.3 hours.  See ECF No. 250 at 22.  Again, Mr. Lenoir and Mr. Gleason state that they met with Plaintiff either before or after the meeting including Mr. Smith.  See ECF No. 251-5 at 3-4; ECF No. 251-6 at 3-4.

The third cited inconsistency is the April 29, 2017 billing entries of Mr. Smith and Mr. Lenoir; Mr. Smith billed 2.5 hours for meeting with Plaintiff and Mr. Lenoir in relation to discovery and 0.7 hours for reviewing discovery demands and the file, and Mr. Lenoir billed 3.5 hours for meeting with Plaintiff and Mr. Smith in relation to discovery.  See ECF No. 250 at 23; Appendix B.  Mr. Lenoir states that he either separately met with Plaintiff before or after Mr. Smith joined the meeting or expended additional time preparing discovery responses, or both.  See ECF No. 251-5 at 3-4.

The fourth cited inconsistency is that Mr. Smith billed for an October 4, 2017 meeting with Mr. Lenoir[29] and Mr. Gleason lasting 1.8 hours but that Mr. Lenoir billed for the same meeting on October 3, 2017, lasting only 0.5 hours.  See ECF No. 250 at 23; Appendix B.  Mr. Lenoir states that, as to the number of hours, he may have only spent 0.5 hours at the meeting, which is certainly plausible given that Mr. Smith reports that Mr. Gleason was also in attendance at the meeting and could have met with only Mr. Gleason for the additional time, and that, as to the date, he may have inadvertently entered the incorrect date in his timekeeping software.  See ECF No. 251-5 at 4.

---

[29] City Defendants appear to have inadvertently listed Mr. Smith's name twice, instead of listing Mr. Smith's name and Mr. Lenoir's name each once.  See ECF No. 250 at 23.

The fifth cited inconsistency is Mr. Smith's January 26, 2019 entry for 3.5 hours expended in a meeting with Mr. Lenoir and Plaintiff and Mr. Lenoir's apparently inconsistent entry of the same date for the same task for four hours.  See ECF No. 250 at 23; Appendix B. Mr. Lenoir states that the purported discrepancy is attributable to the inclusion of both preparation and the meeting in his time entry.  See ECF No. 251-5 at 4.

The sixth cited inconsistency is Mr. Smith's billing entry for a November 11, 2019 meeting with Mr. Gleason and Mr. Lenoir lasting two hours and Mr. Gleason's entry of the same date for the same task for only 1.25 hours.  See ECF No. 250 at 23; Appendix B.  Mr. Gleason states that he attended this meeting as indicated in his billing entry.  See ECF No. 251-6 at 4. Perhaps Mr. Gleason only attended a portion of the meeting, which Mr. Smith reports also included Mr. Lenoir, see Appendix B, which the Court finds to be a more reasonable explanation of the purported inconsistency, particularly in view of the explanations referenced above regarding attendance for only portions of meetings, than that Mr. Smith fraudulently billed his time.

The seventh cited inconsistency is that Mr. Smith billed for a telephone call with Mr. Lenoir on May 19, 2021 lasting 0.2 hours, whereas Mr. Lenoir billed for the same telephone call for 0.5 hours.[30]  See ECF No. 250 at 24; Appendix B.  Mr. Lenoir states that he listed multiple tasks and the associated time expended in his May 29, 2021 billing entry and that the portion of his billing entry for the telephone call may have also included drafting and review of a settlement demand letter.  See ECF No. 251-5 at 4.

---

[30] City Defendants state that Mr. Lenoir billed for 0.5 minutes, apparently inadvertently, and likely intended to state 0.5 hours.  See ECF No. 250 at 24.

The final cited inconsistency is that Mr. Smith's August 12, 2021 billing entry is for 0.8 hours for a telephone call with Mr. Gleason and Mr. Lenoir, while Mr. Gleason's billing entry and Mr. Lenoir's billing entry for the same date accounted for the same telephone call and other tasks and lasted 1.5 hours each.  See ECF No. 250 at 24; Appendix B.  The Court fails to see how this is an inconsistency.

None of these alleged issues merit reduction in Plaintiff's counsels' compensable hours.

> **vii.    The Court Rejects City Defendants' Objection That Plaintiff's Counsel May Not Have Recorded Their Time Contemporaneously.**

City Defendants contend that, "[a]lthough counsel maintain that the records they submitted were created 'contemporaneously,' the accuracy of that contention is doubtful given plain errors seen in the dates that certain meetings allegedly happened between counsel, and discrepancies in the hours of some of these alleged meetings between counsel."  See ECF No. 250 at 31.  In support of this argument, City Defendants cite the October 3, 2017 and October 4, 2017 billing entries, their argument as to which was already addressed and disposed of above. See id.  City Defendants also cite a site visit for which Mr. Gleason and Mr. Lenoir billed on October 12, 2017 but for which Mr. Smith billed on October 13, 2017.  See id. at 32; Appendix B.  The Court finds that City Defendants' argument strains credulity.  One misdated billing entry is not a sufficient basis for the Court to question the contemporaneous nature of Plaintiff's counsel's billing entries.[31]

Mr. Smith and Mr. Lenoir stated in their declarations to the Court that their billing entries were regularly and contemporaneously made.  ECF No. 247-1 at 22 (stating, in a declaration to

_____

[31] City Defendants' counsels' willingness to impugn the integrity of Plaintiffs' counsel by suggesting that they falsified their time entries or made misrepresentations to the Court is not appreciated by the Court, as there is no evidence to support the allegations.

66

the Court, that "[t]hose records and entries are regularly made, kept and prepared by [Mr. Smith]" and that, "[a]s a regular part of [his] practice, [he] personally record[s] at the time or later that same day the time [he has] spent working for each of [his] clients, and [he] then input[s] that information into the 'Time 59' computer software database"); ECF No. 247-11 at 25 (stating, in a declaration to the Court, that Mr. Lenoir "documented [his] billable time spent on this matter in fifteen-minute increments through contemporaneous entries on the legal billing software application known as Time59"). The Court accepts these statements by experienced counsel who are in good standing before the Court and who have conducted this litigation with an appropriate level of diligence and skill on behalf of their client.

City Defendants cite Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144 (2d Cir. 2014), in which the Second Circuit purportedly "remand[ed the case] to [the] district court for further fact-finding although [the] attorney 'told the district court that she tracked her time contemporaneously,'" for the proposition that "[c]onclusory assertions that time records are 'contemporaneous' is [sic] not sufficient absent evidence about when they were actually created and what information was actually recorded at that time." ECF No. 250 at 30-31. City Defendants misread Lopalo. The Second Circuit recited the familiar rule that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done"; the limited exception is fees sought for contemporaneously documented time physically before the district court. Lopalo, 767 F.3d at 148 (internal citations & quotations omitted). The Second Circuit found that the district court's finding that Ms. Mishkin failed to maintain contemporaneous time records was clearly erroneous, given that other counsel reported that Ms. Mishkin tracked her time expenditures

through time-stamping then reviewed the records afterwards, because an attorney's billing entries are satisfactory so long as they are based on contemporaneous records, even if the billing entries themselves were not made contemporaneously.  See id. at 149 (internal citations omitted). The Second Circuit held that it "was clear error to deny [counsel] any fee on the basis of her failure to keep contemporaneous time records without further inquiry into her timekeeping practices" and remanded the matter to the district court to make such finding and for a fee determination, if appropriate.  Id. at 149-51.  Whether a particular attorney's representation as to the contemporaneousness of billing entries is sufficient to satisfy the Second Circuit's dictates on this issue was simply not before the Lopalo Court.  There is no reason to doubt Plaintiff's counsel's representations to this Court in this case.

> ### viii.   The Court Rejects City Defendants' Objection That Plaintiff's Counsel Needed To Use A Paralegal On The Case

City Defendants argue that "[P]laintiff's motion shows a number of hours billed for tasks that should have been performed by a paralegal," such as Mr. Lenoir's preparation and service of a summons and preparation and filing of a declaration of service,[32] "completing initial drafts of letters, completing form documents, or any document collection or review," but not billed at a "paralegal rate."  ECF No. 250 at 24; Appendix B.  The Court's review of Plaintiff's counsel's billing entries did not reveal the performance of significant administrative or quasi-legal work, as discussed above in relation to this issue.  The Court will not propose that the use of a nonexistent paralegal would have been required.

---

[32] City Defendants misquote this entry and fail to include the work performed in relation to the declaration of service.  See ECF No. 250 at 24; Appendix B.

    **ix.**    **The Court Rejects In Part And Accepts In Part City Defendants' Objection That Plaintiff Claims Entitlement To Attorneys' Fees For Work That Is Not Compensable By The City Defendants**

City Defendants claim 1) that billing entries related solely to Mr. Mannix, Mr. Kearney and Mr. Lemonda, as well as those that are undifferentiated, are not recoverable, in whole or in part, from City Defendants; 2) that Plaintiff may not recover attorneys' fees for work performed in support of unsuccessful claims; and 3) that Plaintiff may not recover attorneys' fees for work performed on the FDNY investigation.  See generally ECF No. 250.

    **a.**    **The Court Rejects City Defendants' Objection That Plaintiff's Counsel Failed To Distinguish Their Billing Entries Pertaining to City Defendants And Those Pertaining to Mr. Mannix, Mr. Kearney And Mr. Lemonda**

City Defendants argue that "Plaintiff's counsel made no attempt to prune from their fee claim work relating solely to claims against the separately settling non-City Defendants, defendants Paul Mannix, Jake Lamonda [sic], and Joseph Kearney."  ECF No. 24-25.  In support of this argument, they cite 1) billing entries that purportedly solely relate to Mr. Mannix, namely Mr. Smith's August 28, 2018, April 24, 2019, and April 25, 2019 entries and Mr. Lenoir's May 12, 2018 and April 25, 2019 entries; 2) billing entries that purportedly solely relate to Mr. Lemonda, namely Mr. Lenoir's February 17, 2017, March 7, 2017, October 19, 2017, and February 6, 2019 entries; and 3) billing entries that purportedly solely relate to Mr. Kearney, namely Mr. Smith's August 28, 2018, April 24, 2019, and April 25, 2019 entries and Mr. Lenoir's April 3, 2019 entry.  See ECF No. 250 at 25.

As to Mr. Mannix, the Court cannot locate Mr. Smith's August 28, 2018 billing entry as to which City Defendants complain.  See Appendix B.  Mr. Smith's April 24, 2019 and April 25, 2019 billing entries pertain to work preparing for and taking the deposition of Mr. Mannix, work that was necessary for preparing Plaintiff's case against the City, irrespective of Mr. Mannix's

status as a party.  See id.  Mr. Lenoir's May 12, 2018 billing entry for drafting, editing and reviewing a complaint against Mr. Mannix and others is addressed and accounted for above.  See id.; supra, Sec. I.A.ii.f., Sec. I.A.ii.p.  Mr. Lenoir's April 25, 2019 billing entry for preparation for, participation, and review of Mr. Mannix's deposition is compensable for the same reason that Mr. Smith's related work is compensable.  See Appendix B.

As to Mr. Lemonda, Mr. Lenoir's February 17, 2017 billing entry related to service on Mr. Lemonda is addressed above.  See id.; supra, Sec. I.A.ii.p.  Mr. Lenoir's March 7, 2017 billing entry related to Mr. Lemonda's extension request and Plaintiff's initial disclosures is also addressed above.  See id.; supra, Sec. I.A.ii.p.  Mr. Lenoir's October 19, 2017 billing entry for the review of Mr. Lemonda's production of phone records and a discussion with co-counsel as to discovery is compensable, as this work was necessary to prepare Plaintiff's case against the City, irrespective of Mr. Lemonda's status as a party.  See id.  Mr. Lenoir's February 6, 2019 billing entry for attending Mr. Lemonda's deposition is compensable for the same reason.  See id.

As to Mr. Kearney, the Court cannot locate Mr. Smith's August 28, 2018 billing entry as to which City Defendants complain.  See Appendix B.  Mr. Smith's April 24, 2019 and April 25, 2019 entries did not pertain to Mr. Kearney.  See id.  Mr. Lenoir's April 3, 2019 billing entry for preparation for Mr. Kearney's deposition and review of discovery is compensable, as this work was necessary for preparing Plaintiff's case against the City, irrespective of Mr. Kearney's status as a party.  See id.

City Defendants similarly argue that many billing entries are undifferentiated as to City Defendants and other Defendants, specifically referring to discovery; motions, such as the motions for summary judgment and motions in limine; and trial preparation.  See ECF No. 250 at 25-26.  In addressing a related point at the January 30, 2023 conference before the Court, City

Defendants clarified their position that the billing entries related solely to Mr. Kearney, Mr. Mannix and Mr. Lemonda should not be compensated but that the remaining undifferentiated, intertwined billing entries should be compensated, as appropriate.

> **b.   The Court Rejects City Defendants' Objection That Plaintiff's Recoverable Hours Should Be Significantly Reduced For Unsuccessful Claims**

City Defendants argue that Plaintiff claims fees for unsuccessful claims such that Plaintiff's hours should be cut significantly.  ECF No. 250 at 20.[33]  Although some of Plaintiff's claims were dismissed, see ECF No. 82 (dismissing Defendant Nigro, Section 1981 claims), these issues were a minor aspect of Plaintiff's briefing efforts.  This minimal loss does not justify any significant reduction in the hours claimed by Plaintiff, given the integrated nature of the claims and factual record.

Other than the minimal drafting of the pleadings and briefing associated with the unsuccessful claims, Plaintiff's counsel's work—research, discovery, motion practice and trial preparation—cannot be dissected to separate effort associated with Commissioner Nigro and the Section 1981 claim.  See Appendix B.  Plaintiff's counsel certainly achieved for Plaintiff the primary goal of the litigation—the right to try his claims that he had suffered unlawful retaliation and discrimination in his employment such that he was entitled to compensatory damages for his

---

[33] In arguing for a reduction in fees for unsuccessful claims, City Defendants make the following statement: "If plaintiff's counsel are as experienced in the field of federal constitutional law as they claim to be for the purpose of the extremely high hourly rates sought here, they would surely be aware that in a suit against an individual for actions taken under color of state law, Section 1983 is the exclusive remedy for violations of rights guaranteed under 42 U.S.C. § 1981."  Such a statement does not show the proper level of respect among counsel.  As discussed above, supra, Plaintiff's counsel are litigators with significant employment law experience justifying the rates recommended above.  The Court previously admonished Plaintiff's counsel for making unsubstantiated comments questioning the professional character of Defendants' counsel and others.  8/17/2018 Order.  Counsel should know that the Court does not appreciate such submissions, and they should avoid them in the future.

emotional distress and reputational damages, and, as an alternative, a meaningful settlement.
Plaintiff's counsel achieved for Plaintiff from just City Defendants a settlement of $400,000
immediately prior to trial after more than five years of litigation (albeit some of those years
affected by the COVID-19 pandemic). Plaintiff's case might have been difficult to prove at trial,
given how much of it relied on credibility assessments, yet Plaintiff's counsel assembled
sufficient evidence to survive summary judgment motion practice, to put on their client's best
case at trial to be supported by documentary evidence as well as testimony, and to convince
Defendants to settle just on the eve of trial. The Court focuses on the overall relief obtained
under these circumstances that justifies the award of fees recommended, rather than focusing on
the minimal losses suffered on claims that, while offered via the broad sketch of possibly viable
legal theories included in the complaint, did not adversely affect the relief available to Plaintiff
when they were removed from the action by the Court. See Holick, 48 F.4th at 106 ("Where a
plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."
(quoting Hensley, 461 U.S. at 435)).

> **c.    The Court Accepts City Defendants' Objection That Work On The FDNY Investigation Is Not Compensable**

City Defendants argue that "Mr. Gleason inappropriately seeks fees for hours spent
working on and representing the plaintiff in the underlying investigation into this matter by
BIT." ECF No. 250 at 29. The Court agrees and, as discussed above, see, supra, Sec. I.A.ii.b.,
has removed any such hours expended from its calculation of the recommended award.

## II.    COSTS

The Court addresses below Plaintiff's entitlement to the costs claimed in his motion and
City Defendant's related objections.

Plaintiff's claimed costs are as follows:

- $400 for the filing fee in this action and $400 for the filing fee in <u>Johnson v. Mannix</u>, 18 Civ. 2842 (KAM) (VMS),

- $253.75 for service of process on Mr. Mannix,

- $301.45 for service of process on Mr. McCarthy,

- $126.50 for attempted service of process on Mr. Kearney,[34]

- $148.75 for service of process on Mr. Kearney,

- $252.72 for a transcription of a July 25, 2018 hearing,[35]

- $1,146 for Mr. Curneen's deposition transcript,

- $798.25 for Mr. Lemonda's deposition transcript,

- $954.25 for Mr. Gala's deposition transcript,

- $557.75 for Mr. Gribbon's deposition transcript,

- $382.25 for Ms. Aiken's deposition transcript,

- $427.75 for Mr. McCarthy's deposition transcript,

- $638.25 for Mr. Kearney's deposition transcript,

- $960.75 for Mr. Mannix's deposition transcript,

- $156.78 for transcription of a May 7, 2019 proceeding,

- $362.50 for Plaintiff's proportion of the costs of the first mediation session, and

---

[34] Plaintiff appears to have inadvertently listed the cost of attempted service on Mr. Kearney as $148.75, <u>see</u> ECF No. 247-9 at 1, whereas the actual cost was $126.50, <u>see</u> ECF No. 247-9 at 7.

[35] Plaintiff appears to have inadvertently mislabeled the date of the hearing as August 10, 2018, <u>see</u> ECF No. 247-9 at 1, which is actually the date of the invoice for the transcript, <u>see</u> ECF No. 247-9 at 3.

- $1,062.50 for Plaintiff's proportion of the costs for a second mediation session.

See generally ECF No. 247-9.

City Defendants object to Plaintiff's claimed costs for service of process on Mr. Mannix and Mr. Kearney, as well as for the deposition transcripts for Mr. Lemonda, Mr. Kearney and Mr. Mannix.  See ECF No. 250 at 37.  As to the former, the Court agrees that City Defendants are not liable for the costs expended in serving Mr. Mannix and Mr. Kearney with process, given that, just as with the third amended complaint, these costs are clearly and distinctly separable from Plaintiff's claims against City Defendants.[36]  For the same reason, although City Defendants have not objected to Plaintiff's claim for the cost of the filing fee in Johnson v. Mannix, 18 Civ. 2842 (KAM) (VMS), the Court finds that this cost is not compensable by City Defendants.  As to the latter, just as the Court found attorneys' fees for certain work performed to be compensable as necessary for preparing Plaintiff's case against the City, irrespective of certain Defendants' statuses as parties, the same is true with respect to these costs.

The Court respectfully recommends an award of costs to Plaintiff in the amount of $8,401.20.

## III.   CONCLUSIONS

The Court respectfully recommends that the motion be granted in part and denied in part, and that Plaintiff be awarded as against City Defendants $676,740.75 in attorneys' fees, arising

---

[36] Although Plaintiff did generally ask the Court to "reject each and every one of the City's objections" and listed the full amount of his claimed costs in the summary of fees in his reply, Plaintiff did not specifically respond to City Defendants' objection on this basis in his reply.  See ECF No. 251 at 13-14.  The Court notes, however, that the costs associated with serving a party with process and with serving a non-party with a subpoena are the same such that, in certain circumstances, an award of these costs would be warranted if a party had argued for an equivalency of costs.

74

from 778.29 compensable hours for Mr. Smith at a rate of $575 per hour ($447,516.75); 383.68 compensable hours for Mr. Lenoir at the rate of $550 per hour ($211,024.00); two compensable travel hours for Mr. Smith at the rate of $287.50 per hour ($575.00); and 35.25 compensable hours for Mr. Gleason at the rate of $500 per hour ($17,625.00).  The Court respectfully recommends that Plaintiff also be awarded $8,401.20 in costs.  The total recommended award is $685,141.95.

## IV.  OBJECTIONS

This report and recommendation will be posted on the docket.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
        February 8, 2023

*Vera M. Scanlon*

_____
            VERA M. SCANLON
        United States Magistrate Judge

# APPENDIX A

**SUMMARY OF HOURS FOR MR. SMITH**

| Category | Claimed Hours | Awarded Hours |
|---|---|---|
| Pre-Litigation (EEOC) | 1.7 | 1.36 |
| Pre-Litigation (Combined) | 1.7 | 0 |
| First Complaint | 19.2 | 13.44 |
| First Amended Complaint | 2.4 | 0 |
| Second Amended Complaint | 8.7 | 4.35 |
| Third Amended Complaint | 41.1 | 0 |
| Motions to Dismiss | 37.8 | 18.9 |
| Paper Discovery | 149.7 | 149.7 |
| Depositions | 88 | 71.55 |
| Motions for Summary Judgment | 223.9 | 201.51 |
| Motions in Limine | 62.9 | 50.32 |
| Pre-Trial and Trial | 123.7 | 98.96 |
| Mediation and Settlement | 39 | 39 |
| Motion for Attorneys' Fees | 30.3 | 30.3 |
| Appearances and Meetings | 49.4 | 49.4 |
| 18 Civ. 2842 | 3.2 | 0 |
| Travel | 2 | 2 |
| Miscellaneous | 23.9 | 23.9 |
| Block | 25.6 | 25.6 |

**SUMMARY OF HOURS FOR MR. LENOIR**

| Category | Claimed Hours | Awarded Hours |
|---|---|---|
| Pre-Litigation (EEOC) | 66.45 | 53.16 |
| Pre-Litigation (Combined) | 1.45 | 0 |
| First Complaint | 17.75 | 12.42 |
| First Amended Complaint | 2.5 | 0 |
| Second Amended Complaint | 2 | 1 |
| Third Amended Complaint | 3.25 | 0 |
| Motions to Dismiss | 7 | 3.5 |
| Paper Discovery | 56 | 56 |
| Depositions | 51.75 | 51.75 |
| Motions for Summary Judgment | 33.5 | 30.15 |
| Motions in Limine | 31.25 | 25 |
| Pre-Trial and Trial | 45.25 | 36.2 |
| Mediation and Settlement | 23.75 | 23.75 |
| Motion for Attorneys' Fees | 6 | 6 |
| Appearances and Meetings | 43.75 | 43.75 |
| 18 Civ. 2842 | 2.25 | 0 |
| Miscellaneous | 9 | 9 |
| Block | 35 | 32 |

**SUMMARY OF HOURS FOR MR. GLEASON**

| Category | Claimed Hours | Awarded Hours |
|---|---|---|
| Pre-Litigation (EEOC) | 10 | 10 |
| Pre-Litigation (FDNY) | 16 | 0 |
| Pre-Litigation (Combined) | 16 | 0 |
| First Complaint | 1.25 | 0 |
| First Amended Complaint | 0.25 | 0 |
| Second Amended Complaint | 0.5 | 0 |
| Third Amended Complaint | 0.5 | 0 |
| Motions to Dismiss | 2.25 | 0 |
| Paper Discovery | 15.25 | 3.5 |
| Depositions | 8 | 0 |
| Pre-Trial and Trial | 0.75 | 0 |
| Mediation and Settlement | 11.25 | 8.5 |
| Motion for Attorneys' Fees | 3.5[1] | 3.5 |
| Appearances and Meetings | 9.75 | 9.75 |
| Miscellaneous | 11 | 0 |
| Block | 1.5 | 0 |

---

[1] Mr. Gleason requested an award of 1.5 hours for reviewing and addressing City Defendants' opposition to the motion addressed herein.  See ECF No. 251-6 at 5.  While no billing entry was submitted for review, these 1.5 hours are included in the 3.5 claimed hours here.

# APPENDIX B

**MR. SMITH'S BILLING ENTRIES**

| Category | Date | Attorney | Description | Hours |
|---|---|---|---|---|
| Pre-Litigation (EEOC) | 5/14/2016 | Smith | Meeting wit clt and PG and JL and revising draft response to FDNY position statement | 1.3 |
| Pre-Litigation (EEOC) | 5/16/2016 | Smith | review of and revise response to position statement response | 0.4 |
| Pre-Litigation (Combined) | 1/12/2016 | Smith | Meeting with JL, PG and client re status and fee issues | 1 |
| Pre-Litigation (Combined) | 2/3/2016 | Smith | review and revise charge and email comments to JL | 0.7 |
| First Complaint | 10/11/2016 | Smith | review of eeoc filings and revise draft complaint' tc client re recent acts; tc PG re same; conf with JL re draft of complaint | 3.5 |
| First Complaint | 10/19/2016 | Smith | review of and revise draft complaint and review of docket sheet and entries therein in Vulcan litigation for purposes of complaint; review of privacy rules and section 1981 elements | 4.5 |
| First Complaint | 11/1/2016 | Smith | revising and drafting complaint; research on Monell issue and on scope of remedial orders for contempt for complaint | 4.5 |
| First Complaint | 11/11/2016 | Smith | revising complaint | 2.2 |
| First Complaint | 11/14/2016 | Smith | revising complaint | 2.2 |
| First Complaint | 11/17/2016 | Smith | further revisions to complaint | 1.5 |
| First Complaint | 11/18/2016 | Smith | revised complaint; prep civil cover and summons | 0.8 |
| First Amended Complaint | 2/28/2017 | Smith | revising and drafting of amended complaint | 2.4 |
| Second Amended Complaint | 3/30/2018 | Smith | meeting with clt and PG and JL and review of record for same re new claims and status | 2.5 |

| Second Amended Complaint | 4/10/2018 | Smith | research on claims under Section 1981 and 1985(3) | 2.5 |
|---|---|---|---|---|
| Second Amended Complaint | 4/13/2018 | Smith | research on 1981 and 1985(3) | 1.5 |
| Second Amended Complaint | 4/20/2018 | Smith | review of Section 1985(3) issues | 2.2 |
| Third Amended Complaint | 9/28/2017 | Smith | research on merit matters and possible claims against Mannix and Kearney | 1.5 |
| Third Amended Complaint | 5/9/2018 | Smith | reading tr. from BITS for new pleading | 1.8 |
| Third Amended Complaint | 5/12/2018 | Smith | drafting compaint against Mannix et al | 5.5 |
| Third Amended Complaint | 9/5/2018 | Smith | drafting third amended complaint and related review of discovery record (4.5) | 4.5 |
| Third Amended Complaint | 9/6/2018 | Smith | drafting memo of law in support of motion to amend (4.3) | 4.3 |
| Third Amended Complaint | 9/6/2018 | Smith | revising and drafting third amended complaint (3.8) | 3.8 |
| Third Amended Complaint | 9/7/2018 | Smith | revising memo and 3rd amd complaint; review of consolidation standard; prepare notice of motion | 3.5 |
| Third Amended Complaint | 10/1/2018 | Smith | review of opp on motion to amend; review of pleadings and docket; review of decisions cited re state action | 2.2 |
| Third Amended Complaint | 10/2/2018 | Smith | review of caselaw on opposition to motion to amend and begin formulating reply | 3.5 |
| Third Amended Complaint | 10/4/2018 | Smith | drafting reply memo on motion to amemd | 4.5 |

| Third Amended Complaint | 10/24/2018 | Smith | review of decision by Judge Matsumoto granting leave to amend | 0.5 |
|---|---|---|---|---|
| Third Amended Complaint | 10/31/2018 | Smith | review of discovery record for purposes of Third amended Complaint; review of EUOs for same reason; review of memos on law and arguments on motion to amend; drafting and revising amendments to draft TA | 5.5 |
| Motions to Dismiss | 2/1/2017 | Smith | review of letter to court re motion to dismiss; review of authorities cited; email to opp re address for Lamonda | 1.2 |
| Motions to Dismiss | 2/4/2017 | Smith | review of complaint; ltr from defendants; draft lt. to ct re pop to motion to dismiss; review of authorities cited | 2.8 |
| Motions to Dismiss | 3/13/2017 | Smith | drafting position statement on stay request by defendants | 0.5 |
| Motions to Dismiss | 6/7/2017 | Smith | review of memos of law in support of motions to dismiss and cited cases | 4.5 |
| Motions to Dismiss | 6/8/2017 | Smith | review of memos of law and law cited on dismissal motion | 5.3 |
| Motions to Dismiss | 6/9/2017 | Smith | review of docket entries in Vulcan litigation for motion to dismiss | 3.5 |
| Motions to Dismiss | 6/10/2017 | Smith | drafting opp to motions | 6.8 |
| Motions to Dismiss | 6/11/2017 | Smith | drafting opp to motions | 8.5 |
| Motions to Dismiss | 6/12/2017 | Smith | revising opp brief (3.5) | 3.5 |
| Motions to Dismiss | 4/2/2018 | Smith | review of decision; tc JL re same and plan for moving forward | 1.2 |
| Paper Discovery | 3/17/2017 | Smith | prep demands; review of ltr from counsel for city re mole; tc JL re demands | 1.5 |

| Paper Discovery | 3/21/2017 | Smith | review of ltr re expedited discovery; tc co-co re same; draft ltr in response | 0.6 |
|---|---|---|---|---|
| Paper Discovery | 4/29/2017 | Smith | review of same and file for discovery repsonses | 0.7 |
| Paper Discovery | 5/1/2017 | Smith | drafting and preparing objections and responses to city discovery demands | 2.2 |
| Paper Discovery | 5/11/2017 | Smith | review of BITS investigation filed | 3.5 |
| Paper Discovery | 5/12/2017 | Smith | review of BITS investigation ebts | 4.5 |
| Paper Discovery | 5/13/2017 | Smith | review of BITS investigtaive ebts | 5.5 |
| Paper Discovery | 5/18/2017 | Smith | review of caselaw cited on confidentiality and law enforcement privilege and drafting ltr to court re opp to confidentilaity of BIT file and schedule; related review of BIT file produced by the defendants | 3.8 |
| Paper Discovery | 6/12/2017 | Smith | draft ltr to court re confidentiality of BITs file | 0.3 |
| Paper Discovery | 7/10/2017 | Smith | email opp co re status of e-disccovery | 0.2 |
| Paper Discovery | 7/20/2017 | Smith | review of production by Lemonda; tc PG re FDNY; tc JL and cleint re Joseph Kearney-Merit Matters connection. | 3.5 |
| Paper Discovery | 7/21/2017 | Smith | prep for conf and review of recent productions and outstanding demands | 1.2 |
| Paper Discovery | 8/2/2017 | Smith | review of prodcution by NYC | 1.3 |
| Paper Discovery | 8/4/2017 | Smith | review of lemonda demands and drafting responses to same | 2.7 |
| Paper Discovery | 8/4/2017 | Smith | email opp co re today's production and production of recordings (.2) | 0.2 |
| Paper Discovery | 9/12/2017 | Smith | REVIEW OF RECENT PRODUCTION | 1.5 |

| Paper Discovery | 9/18/2017 | Smith | draft letter to Court re status of telephone discovery | 1.2 |
|---|---|---|---|---|
| Paper Discovery | 9/22/2017 | Smith | review of email discovery and bits file | 3.5 |
| Paper Discovery | 9/26/2017 | Smith | review ltr from City and prepare reply on discovery motion | 1.2 |
| Paper Discovery | 9/26/2017 | Smith | review of personnel filed produced (.9) | 0.9 |
| Paper Discovery | 9/29/2017 | Smith | review of bits file and johnson personnel file | 2.5 |
| Paper Discovery | 10/16/2017 | Smith | continued review of production | 1.5 |
| Paper Discovery | 10/19/2017 | Smith | review of emails and tc JL re Lemonda calls to NY Post Edelman | 0.4 |
| Paper Discovery | 10/20/2017 | Smith | review of records re outstanding discovery and recently produced documents | 2.5 |
| Paper Discovery | 10/28/2017 | Smith | review of joint ltr draft; drafting response re cell phones and phone records and emails to opp co re same | 1.5 |
| Paper Discovery | 12/21/2017 | Smith | tc with opp co re scheudled and ltr to court | 0.7 |
| Paper Discovery | 1/8/2018 | Smith | review of discovery records and outstanding discovery to prep for court appearance | 0.9 |
| Paper Discovery | 1/18/2018 | Smith | review of letter motions | 0.4 |
| Paper Discovery | 1/18/2018 | Smith | review of standard of appeal (.3) | 0.3 |
| Paper Discovery | 1/30/2018 | Smith | review of record for opposing appeal and begin drafting same | 3.2 |
| Paper Discovery | 1/31/2018 | Smith | drafting opp to appeal of discovery order on phone records | 4.5 |
| Paper Discovery | 3/6/2018 | Smith | review of recent productions | 2.5 |

| Paper Discovery | 3/7/2018 | Smith | continues review of recent productions and analyze phone records for other individuals involved in the Post leaks | 2.2 |
|---|---|---|---|---|
| Paper Discovery | 3/13/2018 | Smith | review of cases for motion to compel on Monell issues and notice and knowledge re other investigations; email opp co re same | 3.5 |
| Paper Discovery | 3/16/2018 | Smith | review of discovery and ltr from city; begin drafting ltr motion to compel | 1.8 |
| Paper Discovery | 3/20/2018 | Smith | review of phone records; conf with PG and JL; tc clt; drafting and research on motion to compel BITs files | 2.5 |
| Paper Discovery | 3/26/2018 | Smith | review of telephone records; tc PG re same; review of BITs file; email clt re meeting | 1.3 |
| Paper Discovery | 3/27/2018 | Smith | review of BITS files for motion | 1.5 |
| Paper Discovery | 4/25/2018 | Smith | analyzing phone records and discovery record | 3.5 |
| Paper Discovery | 5/3/2018 | Smith | review of bits transcripts (Miler and Gayron) | 2.2 |
| Paper Discovery | 6/18/2018 | Smith | prep subpoena for Post; emails with KB re BITS filed and missing recordings | 0.7 |
| Paper Discovery | 6/20/2018 | Smith | reviewing BITs transcripts (Mannix and Olmo) | 3.5 |
| Paper Discovery | 6/22/2018 | Smith | review of BITS tr (houton and Olmo) | 2.2 |
| Paper Discovery | 6/25/2018 | Smith | review of transcipts (Osgood and altschuh) | 1.5 |
| Paper Discovery | 6/26/2018 | Smith | review of BITs transcripts (Osgood and Mannix) | 2.5 |
| Paper Discovery | 8/6/2018 | Smith | drafting ltr motion re motion to quash Gleason subpoena; revising Gleason dec; research on ebt of current attorney | 3.5 |

| Paper Discovery | 8/7/2018 | Smith | revising ltr; revising dec; review of cases on esq ebts and confidentiality of cleints; tc PG re same | 2.8 |
|---|---|---|---|---|
| Paper Discovery | 8/10/2018 | Smith | review of BITS file; draft ltr re BITS file; review of transcript of 7-25 appearance | 3.5 |
| Paper Discovery | 8/23/2018 | Smith | review of BITS interview transcripts | 4.5 |
| Paper Discovery | 8/24/2018 | Smith | review of BITs transcipts | 5.5 |
| Paper Discovery | 12/17/2018 | Smith | Review of document discovery; prepare discovery demands and notice of depositions for Jan. 2019 | 2.1 |
| Paper Discovery | 1/22/2019 | Smith | tc PG; emails re written ebt; review of questions; review of PG phone records; draft response to 5 written questions | 1.3 |
| Paper Discovery | 2/28/2019 | Smith | review of prior production for recordings and email all counsel re production of same and ebt of plaintiff | 0.7 |
| Paper Discovery | 4/26/2019 | Smith | drafting dec and memo of law on motion to quash Edelman subpoena | 7.5 |
| Paper Discovery | 4/28/2019 | Smith | revise opp papers | 1.5 |
| Paper Discovery | 4/29/2019 | Smith | drafting and revisng memo and dec re motion to quash edelman subpoena | 3.5 |
| Paper Discovery | 6/24/2019 | Smith | review of demands and preparing responses (2.8) | 2.8 |
| Paper Discovery | 6/24/2019 | Smith | review of discovery provided and email with counsel re same (1.5) | 1.5 |
| Paper Discovery | 8/12/2019 | Smith | review of record for reconsideration motion; draft same; research on objections and reconsideration timing | 2.3 |

| Paper Discovery | 8/18/2019 | Smith | drafting objections to order granting motion to quash edelman subpoena | 4.5 |
|---|---|---|---|---|
| Paper Discovery | 8/19/2019 | Smith | drafting objection and revising same | 3.8 |
| Paper Discovery | 8/28/2019 | Smith | review of cases on witness testimony/recollection; ltr to court re reply | 1.8 |
| Paper Discovery | 8/29/2019 | Smith | revise ltr to court reply | 0.5 |
| Paper Discovery | 11/6/2019 | Smith | review of ebts in BITS investigation | 2.2 |
| Paper Discovery | 8/9/2021 | Smith | review of documents produced by City (2.6) | 2.6 |
| Paper Discovery | 8/10/2021 | Smith | review of MJ and PM productions (1.5) | 1.5 |
| Depositions | 1/10/2019 | Smith | review of discovery record re selection and exclusion of witnesses to be deposed | 2.5 |
| Depositions | 1/14/2019 | Smith | Ebt prep (outline of issues for ebts); review MJ tr | 1.5 |
| Depositions | 1/26/2019 | Smith | meeting with clt re ebt and demand | 3.5 |
| Depositions | 1/27/2019 | Smith | meeting with clt re ebt | 2.8 |
| Depositions | 1/28/2019 | Smith | defend clt ebt at law dept | 9 |
| Depositions | 2/5/2019 | Smith | review of discovery record and tapes and prep for curneen and other ebts | 7.5 |
| Depositions | 2/5/2019 | Smith | prep for McCarthy and Lemonda ebts | 2.6 |
| Depositions | 2/5/2019 | Smith | emails re timing of same (.2) | 0.2 |
| Depositions | 2/5/2019 | Smith | review of responses from McCarthy (.2) | 0.2 |
| Depositions | 2/6/2019 | Smith | prep for and take ebt of lemonda | 5 |
| Depositions | 2/6/2019 | Smith | prep for and take ebt of Curneen | 9.5 |
| Depositions | 2/12/2019 | Smith | prep for gala ebt; conf with JL re same | 4.5 |
| Depositions | 2/13/2019 | Smith | take ebt of Gala | 7.5 |

| Depositions | 2/27/2019 | Smith | prep for ebt of McCarthy and review of record re same | 1.7 |
| Depositions | 2/28/2019 | Smith | prep for and second seat McCarthy ebt; discuss joint letter with opp co re ebts of Mannix, Kearney and Edelman | 2 |
| Depositions | 3/28/2019 | Smith | prep for Kearney ebt; review of phone records from Mannix and Kearney | 2.7 |
| Depositions | 4/8/2019 | Smith | prep for kearney ebt | 3.1 |
| Depositions | 4/8/2019 | Smith | email opp co re same (.2) | 0.2 |
| Depositions | 4/9/2019 | Smith | review of record and prep for Kearney ebt | 5 |
| Depositions | 4/10/2019 | Smith | prep for and attend ebt of Kearney | 5.5 |
| Depositions | 4/24/2019 | Smith | prep for mannix ebt | 4.5 |
| Depositions | 4/25/2019 | Smith | prep for and take ebt of mannix | 7 |
| Motions for Summary Judgment | 8/7/2019 | Smith | review of curreen transcripts | 4.5 |
| Motions for Summary Judgment | 8/14/2019 | Smith | draft ltr to court re sj pre-motion conf (1.3) | 1.3 |
| Motions for Summary Judgment | 8/14/2019 | Smith | review of transcripts for trial and sj motions | 2.1 |
| Motions for Summary Judgment | 8/14/2019 | Smith | revise ltr to court re SJ motion letters and detailed review of ebts transcripts re same | 2.4 |
| Motions for Summary Judgment | 9/3/2019 | Smith | review of ebt and EUO tr summaries for sj motion conf | 2.8 |
| Motions for Summary Judgment | 11/19/2019 | Smith | reviewing ebts of Aiken and Gribbons | 3.5 |
| Motions for Summary Judgment | 12/27/2019 | Smith | review of ebts of Mannix and Keareney and Lemonda | 6.5 |

| | | | | |
|---|---|---|---|---|
| Motions for Summary Judgment | 12/30/2019 | Smith | research of proving conspiracy and consciousness of guilt | 1.5 |
| Motions for Summary Judgment | 1/2/2020 | Smith | review of emails transmitting sj motion papers by the defendants and begin review of papers and exhibits and memos of law | 2.8 |
| Motions for Summary Judgment | 1/13/2020 | Smith | review of record and sj submissions | 5.5 |
| Motions for Summary Judgment | 1/14/2020 | Smith | Summary Judgment opp prep (review of johnson ebt; mania tr.; Vulcan litigation docket re use of Merit Matters faxes mass mailing; review of report by Monitor re same; review of Mannix letters/memos; research on scope of conspiracy law and sj motions directed at conspiracy claims ) | 7.5 |
| Motions for Summary Judgment | 1/16/2020 | Smith | review of discovery record; research on conspiracy claims; review of sj motions | 7.5 |
| Motions for Summary Judgment | 1/21/2020 | Smith | review of sj briefs; McCarthy ebt; summaries; Mannix papers | 4.6 |
| Motions for Summary Judgment | 1/23/2020 | Smith | continued review of disocvery and court record for purpose of sj opp papers | 6.4 |
| Motions for Summary Judgment | 1/24/2020 | Smith | continued reveiw of record for SJ motion | 3.6 |
| Motions for Summary Judgment | 1/27/2020 | Smith | review of discovery record; start drafting opp Rule 56.1 Statement | 7.5 |
| Motions for Summary Judgment | 1/29/2020 | Smith | drafting repsonses to Rule 56.1 Statements | 8.5 |
| Motions for Summary Judgment | 1/30/2020 | Smith | preparing opp papers | 7.3 |

| Motions for Summary Judgment | 1/31/2020 | Smith | continued review of records for brief | 5.5 |
|---|---|---|---|---|
| Motions for Summary Judgment | 2/1/2020 | Smith | Continued review of record; outlining issues; work on Rule 56.1 statement | 6.5 |
| Motions for Summary Judgment | 2/3/2020 | Smith | Drafting brief | 7.8 |
| Motions for Summary Judgment | 2/4/2020 | Smith | Drafting brief | 10 |
| Motions for Summary Judgment | 2/5/2020 | Smith | Drafting brief | 10.5 |
| Motions for Summary Judgment | 2/6/2020 | Smith | drafting memo of law in opp | 9.5 |
| Motions for Summary Judgment | 2/8/2020 | Smith | research on sectrion 1983 and 1985 conspiracy claims; review of rule 56.1 statement | 4.5 |
| Motions for Summary Judgment | 2/9/2020 | Smith | continued rev of record | 3.5 |
| Motions for Summary Judgment | 2/10/2020 | Smith | continued drafting brief; review of record re Thomas Bradley; research on Section 1983 and 1985(3) conspiracy and reading cases | 5.5 |
| Motions for Summary Judgment | 2/11/2020 | Smith | drafting mem of law in opp | 10.5 |
| Motions for Summary Judgment | 2/12/2020 | Smith | drafting brief | 12 |
| Motions for Summary Judgment | 2/13/2020 | Smith | drafting papers in opp | 12.5 |

| Motions for Summary Judgment | 2/14/2020 | Smith | drafting brief | 12.5 |
|---|---|---|---|---|
| Motions for Summary Judgment | 2/15/2020 | Smith | drating brief | 10 |
| Motions for Summary Judgment | 2/16/2020 | Smith | revising brief and rule 56.,1; tc clt and revising dec; prepare dec for exhibits | 9.5 |
| Motions for Summary Judgment | 4/6/2020 | Smith | drafting sur-reply and review of discovery record for same | 4.5 |
| Motions for Summary Judgment | 4/7/2020 | Smith | revised sur-reply and research on intra-corp conspiracy doctrine for memo | 2.5 |
| Motions for Summary Judgment | 6/17/2020 | Smith | drafting ltr to court re new decision by US Sup Ct (Bostock v Clayton) | 0.8 |
| Motions in Limine | 1/4/2022 | Smith | prep for same and outline 8 grounds for motions in limine and research on admissibility of character evidence under FRE 608 (1.2) | 1.2 |
| Motions in Limine | 1/24/2022 | Smith | preparing motion in limine re judicial notice and excluding evidence; review of Vulcan record for motion; research on judicial notice cases based on prior court decsions; drafting motion outline | 7.5 |
| Motions in Limine | 1/28/2022 | Smith | drafting in limine and judicial notice memo of law | 5.5 |
| Motions in Limine | 1/31/2022 | Smith | revising memo of law on in limine motion | 2.5 |
| Motions in Limine | 2/7/2022 | Smith | review of memos in support of defendants' various motions in limine and record and caselaw support | 5.7 |

| | | | | |
|---|---|---|---|---|
| Motions in Limine | 2/8/2022 | Smith | continued review of defendants' motions in limine; checking authorities cited; review of defendants' various objections to plaintiff's motions in limine and begin outlining opp and reply | 8.5 |
| Motions in Limine | 2/9/2022 | Smith | review of motions by defendnats, caselaw and reseaeach on varios issues raised by 14 motions in limine | 6.5 |
| Motions in Limine | 2/10/2022 | Smith | drafting reply and opp on motions in iimine | 7.5 |
| Motions in Limine | 2/10/2022 | Smith | contiuned drafting opp and reply in limine | 4.5 |
| Motions in Limine | 2/12/2022 | Smith | drafting opp and reply | 3.5 |
| Motions in Limine | 2/13/2022 | Smith | drafting reply and opp and research on 404(b) caselaw on identity, pattern and mO | 3.5 |
| Motions in Limine | 2/14/2022 | Smith | revising reply and opp papers | 6.5 |
| Pre-Trial and Trial | 7/20/2021 | Smith | review of Judge Matsumoto's Ind Rules and start shell of the JPTO (.8) | 0.8 |
| Pre-Trial and Trial | 7/20/2021 | Smith | review of summary judgment submissions for preparing JPTO (1.5) | 1.5 |
| Pre-Trial and Trial | 7/21/2021 | Smith | begin comprehensive case review for JPTO and trial | 2.5 |
| Pre-Trial and Trial | 8/4/2021 | Smith | comprehensive review of file for all trial purposes | 4.5 |
| Pre-Trial and Trial | 8/5/2021 | Smith | continued comprehensive review for trial exhibits and witnesses and general trial prep | 5.5 |
| Pre-Trial and Trial | 8/6/2021 | Smith | continued case review for JPTO and trial prep | 3.7 |
| Pre-Trial and Trial | 8/13/2021 | Smith | review of damages case (2.5) | 2.5 |
| Pre-Trial and Trial | 8/13/2021 | Smith | review of file re trial | 1.2 |

| Pre-Trial and Trial | 8/19/2021 | Smith | review of harrassment cases and awards re proof of and amount of damages (2.7) | 2.7 |
|---|---|---|---|---|
| Pre-Trial and Trial | 8/19/2021 | Smith | review of ebts of individual defendans re JPTO (1.8) | 1.8 |
| Pre-Trial and Trial | 8/20/2021 | Smith | review of Volumes I & II of defendants production for purpose of JPTO | 2.5 |
| Pre-Trial and Trial | 8/23/2021 | Smith | continued review of production for JPTO | 2.6 |
| Pre-Trial and Trial | 8/24/2021 | Smith | continued review of discovery for JPTO | 0.9 |
| Pre-Trial and Trial | 8/30/2021 | Smith | continued review of city production for JPTO | 3.7 |
| Pre-Trial and Trial | 8/31/2021 | Smith | continued review of productions for JPTO | 3.3 |
| Pre-Trial and Trial | 9/1/2021 | Smith | complete review of document production by CIty for JPTO | 2.1 |
| Pre-Trial and Trial | 9/2/2021 | Smith | review of digital file for JPTO (1.8) | 1.8 |
| Pre-Trial and Trial | 9/8/2021 | Smith | review of ebts and ebts summaries for witness list and trial generally | 3.8 |
| Pre-Trial and Trial | 9/9/2021 | Smith | review of ebts and ebts summaries for witness list and trial generally and review of discover responses for exhibit list (4.0) | 4 |
| Pre-Trial and Trial | 9/14/2021 | Smith | revising and preparing JPTO | 6.5 |
| Pre-Trial and Trial | 11/18/2021 | Smith | begin organization for jury instructions and verdict sheet; review of JPTO parts | 2.6 |
| Pre-Trial and Trial | 12/1/2021 | Smith | review of cases for jury instructions and memo of law | 2.5 |
| Pre-Trial and Trial | 12/2/2021 | Smith | preparing objections for JPTO (1.5) | 1.5 |
| Pre-Trial and Trial | 12/2/2021 | Smith | outline of issues for trial | 2 |

| Pre-Trial and Trial | 12/12/2021 | Smith | prep for trial ( revising JPTO; review of decisions by court for facts and jury inst) | 7.8 |
|---|---|---|---|---|
| Pre-Trial and Trial | 12/13/2021 | Smith | prep for trial( revising JPTO; review of sj submissions for trial claims, defenses and evidence) | 5.5 |
| Pre-Trial and Trial | 12/21/2021 | Smith | revising JPTO and begin preparing witness outlines | 4.5 |
| Pre-Trial and Trial | 12/22/2021 | Smith | continued review of and revisions to JPTO (1.5) | 1.5 |
| Pre-Trial and Trial | 12/22/2021 | Smith | continued prep of witness outlines | 4.7 |
| Pre-Trial and Trial | 12/23/2021 | Smith | revising JPTO (.8) | 0.8 |
| Pre-Trial and Trial | 12/23/2021 | Smith | continued prep of witness outlines and division of witnesses for trial (4.2) | 4.2 |
| Pre-Trial and Trial | 1/6/2022 | Smith | review of order and email opp co re same (.3) | 0.3 |
| Pre-Trial and Trial | 1/10/2022 | Smith | prep for zoom meeting re JPTO and being drafting proposed stipulation of facts (1.30 | 1.3 |
| Pre-Trial and Trial | 1/11/2022 | Smith | review of Bruno; Olmo and Osgood Tr re designations for JPTO (2.6) | 2.6 |
| Pre-Trial and Trial | 1/11/2022 | Smith | review of cases on so-called union representation privilege (1.3) | 1.3 |
| Pre-Trial and Trial | 1/11/2022 | Smith | revising JPTO and tc co-co re same (.9) | 0.9 |
| Pre-Trial and Trial | 1/18/2022 | Smith | working on JPTO(1.2) | 1.2 |
| Pre-Trial and Trial | 1/18/2022 | Smith | prep certification for authenticating exhibits (.5) | 0.5 |
| Pre-Trial and Trial | 1/18/2022 | Smith | emails with all attorneys re same and filing same | 0.2 |
| Pre-Trial and Trial | 3/7/2022 | Smith | jury instructions, verdict sheet and voir dire and research on the elements of the various claims | 5.3 |

| Pre-Trial and Trial | 3/10/2022 | Smith | drafting jury inst | 4.5 |
|---|---|---|---|---|
| Pre-Trial and Trial | 3/11/2022 | Smith | drafting jury instructions, verdict sheet and voir dire | 5.3 |
| Pre-Trial and Trial | 3/16/2022 | Smith | revising voire dire and jury instructions | 2.2 |
| Pre-Trial and Trial | 3/21/2022 | Smith | review of jury instructions draft )1.3) | 1.3 |
| Pre-Trial and Trial | 3/24/2022 | Smith | reviised jury instructions (1.3) | 1.3 |
| Mediation and Settlement | 9/26/2017 | Smith | ltr to MJ Pohorelshy (.4) | 0.4 |
| Mediation and Settlement | 11/1/2017 | Smith | tc co-co re settlement position; draft ltr to MJ re same; emails with opp co re same | 0.8 |
| Mediation and Settlement | 11/16/2017 | Smith | tc MJ re settlement conf (.5) | 0.5 |
| Mediation and Settlement | 9/17/2019 | Smith | review of mediator lists and qualifications and emails re same | 0.5 |
| Mediation and Settlement | 9/23/2019 | Smith | conf call with opp co and mediator | 0.7 |
| Mediation and Settlement | 10/10/2019 | Smith | drafting mediation statement | 7.5 |
| Mediation and Settlement | 10/21/2019 | Smith | prep for mediation (1.5) attend mediation at EDNY | 6.5 |
| Mediation and Settlement | 11/6/2019 | Smith | review of offers of judgment (.2) | 0.2 |
| Mediation and Settlement | 5/19/2021 | Smith | letter motion to court re settlement conf and review of record on prior settlement discussions | 1.3 |
| Mediation and Settlement | 7/16/2021 | Smith | tc clt re settlemnet conf and review of record in prep for same | 1.2 |
| Mediation and Settlement | 7/19/2021 | Smith | appear by zoom for settlement conf (3.5) | 3.5 |
| Mediation and Settlement | 7/19/2021 | Smith | prep for same (.5) | 0.5 |

| | | | | |
|---|---|---|---|---|
| Mediation and Settlement | 8/13/2021 | Smith | tc clt re offer of judgment (reject it; more money will be on the table later )(0.8) | 0.8 |
| Mediation and Settlement | 3/21/2022 | Smith | prep for mediation by review of ebts summaries and trial exhibits (3.2) | 3.2 |
| Mediation and Settlement | 3/23/2022 | Smith | appear for all day mediation (7.5) | 7.5 |
| Mediation and Settlement | 3/24/2022 | Smith | multiple conversations with the mediator; with City counsel and counsel for the ind defendants; tc (3x) client and co-counsel reaching a deal (1.5) | 1.5 |
| Mediation and Settlement | 4/5/2022 | Smith | revising and drafting of same (1.2) | 1.2 |
| Mediation and Settlement | 4/7/2022 | Smith | various emails re settlement agreement and revising same | 0.6 |
| Mediation and Settlement | 4/9/2022 | Smith | draft letter to court re status and email opp co re approavl for same (.4) | 0.4 |
| Mediation and Settlement | 4/12/2022 | Smith | emails to all counel re same (.2) | 0.2 |
| Motion for Attorneys' Fees | 5/13/2022 | Smith | research and review of recent EDNY cases on hourly rates in complex civil rights and employment cases | 2.2 |
| Motion for Attorneys' Fees | 5/18/2022 | Smith | review of court docket sheet; review of case file; begin preparing declaration in support of fee motion | 3.7 |
| Motion for Attorneys' Fees | 5/20/2022 | Smith | drafting fee application declaration | 4.5 |
| Motion for Attorneys' Fees | 5/21/2022 | Smith | continued drafting of declaration with law and facts relevant to the motion for fees | 5.5 |
| Motion for Attorneys' Fees | 5/22/2022 | Smith | revising and editing declalartion for fee motion | 1.5 |
| Motion for Attorneys' Fees | 6/11/2022 | Smith | review of opp memo on fees and outline response to points made | 1.2 |

| | | | | |
|---|---|---|---|---|
| Motion for Attorneys' Fees | 6/14/2022 | Smith | review of cases cited by city on "comparable cases" and review of cases on block billing (1.7) | 1.7 |
| Motion for Attorneys' Fees | 6/14/2022 | Smith | review of transcripts of appearances in early 2017 on early resolution of the case (.4) | 0.4 |
| Motion for Attorneys' Fees | 6/15/2022 | Smith | review of opp brief and authoriteis cited and outline reply memo of | 2.8 |
| Motion for Attorneys' Fees | 6/16/2022 | Smith | drafting reply on motion for fees | 5.5 |
| Motion for Attorneys' Fees | 6/17/2022 | Smith | revising memo and supported declaration | 1.3 |
| Appearances and Meetings | 2/14/2017 | Smith | Appear in court on status conf; review of file while waiting in court | 1.5 |
| Appearances and Meetings | 2/20/2017 | Smith | conf with co-co and clt re settlement | 1.5 |
| Appearances and Meetings | 3/9/2017 | Smith | meeting with client re settlement and status (.5) | 0.5 |
| Appearances and Meetings | 3/9/2017 | Smith | appear before MJ Scanlon re settlement and discovery (1.5) | 1.5 |
| Appearances and Meetings | 4/29/2017 | Smith | meeting with client and JL re responses to discovery demands (.2.8) | 2.8 |
| Appearances and Meetings | 4/30/2017 | Smith | meeting with client re discovery and facts | 2.8 |
| Appearances and Meetings | 5/9/2017 | Smith | meeting with opp co at 100 Church to discuss discovery issues; P's and D's productions; e-discovery; conf order | 2.5 |
| Appearances and Meetings | 8/4/2017 | Smith | tc (2x) with JL re recent email production (.6) | 0.6 |
| Appearances and Meetings | 8/15/2017 | Smith | conf with parties and MJ re settlement | 0.5 |
| Appearances and Meetings | 9/18/2017 | Smith | tc co-co re discovery and conf with Seth Greenberg re Lemonda discovery (.6) | 0.6 |

| Appearances and Meetings | 9/25/2017 | Smith | tc JL re discovery record and response to request for 30 stay and related email responding to stay request. | 0.9 |
|---|---|---|---|---|
| Appearances and Meetings | 9/26/2017 | Smith | meeting with JL re status (.5) | 0.5 |
| Appearances and Meetings | 9/26/2017 | Smith | tc clt re same (.3) | 0.3 |
| Appearances and Meetings | 10/4/2017 | Smith | meeting with JL and PG re status of case and issues and to do going forward | 1.8 |
| Appearances and Meetings | 10/13/2017 | Smith | Meeting with client and visit to cite of April 2nd fire | 0.2 |
| Appearances and Meetings | 11/16/2017 | Smith | tc with co-co re settlement position | 0.2 |
| Appearances and Meetings | 1/5/2018 | Smith | appear for court conference before MJ Scanlon | 1.5 |
| Appearances and Meetings | 4/9/2018 | Smith | tc all counsel re status | 0.5 |
| Appearances and Meetings | 8/20/2018 | Smith | tc with opp co in Mannix case re initial conf | 0.8 |
| Appearances and Meetings | 9/5/2018 | Smith | Appear before MJ Scanlon (.5) | 0.5 |
| Appearances and Meetings | 9/5/2018 | Smith | meeting with all co re same (.5) | 0.5 |
| Appearances and Meetings | 9/21/2018 | Smith | tc clt re status of ebts; NY Post data; return to full duty; settlement position (vindication first) | 0.6 |
| Appearances and Meetings | 1/9/2019 | Smith | prep for and attend conference before MJ Scanlon re discovery schedule. | 1.8 |
| Appearances and Meetings | 2/5/2019 | Smith | tc with S Rab. and J Lenior re MCarthy (.5) | 0.5 |
| Appearances and Meetings | 4/8/2019 | Smith | tc clt re errrat sheet (.2) | 0.2 |
| Appearances and Meetings | 7/19/2019 | Smith | tc clt re status; dropped McCarthy; discovery except for NY Post done; sj and then trial | 0.5 |

| Appearances and Meetings | 9/4/2019 | Smith | tc conf with court re sj motions | 1.5 |
|---|---|---|---|---|
| Appearances and Meetings | 9/9/2019 | Smith | meeting with clt re status; fee sharing and settlement process | 1 |
| Appearances and Meetings | 11/11/2019 | Smith | meeting with MJ, PG and JL re medical board; offers of judgment; status and litigation plans | 2 |
| Appearances and Meetings | 2/12/2020 | Smith | conf with JL re same (.5) | 0.5 |
| Appearances and Meetings | 3/12/2021 | Smith | tc clt and JL and PG re status of case and MJ going back to the field - possibly 237 or Squand Queens re discussions with Chief Merkel (sp) | 0.5 |
| Appearances and Meetings | 4/20/2021 | Smith | attend tel conf with MJ Scanlon and all counsel re Gala conflict, settlement conf, and trial date | 1 |
| Appearances and Meetings | 4/21/2021 | Smith | tc clt re status re trial date; sett conf and Gala conflict | 0.5 |
| Appearances and Meetings | 4/28/2021 | Smith | Prep for and attend hearing on gala conflict | 1.5 |
| Appearances and Meetings | 5/19/2021 | Smith | tc JL re same (.2) | 0.2 |
| Appearances and Meetings | 6/24/2021 | Smith | tc clt (.2) | 0.2 |
| Appearances and Meetings | 6/24/2021 | Smith | conf call with court re scheudling sett conf (.5); | 0.5 |
| Appearances and Meetings | 7/19/2021 | Smith | conf with client re de-bfriefing and trial witnesss issues | 1.8 |
| Appearances and Meetings | 8/12/2021 | Smith | tc opp co re cases in case value (.3) | 0.3 |
| Appearances and Meetings | 8/12/2021 | Smith | tc co-counsel re Offer of Judgment (.8) | 0.8 |
| Appearances and Meetings | 9/2/2021 | Smith | tc clt re status and court order (.2) | 0.2 |
| Appearances and Meetings | 9/2/2021 | Smith | tc JL re same( .3) | 0.3 |
| Appearances and Meetings | 9/9/2021 | Smith | conf with JL re witness list (.5) | 0.5 |

| Appearances and Meetings | 10/28/2021 | Smith | meeting with cleint re trial prep, review of radio transmission recordings and case status | 2 |
|---|---|---|---|---|
| Appearances and Meetings | 11/23/2021 | Smith | conf call with opp co re JPTO issues | 1 |
| Appearances and Meetings | 12/22/2021 | Smith | conf with opp co (.5) | 0.5 |
| Appearances and Meetings | 12/23/2021 | Smith | conf with co-co re same (.5) | 0.5 |
| Appearances and Meetings | 1/4/2022 | Smith | Attend by video pre-trial conf with Judge Matsumoto (.5) | 0.5 |
| Appearances and Meetings | 1/4/2022 | Smith | conf with JL and PG re to do going forward (.3) | 0.3 |
| Appearances and Meetings | 1/6/2022 | Smith | tc clt re status and trial date (.5) | 0.5 |
| Appearances and Meetings | 1/6/2022 | Smith | tc JL re to do (.2) | 0.2 |
| Appearances and Meetings | 1/10/2022 | Smith | meeting with opp co (1.0) | 1 |
| Appearances and Meetings | 1/10/2022 | Smith | conf with co-co re goimg forward | 0.2 |
| Appearances and Meetings | 1/11/2022 | Smith | tc Seth Greenberg re current demand by Plaintiff has not changed and includes individual apologies; acknowledge by FDNY and undertaking for extensive training (as set forth in Settlement Statement to MJ Scanlon (.3) | 0.3 |
| Appearances and Meetings | 1/18/2022 | Smith | conf with co-co (.2) | 0.2 |
| Appearances and Meetings | 1/18/2022 | Smith | conf with all co (.5) | 0.5 |
| Appearances and Meetings | 3/23/2022 | Smith | meeting with clt and co-co re mediation (1.0) | 1 |
| Appearances and Meetings | 4/5/2022 | Smith | tc JG re settlement agmt (.2) | 0.2 |
| Appearances and Meetings | 4/5/2022 | Smith | tc K Sullivan re same(.2) | 0.2 |

| | | | | |
|---|---|---|---|---|
| Appearances and Meetings | 4/5/2022 | Smith | tc John L re same (.2) | 0.2 |
| Appearances and Meetings | 4/9/2022 | Smith | tc clt re lien (.2)s | 0.2 |
| Appearances and Meetings | 4/9/2022 | Smith | tc SG re escrow arrangement (.2) | 0.2 |
| Appearances and Meetings | 4/12/2022 | Smith | tc S greenberg re recent order (.2) | 0.2 |
| Appearances and Meetings | 4/12/2022 | Smith | tc K Sullivan's office (.1) | 0.1 |
| 18 Civ. 2842 | 5/14/2018 | Smith | ltr to court re related actions request | 1.5 |
| 18 Civ. 2842 | 8/20/2018 | Smith | review of mannix ktr motion and issues relating to motion to dismiss Mannix complaint (1.7) | 1.7 |
| Travel | 10/13/2017 | Smith | (travel time of 2.0 billing at 1/2 time) | 2 |
| Miscellaneous | 3/9/2017 | Smith | review of file (.5) for conference | 0.5 |
| Miscellaneous | 6/6/2017 | Smith | Review of Vulcan docket entries on EEO compliance and retaliation issues | 3.5 |
| Miscellaneous | 8/24/2017 | Smith | review of Fairness Hearing transcripts in USA v City | 2.5 |
| Miscellaneous | 1/31/2018 | Smith | review of records in Houton case at Supreme Kings | 2.3 |
| Miscellaneous | 4/9/2018 | Smith | draft status letter; review of docket re new parties | 0.5 |
| Miscellaneous | 11/7/2018 | Smith | draft and email stip and draft status letter to court | 0.8 |
| Miscellaneous | 3/1/2019 | Smith | draft ltr to court re extend discovery; emails with all co re same | 0.5 |
| Miscellaneous | 5/19/2021 | Smith | review of Gala representation letter (.2) | 0.2 |
| Miscellaneous | 7/28/2021 | Smith | review of vulcan docket sheet and various filings in that case re CIty violation of the anti-retaliation order | 2.5 |

| Miscellaneous | 8/2/2021 | Smith | continued review of filings in Vulcan case re retaliation incidents and procedures to prevent | 3.5 |
|---|---|---|---|---|
| Miscellaneous | 8/9/2021 | Smith | review of NYCity Council report on wages and demographics (.5) | 0.5 |
| Miscellaneous | 8/9/2021 | Smith | review of Vulcan litigation decision and orders and other filing (2.2) | 2.2 |
| Miscellaneous | 8/10/2021 | Smith | review of Johnosn's files in the Vulcan case (.8) | 0.8 |
| Miscellaneous | 8/12/2021 | Smith | continued review of Vulcan litigation filings re retaliation events and measures | 2.8 |
| Miscellaneous | 9/2/2021 | Smith | review of prior decisions in case (.8) | 0.8 |
| Block | 2/9/2017 | Smith | review of file; tc JL; conf call with opp co re conference; conf call with court and opp co re proposed motion to dismiss | 1.5 |
| Block | 7/21/2017 | Smith | appear for conf before MJ Scanlon and conf with opp co SG re Lemonda information and possible affidavit from Adelman | 2.5 |
| Block | 9/22/2017 | Smith | review of disocvery; tc JL re settlement offer issues | 2.5 |
| Block | 10/6/2017 | Smith | tc co-counsel and then tc court and opp co re settlement/discovery issues | 0.5 |
| Block | 4/28/2018 | Smith | revising complaint and review of discovery record | 4.5 |
| Block | 5/26/2018 | Smith | review of letters on relatedness; review of transcripts of prior proceedings; drafting memo of law | 3.5 |
| Block | 7/12/2018 | Smith | emails and tc re BITS file and mannix appearance | 0.8 |

| Block | 8/22/2018 | Smith | prep for conf; review of premotion ltr issues; appear before Judge Matsumoto for pre-motion conference; review of pleading standard for official capacity suits | 3.5 |
|-------|-----------|-------|-----|-----|
| Block | 10/25/2018 | Smith | appear in court before MJ Scanlon for conf (1.5); prep for same; review of decision re motion to amend; discussion with all counsel re name clearing issue and ebt schedule | 3.5 |
| Block | 12/18/2018 | Smith | review of docket and deadlines; emails to opp co re ebts; tc co-counsel (.3) re status and meeting with P for settlement demand | 0.7 |
| Block | 8/11/2019 | Smith | review of decsion on motion to quash; review of 3 ltrs to Judge Mat. re sj | 1.3 |
| Block | 6/9/2020 | Smith | review of medical file and tc clt re pension issues | 0.8 |

**MR. LENOIR'S BILLING ENTRIES**

| Category | Date | Attorney | Description | Hours |
|---|---|---|---|---|
| Pre-Litigation (EEOC) | 5/29/2015 | Lenoir | consult with investigative experts (Conway and Ross) re one-party recording of tel cal with reporter to identify FDNY source of NY Post article re client (1.25) | 1.25 |
| Pre-Litigation (EEOC) | 7/17/2015 | Lenoir | review documents and prepare first draft of complaint | 1 |
| Pre-Litigation (EEOC) | 7/18/2015 | Lenoir | Draft complaint -- initial draft | 2.5 |
| Pre-Litigation (EEOC) | 8/10/2015 | Lenoir | Research and review media (and social media) for drafting complaint | 2.5 |
| Pre-Litigation (EEOC) | 8/12/2015 | Lenoir | meet with client to review complaint for EEOC and EDNY filing | 2 |
| Pre-Litigation (EEOC) | 8/13/2015 | Lenoir | Research and review for complaint draft | 1.5 |
| Pre-Litigation (EEOC) | 8/14/2015 | Lenoir | review and draft complaint | 2 |
| Pre-Litigation (EEOC) | 8/15/2015 | Lenoir | research, drafting and review of complaint | 4.5 |
| Pre-Litigation (EEOC) | 8/17/2015 | Lenoir | Research and review for complaint | 4 |
| Pre-Litigation (EEOC) | 8/18/2015 | Lenoir | research for complaint | 2.5 |
| Pre-Litigation (EEOC) | 8/19/2015 | Lenoir | Complaint preparation -- research of media and review of draft | 3.25 |
| Pre-Litigation (EEOC) | 8/20/2015 | Lenoir | Review and draft revision of complaint | 4.5 |
| Pre-Litigation (EEOC) | 8/21/2015 | Lenoir | review complaint draft and exhibits | 1.75 |
| Pre-Litigation (EEOC) | 8/27/2015 | Lenoir | Revise draft of complaint | 1.75 |
| Pre-Litigation (EEOC) | 9/24/2015 | Lenoir | Review draft of complaint | 1.25 |

| Pre-Litigation (EEOC) | 12/28/2015 | Lenoir | Review complaint status; revise and update draft with exhibits | 3 |
|---|---|---|---|---|
| Pre-Litigation (EEOC) | 1/6/2016 | Lenoir | Prepare final draft of complaint | 1.5 |
| Pre-Litigation (EEOC) | 1/8/2016 | Lenoir | Prepare and organize file for client meeting; review draft complaint. | 0.5 |
| Pre-Litigation (EEOC) | 1/12/2016 | Lenoir | Meeting with Client, Nat Smith and Peter Gleason to review draft complaint and discuss overall case strategy. | 1.5 |
| Pre-Litigation (EEOC) | 1/19/2016 | Lenoir | Review Garafus J. order in Simpkins re revision of Johnson complaint. Outreach to client. | 0.5 |
| Pre-Litigation (EEOC) | 2/1/2016 | Lenoir | draft EEOC complaint | 1.5 |
| Pre-Litigation (EEOC) | 2/3/2016 | Lenoir | Finalize EEOC Complaint -- meet with client for review and execution -- file with EEOC New York Office | 2.5 |
| Pre-Litigation (EEOC) | 4/18/2016 | Lenoir | Review and discuss NY Times article on impact on a victim of racial threats and targeted expressions of racial hate. | 0.5 |
| Pre-Litigation (EEOC) | 4/25/2016 | Lenoir | Review FDNY response to EEO complaint. | 1 |
| Pre-Litigation (EEOC) | 4/25/2016 | Lenoir | Draft / send emails to cllient and co-counsel re FDNY position re EEOC complaint and schedule meeting to prepare reply/rebuttal. | 0.5 |
| Pre-Litigation (EEOC) | 5/2/2016 | Lenoir | review EEO and FDNY positions, telephone conference with client and PJG re response to EEO. | 0.5 |
| Pre-Litigation (EEOC) | 5/10/2016 | Lenoir | Telephone meeting with EEOC Enforcement Manager (Yourke) re Johnson's complaint and FDNY position statement. | 0.5 |

| | | | | |
|---|---|---|---|---|
| Pre-Litigation (EEOC) | 5/10/2016 | Lenoir | Review FDNY Position Stmt; prepare draft response for client and co-counsel review; tel conf with PGleason ( .2) | 2.5 |
| Pre-Litigation (EEOC) | 5/11/2016 | Lenoir | Draft rebuttal to FDNY Position Statement; discuss with NS, PG and client. | 4.5 |
| Pre-Litigation (EEOC) | 5/12/2016 | Lenoir | Review draft rebuttal to FDNY Position Statement with counsel (PG) and client. Schedule meeting with client for 5/14/2016 | 1.5 |
| Pre-Litigation (EEOC) | 5/14/2016 | Lenoir | Review rebuttal to FDNY positionstatement with client, NS aand PJG | 2.5 |
| Pre-Litigation (EEOC) | 5/15/2016 | Lenoir | Review comments from NS, PG and client and revise Rebuttal to FDNY Position Statement, | 1.75 |
| Pre-Litigation (EEOC) | 6/15/2016 | Lenoir | Tel call with Electra Yourke, EEOC Enforcement Mgr (.3) | 0.3 |
| Pre-Litigation (EEOC) | 6/15/2016 | Lenoir | prepare memo re status with EEOC (.4) | 0.4 |
| Pre-Litigation (EEOC) | 6/20/2016 | Lenoir | tel convo with EEOC Electra Yourke (.5) | 0.5 |
| Pre-Litigation (EEOC) | 6/20/2016 | Lenoir | prepare formal request for Rt to Seu authorization (.5) | 0.5 |
| Pre-Litigation (EEOC) | 7/25/2016 | Lenoir | Telephone Discussions with EY, EEOC NY and KF, DOJ re Right to Sue Letter--schedule and status. | 0.5 |
| Pre-Litigation (EEOC) | 9/9/2016 | Lenoir | Telephone conference with Electra Yourke, NY EEOC; email correspondence with DOJ attorneys Karen Ferguson and Jessica Weeks. | 0.75 |
| Pre-Litigation (EEOC) | 9/13/2016 | Lenoir | Review DOJ Notice of Rt to Sue, confer with NS and PJG, and communication with client. | 0.5 |
| Pre-Litigation (Combined) | 5/29/2015 | Lenoir | Initial meeting at 100 Wall St to discuss retention (1.25) | 1.25 |

| Pre-Litigation (Combined) | 6/15/2016 | Lenoir | review file (.2) | 0.2 |
|---|---|---|---|---|
| First Complaint | 9/15/2016 | Lenoir | Review prior drafts of complaint; draft complaint for filing -- research and review law and exhibits. | 1.5 |
| First Complaint | 10/11/2016 | Lenoir | Review draft complaint (conversation with client, NS and PJG) | 0.45 |
| First Complaint | 10/12/2016 | Lenoir | Review and draft complaint -- confer with NS re causes of action | 2.25 |
| First Complaint | 10/13/2016 | Lenoir | Research and draft complaint and review elements and text with NS. | 4 |
| First Complaint | 10/17/2016 | Lenoir | Review and edit draft complaint | 1.3 |
| First Complaint | 10/19/2016 | Lenoir | Research and review of draft complaint; discussion with NS | 1.5 |
| First Complaint | 10/21/2016 | Lenoir | Review and preparation of complaint for filing. | 1.25 |
| First Complaint | 11/5/2016 | Lenoir | Review draft complaint and edit. | 1.5 |
| First Complaint | 11/6/2016 | Lenoir | Review edits of complaint with NS | 1 |
| First Complaint | 11/14/2016 | Lenoir | Review / edit complaint; discuss with NS | 0.5 |
| First Complaint | 11/15/2016 | Lenoir | Review and edit draft of complaint | 0.5 |
| First Complaint | 11/16/2016 | Lenoir | final review complaint before filing | 1 |
| First Complaint | 11/17/2016 | Lenoir | Final review and edit of complaint | 1 |
| First Amended Complaint | 2/9/2017 | Lenoir | review complaint; first draft edits to amend as per pre motion conference. | 0.75 |
| First Amended Complaint | 2/28/2017 | Lenoir | Review, edit and confer with co-counsel re Amended Complaint. | 1.75 |
| Second Amended Complaint | 4/29/2018 | Lenoir | Review, edit and consultation with co-counsel re second Amended Complaint. | 1.5 |

| Second Amended Complaint | 4/30/2018 | Lenoir | review second amended complaint as filed. | 0.5 |
|---|---|---|---|---|
| Third Amended Complaint | 9/6/2018 | Lenoir | review third amended complaint. | 0.75 |
| Third Amended Complaint | 9/6/2018 | Lenoir | Review, edit and discuss with co-counsel 3rd Amended Complaint | 1.5 |
| Third Amended Complaint | 9/7/2018 | Lenoir | Review, final edit and consultation with co-counsel re 3d amended complaint. | 1 |
| Motions to Dismiss | 6/11/2017 | Lenoir | Review draft of MTD response | 1 |
| Motions to Dismiss | 6/12/2017 | Lenoir | Review MTD docs of defendants; review and edit P's response. | 3 |
| Motions to Dismiss | 12/30/2019 | Lenoir | Review, analysis and research of defendants' motions to dismiss. | 3 |
| Paper Discovery | 3/3/2017 | Lenoir | Draft automatic disclosure | 1 |
| Paper Discovery | 3/22/2017 | Lenoir | Review City dfnts first interrogatories and doc request. | 0.5 |
| Paper Discovery | 3/30/2017 | Lenoir | Review and edit proposed Protective Order submitted by City. Confer with NS. | 1 |
| Paper Discovery | 5/1/2017 | Lenoir | Review interrogatory and document production response; begin time line for trial. | 0.75 |
| Paper Discovery | 5/22/2017 | Lenoir | Review FDNY discovery production; confer with co-counsel. | 3.5 |
| Paper Discovery | 5/23/2017 | Lenoir | Review FDNY production re internal investigation of leak to media | 3.25 |
| Paper Discovery | 5/24/2017 | Lenoir | Read and annotate MEO 16 transcripts and other documents produced by FDNY. | 4 |
| Paper Discovery | 5/31/2017 | Lenoir | review discovery material produced by FDNY. | 2.5 |

| Paper Discovery | 6/2/2017 | Lenoir | Review FDNY production--transcripts and documents. | 2 |
|---|---|---|---|---|
| Paper Discovery | 6/7/2017 | Lenoir | Review BITS production; confer with co-counsel re discovery and e discovery parameters; conf call with City counsel. | 3.25 |
| Paper Discovery | 7/19/2017 | Lenoir | Review Lemonda production; prep time line. | 2 |
| Paper Discovery | 7/20/2017 | Lenoir | Review of phone records and emails produced by Lemonda; telephone discussion with N Smith and client. | 1.75 |
| Paper Discovery | 7/31/2017 | Lenoir | Review FDNY transcripts of BIT testimony of Militano and Curneen (1.0) | 1 |
| Paper Discovery | 8/7/2017 | Lenoir | Review and summarize BITS testimony (1.25). | 1.25 |
| Paper Discovery | 9/12/2017 | Lenoir | Initial review of email discovery production from FDNY | 1 |
| Paper Discovery | 9/15/2017 | Lenoir | Review of FDNY emails and attachments (over 100 pages) produced by City. Consult with co-counsel. | 5.5 |
| Paper Discovery | 10/19/2017 | Lenoir | Review of Lamonda cell phone production; confer with co-counsel re discovery, and way forward. | 1.25 |
| Paper Discovery | 10/27/2017 | Lenoir | Confer with co-counsel and review plaintiff response in joint letter to court re discovery status. | 0.5 |
| Paper Discovery | 11/13/2017 | Lenoir | Review dfnds' discovery production and update timeline | 1 |
| Paper Discovery | 2/9/2018 | Lenoir | Review Lamonda production of cell phone records | 2.25 |
| Paper Discovery | 2/16/2018 | Lenoir | Review City production of cell phone records | 1.5 |

| Paper Discovery | 4/20/2018 | Lenoir | Research of telephone records produced by City through on-line research to determine names associated with numbers called. | 3.5 |
|---|---|---|---|---|
| Paper Discovery | 4/24/2018 | Lenoir | Review and analysis of produced phone records with reverse directory records. | 3 |
| Paper Discovery | 4/25/2018 | Lenoir | Analysis of produced telephone records; conferral with co-counsel | 2.5 |
| Paper Discovery | 6/11/2018 | Lenoir | Review production of BITS documents by City; confer with co-counsel NS. | 2.5 |
| Paper Discovery | 6/12/2018 | Lenoir | Review BITS investigation file production--transcripts of Mannix et al interviews. Confer with co-counsel Ns. | 3 |
| Paper Discovery | 7/11/2018 | Lenoir | Research on discovery strategy for electronic distribution of the NY Post article and feasibility of a subpoena for Web distribution of the Michael Johnson piece. | 0.75 |
| Depositions | 7/31/2017 | Lenoir | prepare summary issues in advance of depositions [2.5 hours expended but not billed as potentially duplicative.] | 0 |
| Depositions | 8/2/2017 | Lenoir | Review, analyze and summarize key BITS interviews for deposition prep. [.5 hours expended but not billed as potentially duplicative.] | 0 |
| Depositions | 8/4/2017 | Lenoir | Review FDNY email production; prepare Gala deposition through summary of BITS testimony. [3.0 hours expended but not billed as potentially duplicative.] | 0 |
| Depositions | 8/6/2017 | Lenoir | Prepare depositions--review BIT transcripts [3.0 hours expended but not billed as potentially duplicative.] | 0 |

| Depositions | 8/7/2017 | Lenoir | Prepare summaries and notes for depositions [3.0 hours expended but not billed as potentially duplicative.] | 0 |
| Depositions | 8/8/2017 | Lenoir | Prepare deposition scripts; review BITS investigation production [1.5 hours expended but not billed as potentially duplicative.] | 0 |
| Depositions | 1/26/2019 | Lenoir | Preparation for deposition with client and co-counsel | 4 |
| Depositions | 1/27/2019 | Lenoir | Meeting with client and co-counsel in preparation for deposition of client. | 3 |
| Depositions | 1/28/2019 | Lenoir | Deposition of client at 100 Church St NY NY | 6.5 |
| Depositions | 1/30/2019 | Lenoir | Deposition of defendant Curneen at 225 Broadway NY NY | 5.5 |
| Depositions | 2/6/2019 | Lenoir | LaMonda EBT at 225 Broadway | 4 |
| Depositions | 2/13/2019 | Lenoir | Gala EBT at 225 Broadway | 6 |
| Depositions | 2/14/2019 | Lenoir | Prep for Gribbon EBT | 1 |
| Depositions | 2/15/2019 | Lenoir | EBT Gribbobs at 225 Broadway | 4.5 |
| Depositions | 2/20/2019 | Lenoir | Prepare and conduct EBT: Gloria Aikens | 3.5 |
| Depositions | 2/28/2019 | Lenoir | Prep and conduct EBT MaCarthy at 225 Broadway | 3.5 |
| Depositions | 4/3/2019 | Lenoir | Preparation for Kearney EBT; review produced discovery | 1.75 |
| Depositions | 4/25/2019 | Lenoir | Prepare participate and review deposition of Paul Mannix. | 8.5 |
| Motions for Summary Judgment | 1/23/2020 | Lenoir | Review documents (EBTs and discovery documents) to prepare response to defendants' mtn for Summary Judgment. | 2.75 |

| Motions for Summary Judgment | 1/25/2020 | Lenoir | Research on authentication of telephone records, facts known particularly by defendants, etc., in preparation for plaintiff response to defendants' mtn for summ jdmt. | 1.5 |
|---|---|---|---|---|
| Motions for Summary Judgment | 1/27/2020 | Lenoir | Research on FDNY regulations, standards and practices for firefighter qualifications, draft initial response to defendants' Mtn for Summ Jdmnt. | 3.5 |
| Motions for Summary Judgment | 1/28/2020 | Lenoir | Research on practices that constitute 'adverse employment action' and 'conspiracy.' Review, edit and consult with co-counsel re draft memo of law in response to defendants SJ motions. | 3.5 |
| Motions for Summary Judgment | 1/30/2020 | Lenoir | Research on evidence sufficiency to establish intentional discrimination; continuing review and updating the draft motion in response to defendants' SJ motions. | 2 |
| Motions for Summary Judgment | 1/31/2020 | Lenoir | Consultation, research for response to defendants' 56.1 statements. | 1.5 |
| Motions for Summary Judgment | 2/1/2020 | Lenoir | Review response to 56.1 statements of all defendants | 2.5 |
| Motions for Summary Judgment | 2/5/2020 | Lenoir | Review discovery files for response to Ds' 56.1 and SJ memos | 2 |
| Motions for Summary Judgment | 2/6/2020 | Lenoir | Review documents and draft P response to 56.1 stmt and SJ Memo | 1 |
| Motions for Summary Judgment | 2/7/2020 | Lenoir | Preparation of 56.1 and SJ Memo response | 1.5 |

| Motions for Summary Judgment | 2/10/2020 | Lenoir | Consultation with co counsel and review discovery for P's response to 56.1 mtn and SJ Memo | 2 |
|---|---|---|---|---|
| Motions for Summary Judgment | 2/11/2020 | Lenoir | 56.1 and SJ response papers -- consultation and review; drafting response. | 1 |
| Motions for Summary Judgment | 2/14/2020 | Lenoir | Review of draft responses to 56.1 stmt and SJ memo | 1 |
| Motions for Summary Judgment | 2/15/2020 | Lenoir | Consultation, drafting and editing drafts of 56.1 and SJ Memo | 2.5 |
| Motions for Summary Judgment | 2/16/2020 | Lenoir | Review and analysis of P's response to Ds' 56.1 and SJ memo | 2 |
| Motions for Summary Judgment | 3/26/2020 | Lenoir | Review of defendants' motions in opposition to plaintiff's motion opposing sj | 1 |
| Motions for Summary Judgment | 3/27/2020 | Lenoir | Review of defendants' motions re sj; consultation with co-counsel re response. | 1 |
| Motions for Summary Judgment | 4/6/2020 | Lenoir | Review Plaintiff's sur reply to City Mtn for SJ | 0.5 |
| Motions for Summary Judgment | 4/7/2020 | Lenoir | Consult with co-counsel and final review and edit of Plaintiff's sur reply to City mtn for SJ | 0.75 |
| Motions in Limine | 1/28/2022 | Lenoir | Review Mtn in Limini (.50) | 0.5 |
| Motions in Limine | 1/30/2022 | Lenoir | review plaintiff's mtn in limini (.75) | 0.75 |
| Motions in Limine | 2/1/2022 | Lenoir | Review defendants' mtns in limini. | 1.5 |
| Motions in Limine | 2/2/2022 | Lenoir | Review Defendants' motions in limini | 1 |

| Motions in Limine | 2/4/2022 | Lenoir | Review defendants' motions in limine; consultation with co-counsel re response; .research and review record to draft response. | 3 |
|---|---|---|---|---|
| Motions in Limine | 2/5/2022 | Lenoir | Review BITS transcripts for Mtn in Limine response. | 2 |
| Motions in Limine | 2/6/2022 | Lenoir | Review BITS transcripts for opposition to defendants' motions in limine. | 2.5 |
| Motions in Limine | 2/7/2022 | Lenoir | Review defendants' motions in limine; consult with co-counsel re opposition. | 1.5 |
| Motions in Limine | 2/8/2022 | Lenoir | Review BITS transcripts and EBTs in preparation for response to defendants' motions in limine. Draft sections of Plaintiff's response. | 3.5 |
| Motions in Limine | 2/9/2022 | Lenoir | Review of records and transcripts in preparation for plaintiff's opposition to defendants' motions in limine. | 2.5 |
| Motions in Limine | 2/10/2022 | Lenoir | Review records and transcripts to draft plaintiff's opposition to defendants' motions in limine. Consolations with co-counsel. | 2.5 |
| Motions in Limine | 2/11/2022 | Lenoir | Review BIT records and transcripts to draft plaintiff's opposition to defendants' motions in limine. Consolations with co-counsel. | 2.5 |
| Motions in Limine | 2/12/2022 | Lenoir | Select relevant sections of BIT records and transcripts for draft plaintiff's opposition to defendants' motions in limine. Consolations with co-counsel. | 2 |

| Motions in Limine | 2/16/2022 | Lenoir | Discussion with co-counsel regarding BIT records and transcripts. Draft plaintiff's opposition to defendants' motions in limine. | 2 |
|---|---|---|---|---|
| Motions in Limine | 2/16/2022 | Lenoir | Review and finalize draft of plaintiff's opposition to defendants' motions in limine and memorandum of law in support of Plaintiff's motion in limine. Consolations with co-counsel. | 2.5 |
| Motions in Limine | 2/21/2022 | Lenoir | Review defendant Lamonda's reply motion to plaintif's motion in limine. Also defendants Mannix and Kearny's Reply memo. Consult with co-counsel. | 1 |
| Pre-Trial and Trial | 8/4/2021 | Lenoir | Prep Plaintiff's draft of JPTO | 1.5 |
| Pre-Trial and Trial | 8/5/2021 | Lenoir | Prep Plaintiff's draft of JPTO | 2 |
| Pre-Trial and Trial | 8/6/2021 | Lenoir | Review defendants' discovery; prep JPTO | 2 |
| Pre-Trial and Trial | 8/31/2021 | Lenoir | Review exhibits and EBTS in preparation for trial (JPTO) and consultation with co-counsel re trial order and strategy | 3 |
| Pre-Trial and Trial | 9/10/2021 | Lenoir | Prepare draft JPTO; consultation with co-counsel re trial strategy, witness list, exhibit list etc | 2 |
| Pre-Trial and Trial | 9/14/2021 | Lenoir | Review draft JPTO; consultation with co-counsel re trial line up. | 1 |
| Pre-Trial and Trial | 11/16/2021 | Lenoir | Review defendants' JPTO drafts (.50) | 0.5 |
| Pre-Trial and Trial | 11/16/2021 | Lenoir | research issue of calling adverse party counsel as witness (1.0) | 1 |
| Pre-Trial and Trial | 11/17/2021 | Lenoir | Review and consultation with co-counsel the JPTO -- response to defendants' submission. | 0.5 |

| Pre-Trial and Trial | 11/18/2021 | Lenoir | Review JPTO and consult with co-counsel re response to defendants' submissions. | 0.5 |
|---|---|---|---|---|
| Pre-Trial and Trial | 12/3/2021 | Lenoir | Review JPTO status and consult with co-counsel re defendants' submission and prepare response, especially re Gleason as witness. | 0.5 |
| Pre-Trial and Trial | 12/14/2021 | Lenoir | review JPTO and revise (1.5). | 1.5 |
| Pre-Trial and Trial | 12/22/2021 | Lenoir | JPTO review: Conference call with all parties; consultation with co-counsel before and after conference call with all parties. | 1 |
| Pre-Trial and Trial | 12/23/2021 | Lenoir | consultation with co counsel re trial assignment and strategy | 0.75 |
| Pre-Trial and Trial | 12/27/2021 | Lenoir | Review JPTO draft - final? | 0.5 |
| Pre-Trial and Trial | 1/14/2022 | Lenoir | review and finalize JPTO (.50). | 0.5 |
| Pre-Trial and Trial | 1/18/2022 | Lenoir | Review Defendants' edits to proposed JPTO (.25) | 0.25 |
| Pre-Trial and Trial | 1/25/2022 | Lenoir | Witness analysis and selection (.50) | 0.5 |
| Pre-Trial and Trial | 1/25/2022 | Lenoir | Preparation for trial by preparing initial outline of examinations (1.5). | 1.5 |
| Pre-Trial and Trial | 1/26/2022 | Lenoir | Trial preparation; witness selection, outline examination strategy -- Plaintiff. | 1.5 |
| Pre-Trial and Trial | 1/28/2022 | Lenoir | review complaint and draft witness questions in trial prep (2.0). | 2 |
| Pre-Trial and Trial | 1/29/2022 | Lenoir | Preparation of witness testimony for trial -- plaintiff | 2.5 |
| Pre-Trial and Trial | 1/30/2022 | Lenoir | draft examination Qs for trial witnesses (1.25). | 1.25 |
| Pre-Trial and Trial | 2/25/2022 | Lenoir | Review with co-counsel trial preparation steps and organization (.50) | 0.5 |

| Pre-Trial and Trial | 2/25/2022 | Lenoir | research and draft proposed jury instructions, verdict sheet and void dire (.50). | 0.5 |
|---|---|---|---|---|
| Pre-Trial and Trial | 2/28/2022 | Lenoir | Review notes and documents of EBTs and BIT interviews for trial notebook | 1 |
| Pre-Trial and Trial | 3/1/2022 | Lenoir | Research, review and drafting of plaintiff's proposed voir dire, jury instructions, and verdict sheet. | 6.5 |
| Pre-Trial and Trial | 3/2/2022 | Lenoir | Prepare Plaintiff's proposed voir dire, verdict sheet and jury charge. | 4.5 |
| Pre-Trial and Trial | 3/7/2022 | Lenoir | review status of proposed jury instructions (1.0). | 1 |
| Pre-Trial and Trial | 3/8/2022 | Lenoir | Consult with co-counsel re proposed jury charge. | 0.5 |
| Pre-Trial and Trial | 3/10/2022 | Lenoir | Preparation and review of proposed voir dire and jury instructions. | 1.5 |
| Pre-Trial and Trial | 3/21/2022 | Lenoir | Prepare and review proposed jury charge (1.0) | 1 |
| Mediation and Settlement | 9/26/2017 | Lenoir | prep for meeting with client; confer with co-counsel re settlement position. | 0.5 |
| Mediation and Settlement | 1/29/2019 | Lenoir | Discuss and review plaintiff's settlement demand with co-counsel | 0.5 |
| Mediation and Settlement | 5/13/2019 | Lenoir | Draft email to parties re settlement procedures; confer with co-counsel re settlement posture.. | 0.5 |
| Mediation and Settlement | 9/17/2019 | Lenoir | Review potential mediators from EDNY list. Confer with co-counsel and distribute plaintiff selections to defendants. | 0.75 |
| Mediation and Settlement | 9/23/2019 | Lenoir | Conference call with Mediator and all parties; consultation with co-counsel re mediation strategy and options. | 1.5 |

| Mediation and Settlement | 10/18/2019 | Lenoir | Consultation with co-counsel re settlement strategy with mediator. | 0.75 |
|---|---|---|---|---|
| Mediation and Settlement | 10/21/2019 | Lenoir | Settlement session with Mediator at EDNY courthouse. | 6.5 |
| Mediation and Settlement | 5/19/2021 | Lenoir | draft settlement demand letter (1.5). | 1.5 |
| Mediation and Settlement | 1/12/2022 | Lenoir | Review case law and consultation with counsel on related matter of City agency retaliation regarding settlement strategy. | 1 |
| Mediation and Settlement | 3/4/2022 | Lenoir | Discussion with counsel for City along with co-counsel re settlement; contact and discussion with mediator Judge McKay re availability and schedule for mediation. | 1.25 |
| Mediation and Settlement | 3/7/2022 | Lenoir | coordination with parties and mediator re schedule and location (.50) | 0.5 |
| Mediation and Settlement | 3/23/2022 | Lenoir | Participation in Mediation session at 100 Church, with preparation and follow up. | 8.5 |
| Motion for Attorneys' Fees | 5/14/2022 | Lenoir | Preparation of time record and submission to City for negotiation. | 1 |
| Motion for Attorneys' Fees | 5/18/2022 | Lenoir | Preparation of fee application for submission to court. Required since City did not respond to application sent for negotiation on April 15, 2022. | 3.5 |
| Motion for Attorneys' Fees | 5/22/2022 | Lenoir | Review of co-counsels' declaration and preparation of my declaration of fee hours for submission to Court. | 1.5 |
| Appearances and Meetings | 2/20/2017 | Lenoir | Conference with client, NS and PJG re settlement terms. Follow up discussion with NS. | 1 |

| Appearances and Meetings | 3/2/2017 | Lenoir | Telephone conference with counsel for dfnt Lamonda; follow up conferal with NS re disclosure material. | 0.5 |
|---|---|---|---|---|
| Appearances and Meetings | 4/29/2017 | Lenoir | Meeting with client and NS to prepare a response to interrogatories and document production. | 3.5 |
| Appearances and Meetings | 4/30/2017 | Lenoir | Follow up meeting with client and NS re interrogatories and production of documents and media. | 2.75 |
| Appearances and Meetings | 5/3/2017 | Lenoir | Status conference preparation; Conference at MJ Scanlon | 2 |
| Appearances and Meetings | 5/31/2017 | Lenoir | confer with NS, co-counsel. be tel (.5) | 0.5 |
| Appearances and Meetings | 8/4/2017 | Lenoir | Confer with co-counsel NS on case status (0.50). | 0.5 |
| Appearances and Meetings | 8/8/2017 | Lenoir | confer with co-counsel re deposition list and schedules at 80 Broad St. (1.00) | 1 |
| Appearances and Meetings | 10/3/2017 | Lenoir | conferral with co-counsel re amending the complaint and status of discovery | 0.5 |
| Appearances and Meetings | 10/6/2017 | Lenoir | Conf Call re settlement conference scheduling | 0.25 |
| Appearances and Meetings | 10/12/2017 | Lenoir | Meeting w/client and co-counsel; site inspection at fire location | 2.5 |
| Appearances and Meetings | 11/1/2017 | Lenoir | Confer with co-counsel regarding settlement position. | 0.75 |
| Appearances and Meetings | 3/20/2018 | Lenoir | Telephone conference with co-counsel re phone call history and analysis re LaMonda and others. | 0.5 |
| Appearances and Meetings | 3/30/2018 | Lenoir | Case meeting with client. Review all aspects of litigation and discussion of way forward. | 1.75 |
| Appearances and Meetings | 4/11/2018 | Lenoir | In-person status conference before Scanlon, USMJ | 1 |

| Appearances and Meetings | 1/9/2019 | Lenoir | Status conference; USMJ Scanlon | 1 |
|---|---|---|---|---|
| Appearances and Meetings | 9/4/2019 | Lenoir | Telephone conference with District Court and all parties. | 1 |
| Appearances and Meetings | 10/22/2019 | Lenoir | Consultation with co-counsel re settlement and trial strategy in light of failed mediation and anticipated Rule 68. | 0.5 |
| Appearances and Meetings | 4/28/2021 | Lenoir | Preparation with co-counsel for Dundon Hearing re Gala conflict, telephone conference with MJ Scanlon (1 hr) | 1 |
| Appearances and Meetings | 4/28/2021 | Lenoir | follow up consultations with co-counsel. | 0.5 |
| Appearances and Meetings | 5/19/2021 | Lenoir | Consultation with co counsel re settlement demands (.50) | 0.5 |
| Appearances and Meetings | 7/19/2021 | Lenoir | Settlement conference with MJ Scanlon (Zoom) | 4.5 |
| Appearances and Meetings | 10/25/2021 | Lenoir | Confer with co-counsel to review status of case and JPTO addenda. | 0.75 |
| Appearances and Meetings | 10/28/2021 | Lenoir | Meet in Broadway office with client and co-counsel re JPTO list of trial exhibits and preparation for anticipated trial issues. | 2 |
| Appearances and Meetings | 11/16/2021 | Lenoir | consultation with co-counsel 1.0). | 1 |
| Appearances and Meetings | 12/14/2021 | Lenoir | Consult with co-counsel (.50) | 0.5 |
| Appearances and Meetings | 1/10/2022 | Lenoir | Consultation with co-counsel in preparation for conference call with all parties re settlement and JPTO (.50) | 0.5 |
| Appearances and Meetings | 1/10/2022 | Lenoir | participation in all-party conference call (1.25) | 1.25 |
| Appearances and Meetings | 1/10/2022 | Lenoir | follow up consultation with co-counsel re all-party conference call (.75). | 0.75 |

| | | | | |
|---|---|---|---|---|
| Appearances and Meetings | 1/11/2022 | Lenoir | Consultation with co-counsel regarding settlement strategy and revision of JPTO. | 1.5 |
| Appearances and Meetings | 1/14/2022 | Lenoir | Review and consult with co-counsel possible mediators; discuss settlement strategy (1.0) | 1 |
| Appearances and Meetings | 1/17/2022 | Lenoir | consultation with co-counsel (.75). | 0.75 |
| Appearances and Meetings | 1/18/2022 | Lenoir | consult with co-counsel on Plaintiff's response (.50) | 0.5 |
| Appearances and Meetings | 1/18/2022 | Lenoir | Conf call with all parties (1.0) | 1 |
| Appearances and Meetings | 1/18/2022 | Lenoir | review the call and plan going-forward strategy with co-counsel (.75). | 0.75 |
| Appearances and Meetings | 1/25/2022 | Lenoir | Consultation with co-counsel re Mtn In Limine (.50) | 0.5 |
| Appearances and Meetings | 3/7/2022 | Lenoir | Consultation with co-counsel re settlement strategy (.50) | 0.5 |
| Appearances and Meetings | 3/21/2022 | Lenoir | confer with co-counsel re settlement strategy (2.50). | 2.5 |
| 18 Civ. 2842 | 5/12/2018 | Lenoir | Review and edit Complaint re Mannix et al | 1 |
| 18 Civ. 2842 | 8/20/2018 | Lenoir | Telephone conference with defense counsel to discuss pre trial scheduling re JOHNSON 2, ie, defendants Mannix, Kearny ... | 1.25 |
| Miscellaneous | 2/17/2017 | Lenoir | Prepare and serve summons on Dfnt Lamonda; prepare and post Declaration of Service | 1 |
| Miscellaneous | 8/24/2017 | Lenoir | Review Fairness Hearing transcripts in USA v City; summarize substance; confer with co-counsel. | 6 |
| Miscellaneous | 8/24/2018 | Lenoir | review motions and reports in Vulcan litigation as relates to Johnson action. | 1 |
| Miscellaneous | 5/19/2021 | Lenoir | research Gala conflict of interest issue (1.0) | 1 |

| Block | 2/8/2017 | Lenoir | Telephone pre-motion conference with counsel and court. Coordination meeting with NS post conference. | 1.5 |
|-------|----------|--------|------|-----|
| Block | 3/7/2017 | Lenoir | Confer with NS re response to Lamonda counsel request re time extension to answer complaint, and plaintiff's automatic disclosure. Prepare and submit both. | 0.5 |
| Block | 3/9/2017 | Lenoir | Meet and confer with client (.5); hearing before MJ Scanlon (1) | 1.5 |
| Block | 7/21/2017 | Lenoir | Status conference with MJ Scanlon; conferral with Lemonda counsel; conferral with co-counsel. | 3 |
| Block | 9/18/2017 | Lenoir | consult with co-counsel re discovery; tel cal with Lemonda counsel re telephone records; review draft of letter to court re status of discovery; draft settlement note. | 2.5 |
| Block | 11/16/2017 | Lenoir | Confer with co-counsel and tel conference with Magistrate Judge re possible settlement | 0.75 |
| Block | 4/26/2018 | Lenoir | confer with co-counsel re amended complaint and new related complaint | 3 |
| Block | 9/5/2018 | Lenoir | confer with co-counsel re trial strategy, settlement position, etc. Status conf before Scanlon, USMJ. | 2.5 |
| Block | 10/26/2018 | Lenoir | Review District Court order and MJ Court appearance with co counsel NS. | 0.75 |
| Block | 5/7/2019 | Lenoir | Preparation for and appearance at status conference. Follow up conference with co-counsel. | 2.5 |

| Block | 8/29/2019 | Lenoir | Consultation with co-counsel re settlement, discovery, motion to dismiss response and trial prep. Discussion with co-counsel and tel cal with Kimberly Brown re disposition of individual defendants Curneen and Gala. | 1.5 |
|-------|-----------|--------|---|-----|
| Block | 3/31/2021 | Lenoir | Review court's memorandum and order re summary judgment motions; consultation with co-counsel; consultation via telephone with City defendant re Gala conflict of interest, settlement through mediation. | 2.5 |
| Block | 6/24/2021 | Lenoir | Telephone conference with MJ Scanlon re mediation scheduling and precursor steps. Consultation with co-counsel re mediation strategy. | 0.75 |
| Block | 8/12/2021 | Lenoir | Review City dfnt Rule 68 offer; consultation with co-counsel. Review JPTO draft. | 1.5 |
| Block | 10/11/2021 | Lenoir | Review proceedings before Garaufis, J. relating to FDNY discriminatory practices and disclosure practice with the court-appointed monitor; review new discovery of FDNY 1997 training manual; review trial prep with co-counsel. | 1 |
| Block | 12/28/2021 | Lenoir | consultation with co-counsel and review/research for JPTO and motion in limini | 0.5 |
| Block | 12/29/2021 | Lenoir | consultation with co-counsel and review final JPTO. Preliminary research and considerations for motion in lim. | 0.5 |

| Block | 1/4/2022 | Lenoir | Consultation with co-counsel in preparation for and follow up from judicial conference call re status of case. Zoom conference call with Court. | 1 |
|---|---|---|---|---|
| Block | 1/6/2022 | Lenoir | Review JPTO for revision per Ct instruction; review EDNY panel of mediators for possible mediation; consultation with co-counsel re mediation strategy. | 1.5 |
| Block | 1/17/2022 | Lenoir | Review proposed JPTO, issues for Mtn in Lim (.75) | 0.75 |
| Block | 1/31/2022 | Lenoir | review and edit plaintiff's mtn in limini. Consultation with co-counsel re trial preparation plan. | 1 |
| Block | 3/3/2022 | Lenoir | Prepare review draft of Plaintiff's proposed voir dire, verdict sheet and jury charge. Review position re settlement. | 4 |

## MR. GLEASON'S BILLING ENTRIES

| Category | Date | Attorney | Description | Hours |
|---|---|---|---|---|
| Pre-Litigation (EEOC) | 8/12/15 | Gleason | Met with MJ and legal team to review EEO & Fed Action | 2 |
| Pre-Litigation (EEOC) | 9/27/15 | Gleason | Review and edits to draft complaint | 1 |
| Pre-Litigation (EEOC) | 12/28/15 | Gleason | Review comment on draft complaint | 0.75 |
| Pre-Litigation (EEOC) | 2/2/16 | Gleason | Review & comment with NS, JL re: EEOC complaint | 0.5 |
| Pre-Litigation (EEOC) | 4/25/16 | Gleason | Review EEOC reply from FDNY | 0.5 |
| Pre-Litigation (EEOC) | 5/12/16 | Gleason | Consult with MJ, NS re:EEOC rebuttal | 1.5 |
| Pre-Litigation (EEOC) | 5/14/16 | Gleason | Client meeting, MJ, NS, JL re: EEOC matters | 2.5 |
| Pre-Litigation (EEOC) | 5/15/16 | Gleason | Review final draft of EEOC rebuttal discussed edits with JL | 0.75 |
| Pre-Litigation (EEOC) | 9/13/16 | Gleason | Confer for NS, JL re: Rt. To sue letter | 0.5 |
| Pre-Litigation (FDNY) | 5/18/15 | Gleason | Conferred with MJ, drafted and sent (2) emails to FDNY, discussed matter with Mayor's Office | 2.5 |
| Pre-Litigation (FDNY) | 5/19/15 | Gleason | Conferred with MJ re: FDNY's email re: BITS interview of MJ, | 0.75 |

| Pre-Litigation (FDNY) | 5/20/15 | Gleason | Reviewed emails and fax from MJ. Reviewed and responded to FDNY emails re: scheduling interview of MJ. Discussed same with MJ | 1.25 |
|---|---|---|---|---|
| Pre-Litigation (FDNY) | 5/22/15 | Gleason | Email correspondence with FDNY re: interview (MEO-16) discussed same with MJ | 0.75 |
| Pre-Litigation (FDNY) | 7/10/15 | Gleason | Review letter from FDNY Commissioner to UFA President re: training, discussed same with MJ | 1.25 |
| Pre-Litigation (FDNY) | 8/13/15 | Gleason | Review FDNY regs re: tenure | 0.75 |
| Pre-Litigation (FDNY) | 10/14/15 | Gleason | Email correspondence from BITS, discussed same with MJ | 0.5 |
| Pre-Litigation (FDNY) | 12/7/15 | Gleason | Email from BITS re MEO 16 re: Schedule of MEO 16, discussed availability with MJ | 0.25 |
| Pre-Litigation (FDNY) | 12/21/15 | Gleason | Met with MJ to prep for MEO 16 | 1.5 |
| Pre-Litigation (FDNY) | 12/23/15 | Gleason | MEO 16: consult with MJ before and after hearing | 5 |
| Pre-Litigation (FDNY) | 12/24/15 | Gleason | Follow up with BITS re; previous day's MEO 16 | 0.5 |
| Pre-Litigation (FDNY) | 9/30/16 | Gleason | Correspondence with FDNY BITS, review their contention that MJ can be ordered in to FDNY BITS without putting counsel on notice | 1 |
| Pre-Litigation (Combined) | 5/17/15 | Gleason | Contacted by Michael Johnson (MJ) met with MJ emailed NY Post | 3.5 |
| Pre-Litigation (Combined) | 5/19/15 | Gleason | Review (3) emails regarding MJ, conferred with MJ | 1 |
| Pre-Litigation (Combined) | 5/21/15 | Gleason | Researched public domain for similar instances of discrimination using the media as a weapon to discredit | 2.5 |

| Pre-Litigation (Combined) | 5/25/15 | Gleason | Meeting with MJ | 1.5 |
|---|---|---|---|---|
| Pre-Litigation (Combined) | 5/29/15 | Gleason | Pulled, reviewed and copied relevant parts of Simpkin's file as analogous to MJ matter | 1.5 |
| Pre-Litigation (Combined) | 5/29/15 | Gleason | Meeting with MJ and Atty's Smith (NS), Lenoir (JL) at NS's office | 2.5 |
| Pre-Litigation (Combined) | 6/2/15 | Gleason | Review MJ retainer agreement (NOT CHARGED - 0.25) | 0 |
| Pre-Litigation (Combined) | 7/28/15 | Gleason | Follow up with FDNY re: status of investigation into media leak, discussed same with MJ | 0.75 |
| Pre-Litigation (Combined) | 1/12/16 | Gleason | Meeting with MJ and legal team | 1.5 |
| Pre-Litigation (Combined) | 1/15/16 | Gleason | Compile and forward to NS, JL, racists comments in the media made by FDNY members | 0.5 |
| Pre-Litigation (Combined) | 3/20/16 | Gleason | Tel. conversation. With MJ | 0.5 |
| Pre-Litigation (Combined) | 5/10/16 | Gleason | Review docs phone conversation JL | 0.25 |
| First Complaint | 9/16/16 | Gleason | Review comment on edits to Fed. Complaint | 0.25 |
| First Complaint | 11/6/16 | Gleason | Review edits of updated Fed Complaint | 0.5 |
| First Complaint | 11/18/16 | Gleason | Review exhibits to final Fed Complaint | 0.5 |
| First Amended Complaint | 3/10/17 | Gleason | Review amended Fed. Complaint | 0.25 |
| Second Amended Complaint | 4/28/18 | Gleason | Review amended Complaint | 0.5 |
| Third Amended Complaint | 9/28/18 | Gleason | Review Def. Memo of law consult with co-counsel | 0.5 |
| Motions to Dismiss | 5/16/17 | Gleason | Review Mot 2 Disms, memo to file | 1 |

| Motions to Dismiss | 6/11/17 | Gleason | Review Opposition to MTD | 0.5 |
|---|---|---|---|---|
| Motions to Dismiss | 6/27/17 | Gleason | Review Deft. MTD & Memo of law | 0.5 |
| Motions to Dismiss | 10/25/18 | Gleason | Review Dropbox re: Johnson File updates | 0.25 |
| Paper Discovery | 3/21/17 | Gleason | Review letter to the Court | 0.25 |
| Paper Discovery | 5/7/17 | Gleason | Review/Research phone records re: Sue Edelman forward same to NS | 0.75 |
| Paper Discovery | 5/20/17 | Gleason | Review Deft. Discovery(NOT CHARGED - 1.25) | 0 |
| Paper Discovery | 5/22/17 | Gleason | Review Deft. Discovery(NOT CHARGED - 1.5) | 0 |
| Paper Discovery | 6/4/17 | Gleason | Con't Review of Deft. Discovery production (NOT CHARGED - 3.75) | 0 |
| Paper Discovery | 6/27/17 | Gleason | Review email from City re: phone records, review investigation file add to same | 0.5 |
| Paper Discovery | 9/17/17 | Gleason | Review discovery correspondence (emails dated 7/21/17 - 9/16/17) update investigation file | 3.5 |
| Paper Discovery | 10/20/17 | Gleason | Review Phone records | 0.5 |
| Paper Discovery | 2/18/18 | Gleason | Review updated discovery submissions from Deft's. | 1.5 |
| Paper Discovery | 4/27/18 | Gleason | Follow up regarding phone records & Gala's letters to the editor | 0.75 |
| Paper Discovery | 7/26/18 | Gleason | Rec'vd Subpoena to testify from Deft. Discussed same with co-counsel email to opposing counsel | 0.25 |
| Paper Discovery | 8/7/18 | Gleason | Complete affirmation in support to quash subpoena from Deft. Discuss same with co- counsel for preparation of letter to Court | 1.25 |

| Paper Discovery | 12/22/18 | Gleason | Review Court Decision discuss same with co- counsel | 0.75 |
|---|---|---|---|---|
| Paper Discovery | 1/23/19 | Gleason | Draft, endorse, confer with co-counsel, 5 question interrogatory (Rule 31 Deposition) | 1.25 |
| Paper Discovery | 2/9/19 | Gleason | Review documents from co-counsel as relevant to investigation | 0.5 |
| Paper Discovery | 2/15/19 | Gleason | Incorporate additional telephone records into investigation | 0.25 |
| Paper Discovery | 4/20/19 | Gleason | Review motion to quash, NY Post | 0.75 |
| Paper Discovery | 5/17/19 | Gleason | Review documents provided by co-counsel via dropbox | 0.5 |
| Paper Discovery | 5/23/19 | Gleason | Review Deft Discovery demands | 0.25 |
| Paper Discovery | 12/7/19 | Gleason | Review MJ medical docs | 0.25 |
| Paper Discovery | 2/10/20 | Gleason | Obtain Bradley's cell phone and interface it with investigation file | 1 |
| Paper Discovery | 10/6/21 | Gleason | Review radio transmissions confer with co- counsel | 0.5 |
| Depositions | 2/22/19 | Gleason | Review Gala Transcript | 1.5 |
| Depositions | 2/24/19 | Gleason | Review Gribbon transcript | 1 |
| Depositions | 2/27/19 | Gleason | Review Aiken transcript | 1.25 |
| Depositions | 3/2/19 | Gleason | Review Curneen transcript | 2 |
| Depositions | 4/22/19 | Gleason | Review Kearney deposition | 0.75 |
| Depositions | 2/7/20 | Gleason | Retrieve and review Thomas Bradley deposition re: Appears Bradley may be the source of feeding MJ's medical information to Gala | 1.5 |
| Pre-Trial and Trial | 6/21/21 | Gleason | Review Gala memo and docket, incorporate same into Gala section of file re: trial | 0.75 |
| Pre-Trial and Trial | 3/1/22 | Gleason | Trial prep re: Gala and Lemonda, file review regarding these Defendants (NOT CHARGED - 5.5) | 0 |

| Pre-Trial and Trial | 3/5/22 | Gleason | Continuation trail prep (NOT CHARGED - 3.25) | 0 |
|---|---|---|---|---|
| Mediation and Settlement | 2/26/17 | Gleason | Research process and cost to correct defamatory articles posted on the internet. | 2 |
| Mediation and Settlement | 7/30/18 | Gleason | Review file and research Online reputation attacks that have a lasting damaging effect on an individual or business focus on proactive steps that can help limit the damage created by negative content on the Internet. | 0.75 |
| Mediation and Settlement | 3/23/22 | Gleason | Mediation | 8.5 |
| Motion for Attorneys' Fees | 4/11/22-5/22/22 | Gleason | Fee Application | 2 |
| Appearances and Meetings | 9/24/16 | Gleason | Spend day with civil rights leaders and MJ discussing race based discrimination (NOT CHARGED0 - 6.5 | 0 |
| Appearances and Meetings | 2/20/17 | Gleason | Client meeting, MJ, NS, JL | 0.75 |
| Appearances and Meetings | 3/9/17 | Gleason | Hearing before Mag. J. Scanlon | 1.5 |
| Appearances and Meetings | 7/21/17 | Gleason | Conference, MJ Scanlon,(NOT CHARGED - 3) | 0 |
| Appearances and Meetings | 10/12/17 | Gleason | Site visit of fire location, NS. JL, MJ | 2.5 |
| Appearances and Meetings | 3/16/18 | Gleason | Met with investigator, reviewed all discovery to date in order to piece together the timeline of events as indicated by the discovery available, discussed the FDNY and FDNY BITS on how it relates to this matter the selective enforcement of the Rules and Regulations to the detriment of good order and discipline (NOT CHARGED - 5.5) | 0 |

| Appearances and Meetings | 11/11/19 | Gleason | Meeting at NS office strategy session | 1.25 |
|---|---|---|---|---|
| Appearances and Meetings | 1/31/20 | Gleason | Confer with co-counsel re: Sum Jgmt. Mot. | 1.25 |
| Appearances and Meetings | 2/5/20 | Gleason | Tel conv with MJ re case update & update on workplace | 0.5 |
| Appearances and Meetings | 3/31/21 | Gleason | Consult with co-counsel re: Court order | 0.75 |
| Appearances and Meetings | 1/10/22 | Gleason | Confer with co-counsel re:potential settlement | 0.75 |
| Appearances and Meetings | 2/25/22 | Gleason | Confer with co-counsel re: trail prep | 0.5 |
| Miscellaneous | 10/7/16 | Gleason | Review Vulcan Fairness Hearing re: Judge Garaufis noted the "utterly baseless" testimony of several FDNY supervisors that priority hires will be unqualified as firefighters and will not be welcome into their ranks.  His concern that "some personnel within the FDNY will resist or refuse to comply with the specific terms and spirit of the relief orders" | 1.5 |
| Miscellaneous | 1/30/17 | Gleason | Review/research cover-up of FDNY hazing incident as analogous to instant matter | 2 |
| Miscellaneous | 5/13/17 | Gleason | Reviewed Gala & Grogan MEO -16, memo to file | 1.5 |
| Miscellaneous | 7/20/17 | Gleason | Review email correspondence from 6/28/17 - 7/20/17 in preparation for tomorrow's conference | 0.75 |
| Miscellaneous | 3/9/18 | Gleason | Review City's objections | 0.5 |
| Miscellaneous | 5/26/18 | Gleason | Review comment on Memo of Law | 0.25 |
| Miscellaneous | 8/8/18 | Gleason | Review Dropbox re: Johnson file updates | 0.25 |
| Miscellaneous | 8/21/18 | Gleason | Review Dropbox re: Johnson File updates | 0.25 |

| Miscellaneous | 8/28/18 | Gleason | Review Dropbox re: Johnson File updates | 0.25 |
| Miscellaneous | 9/9/18 | Gleason | Review Dropbox re: Johnson File updates | 0.25 |
| Miscellaneous | 10/3/18 | Gleason | Review Dropbox re: Johnson opposition | 0.75 |
| Miscellaneous | 12/27/18 | Gleason | Researched Taylor Dumpson matter as analogous to the instant matter | 2.5 |
| Miscellaneous | 1/8/19 | Gleason | Review Dropbox re: Johnson File updates | 0.25 |
| Miscellaneous | 1/21/19 | Gleason | Review email from NS re analogous matter re: damages research same (NOT CHARGED - 1.25) | 0 |
| Block | 8/12/21 | Gleason | Rule 68 offer review and confer with co-counsel, review JPTO draft | 1.5 |